# ATTACHMENT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| BELL HELICOPTER TEXTRON INC. and TEXTRON INNOVATIONS INC. | : : : | Civil Action No. _____ |
| Plaintiffs, | : : | JURY TRIAL DEMANDED |
| v. | : : : | |
| ELECTRONIC ARTS, INC. | : : : | |
| Defendant. | : : : | |

## COMPLAINT

1.  Plaintiffs Bell Helicopter Textron Inc. ("Bell") and Textron Innovations Inc. ("Textron Innovations") and for their Complaint against Defendant Electronic Arts, Inc. ("EA"), hereby allege as follows:

## NATURE OF THE ACTION AND REQUESTED RELIEF

2.  Plaintiffs file this action against EA for trademark infringement and false designation of origin under the Lanham Act, unfair competition and misappropriation under Texas common law, and injury to trademarks under section 16.29 of the Texas Business & Commerce Code in connection with EA's unauthorized use of Textron Innovations' trademarks and trade dress in the video game "Battlefield 3," the expansion pack "Back to Karkand," and related advertising and instruction manuals (collectively, "Battlefield 3 Products").

3.  In its effort to meet consumer demand for a realistic military combat simulation, EA chose to include three Bell helicopters in its Battlefield 3 Products. For at least two of those Bell helicopters—the AH-1Z "Viper" (also known as the "Zulu Cobra") and UH-1Y "Venom" (also known as the "Super Huey")—EA included authentic replicas that were not merely

observable to gamers, but could be flown and interacted with through simulated flight and combat missions.

4.  One of the major selling points of EA's Battlefield 3 Products is the "multiplayer" gameplay functionality, which allows multiple online users to engage in team play with and against each other.  Multiplayer does not involve a plot or storyline; instead, it provides gamers an online simulated battlefield and equipment with which to fight alongside of or against other players using equipment and vehicles that include Bell's helicopters.  Such combat simulations using Bell helicopters are a common and prevalent use of EA's Battlefield 3 Products.

5.  The ability to interact with and fly these Bell helicopters in EA's Battlefield 3 Products factors into consumer decisions over whether to purchase Battlefield 3 and related products.

6.  Although EA wants to satisfy consumer demand for a realistic combat simulation and uses Bell helicopters to do so, it is unwilling to license or pay for its current use.  This is not the first time EA has used Bell helicopters in its video games without authorization.  The parties previously litigated in this judicial district EA's unauthorized use of similar Bell helicopters and intellectual property rights in an earlier version of the Battlefield video game.  EA once again wishes to reap what it has not sown by offering consumers a simulated ability to pilot and use Bell's helicopters without authorization.

7.  Other software and video game makers and other third parties wishing to include Bell's helicopters pay for that right pursuant to a licensing program.  Similarly, EA has taken a license from third parties for the right to include their vehicles and marks in its videogame products.  Indeed, EA has, until now, acknowledged these rights and historically paid for its past use; it also recently confirmed as much when it paid for additional licensing rights in connection

with the "Vietnam" booster pack for a previous and related product in EA's Battlefield product line (*see infra*). Yet it has refused to do so in connection with the Battlefield 3 Products, of which it has sold over 10 million copies. (Feb. 1, 2012 Earnings Call Tr. at 3, available at http://files.shareholder.com/downloads/ERTS/1705981396x0x540332/ dab48832-e802-4c78-9fe8-91a3bd6180a2/ERTS_Q3FY12_Transcript.pdf, last visited Feb. 23, 2012.)

8.     As a result of EA's unlawful conduct, Textron Innovations has suffered monetary damage, as well as damage to the value of its intellectual property.

9.     If EA is not enjoined from infringing and trading on Textron Innovations' intellectual property rights, Textron Innovations' exclusive rights in its marks and the distinctiveness of its marks will be diluted and damaged. In addition, consumers and potential consumers will likely be confused as to the source of EA's infringing products, and as to the affiliation, connection, and association of those infringing products with the source of the Bell helicopters. Bell, as one of Textron Innovations' licensees, has suffered and will continue to continue to suffer from damage done by EA to the value of Textron Innovations' intellectual property.

10.     This action seeks permanent injunctive relief, monetary damages, costs, and attorneys' fees because of EA's willful trademark infringement and false designation of origin under the Lanham Act, unfair competition and misappropriation under the common law of the State of Texas, and injury to business reputation or trademarks under the Texas Business & Commerce Code.

## **PARTIES**

11.     Plaintiff Bell is a Delaware corporation with its principal place of business in Fort Worth, Texas. Bell is the manufacturer of the AH-1Z, UH-1Y and V-22 helicopters ("Bell

Products") and a licensee of intellectual property rights in the trade dress and trademarks associated with the Bell Products. All Bell military aircraft, including the AH-1Z, UH-1Y, and V-22, are produced and delivered from Bell's facility in Amarillo, Texas. The wing, rotors, and drive train of the V-22 are manufactured at Bell's facilities in Fort Worth, Texas. Those subassemblies are sent to Bell's Amarillo facility for final assembly. The AH-1Z and UH-1Y are solely manufactured by Bell.

12.     Plaintiff Textron Innovations is a Delaware corporation with its principal place of business in Providence, Rhode Island. Textron Innovations is the intellectual property holding company for Bell and owns federally-registered trademarks, common law trademarks, and common law trade dress in connection with the Bell Products.

13. On information and belief, Defendant EA is a Delaware corporation with its principal place of business in Redwood City, California. EA develops, imports, sells, offers to sell, and advertises the Battlefield 3 Products in the United States. EA may be served with citation by serving its registered agent, National Corporate Research, Ltd., 800 Brazos, Suite 400, Austin, TX 78701.

### JURISDICTION AND VENUE

14.     This Court has original federal question jurisdiction and supplemental jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, and 15 U.S.C. § 1121.

15.     On information and belief, EA is a software company doing business in the State of Texas, distributing its software titles (including those infringing Textron Innovations' marks) worldwide through numerous retailers, including retailers located in the State of Texas. On information and belief, EA also owns and operates the websites www.ea.com and www.battlefield.com (and weblinks therefrom), accessible to residents of the State of Texas,

4

through which it promotes, distributes, and sells its products (including those infringing Textron Innovations' marks) directly to the public at large, including residents of the State of Texas.

16.     On information and belief, EA has, in the ordinary course of business, conducted business in the State of Texas sufficient to satisfy the jurisdictional requirements of Tex. Civ. Prac. & Rem. Code § 17.042, the Texas Long-Arm Statute.  The causes of action asserted herein are connected with such acts or transaction of business.  The assertion of jurisdiction over EA will not offend traditional notions of fair play and substantial justice, especially given this Court's jurisdiction over the prior litigation between Textron Innovations, Bell, and EA over the same issues in connection with a prior unauthorized use by EA in a related Battlefield product.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this district and because EA is subject to personal jurisdiction in this district at the time this action is brought.

## FACTUAL BACKGROUND

### The Bell Products

18.     Plaintiff Bell designs, manufactures, and sells helicopters under the name "Bell Helicopter."  These helicopters include the AH-1Z (also known as "Viper" or "Zulu Cobra"), UH-1Y (also known as "Venom" or "Super Huey"), and V-22 (also known as "Osprey").  Bell expended a significant amount of time, labor, skill, and money to design, develop, and manufacture the Bell Products.  The Bell Products are depicted below:



**AH-1Z "Viper" or "Zulu Cobra"**



**UH-1Y "Venom" or "Super Huey"**



**V-22 "Osprey"**

19.     As Bell developed, designed, and manufactured the Bell Products, Bell assigned its intellectual property rights in the Bell Products to Textron Innovations in exchange for a non-exclusive license to the intellectual property rights in the Bell Products.

20.     The Bell Products bear a distinctive, non-functional, and unique trade dress including, but not limited to:  (a) the design and shape of the fuselage and chin bubble on the UH-1Y; the design and shape of the tandem-seat cockpit, fuselage, and wing pylons on the AH-1Z; the design and shape of the fuselage, chin bubble, wings, rotatable engines, and empennage on the V-22 ("Bell Trade Dress").  These design features are non-functional in nature.  The claimed features are not essential to the use or purpose of the product and do not affect the cost or quality of the product.  Moreover, the design of the respective Bell Products is one of countless design options; indeed, several other manufacturers compete successfully without using the design of the Bell Products.  Use of the Bell Trade Dress by Bell and Textron Innovations' authorized licensees has been continuous and exclusive since the 1960s for the UH-

1Y and AH-1Z trade dress and since the 1980s for the V-22 trade dress.  The Bell Trade Dress has been the subject of extensive promotion, unsolicited media attention, sales, and advertising, including advertising related to the aesthetic features of the Bell Products.

 

As a result, the Bell Trade Dress and products bearing it have taken on secondary meaning in the minds of consumers, resulting in a belief among consumers that the Bell Products have a single source of origin.  As the intellectual property holding company for Bell, Textron Innovations owns the rights to the Bell Trade Dress.

21.    Textron Innovations, as Bell's assignee, owns incontestable, valid, and enforceable federally-registered trademarks for "AH-1Z" (U.S. Reg. No. 2928806), "UH-1Y" (U.S. Reg. No. 2908650), and "V-22" (U.S. Reg. No. 3063307), attached at Exhibit A.  In addition to these federally-registered trademarks, Textron Innovations owns common law rights in the inherently distinctive names "VIPER," "VENOM," and "OSPREY."  Because of extensive

8

advertising, promotion, and sales by Bell, these inherently distinctive federally-registered and common-law-trademarked product names have become strongly associated with a single source in connection with helicopters (collectively, "Bell Trademarks"). As the intellectual property holding company for Bell, Textron Innovations owns the trademark rights in the Bell Trademarks.

22. Use of the Bell Trade Dress and Trademarks has been continuous and substantially exclusive, including as licensed to third parties. Textron Innovations has generated substantial revenues from worldwide licensing of the Bell Products, Bell Trade Dress, and Bell Trademarks, in connection with, among other things, video games, computer software, motion pictures, and aircraft models.

**Defendant's Infringing Videogames**

23. EA manufactures and sells software and video games in interstate commerce, including in this judicial district.

24. EA uses the Bell Trade Dress and Trademarks without Textron Innovations' permission or approval in association with EA's Battlefield 3 game and the expansion pack for the Battlefield 3 game, "Back to Karkand." Although EA could have chosen other helicopters or created its own helicopter design, it wrongfully copied and misappropriated the Bell Trade Dress and Trademarks.

25. Battlefield 3 is a first-person military combat simulation designed to be as realistic a depiction of military vehicles and weaponry as possible. Players can choose to represent the U.S. military, in which case they are given realistic U.S. military equipment to use in battle.

26. EA endeavored to create as authentic and realistic a simulation of military combat as possible, which led it to include Bell helicopter products throughout Battlefield. According to

EA's President Frank Gibeau, "that visceral realistic feeling is what set [Battlefield] apart from [its primary competitor Call of Duty]."   (See http://venturebeat.com/2011/06/14/eas-frank-gibeau-prepares-for-the-grudge-match-between-battlefield-and-modern-warfare/,   last   visited Feb. 20, 2012).

27.     Consumers purchase Battlefield 3 to have a realistic military simulation with the equipment   that   the   U.S.   military   would   use.     (See,   e.g.,   http://tech.ca.msn.com/video-games/article/battlefield-3-sets-new-standards-in-realism, last visited Feb. 16, 2012 ("The story, however, is not the game's strong point," but vehicle use "feel[s] more like simulations of the real thing than just a mere video game."); http://www.planetxbox360.com/article_15304/ Five_Reasons_Battlefield_3_Will_Trump_Modern_Warfare_3, last visited Feb. 16, 2012 (noting that realism and pilot-able vehicles are among the reasons it beats competitors).)

28.     Because its consumers "know what guns and gear look like," EA determined that Battlefield 3 "needs to look real," and for that reason incorporated the Bell Products and associated   Bell Trade Dress   and Trademarks   in the   Battlefield 3   Products.     (See,   e.g., http://www.joystiq.com/2011/03/02/battlefield-3-frostbite-2-engine-interview/, last visited Feb. 16, 2012.)  EA slavishly copied the trade dress of the Bell Products and the Bell Trademarks in order to appeal to consumers who demand to be able to use the real thing.  Battlefield 3 would therefore not provide consumers with as realistic a military simulation without the Bell Products, which are widely used by the U.S. military.

29.     During gameplay, the Bell Products are identified both by their numerical designations ("UH-1Y," "AH-1Z," and "V-22") and by their alternative names ("Huey," "Venom," "Cobra," "Viper," and "Osprey").  The Bell Products are also recognizably depicted and viewable from various angles.  In fact, a player can walk around a helicopter, board it, select

10

a seat as pilot, crew member, or gunner, and then fly it in a manner of the consumers' choosing.

Several examples of the use of Bell Products in the Battlefield 3 Products are shown below:













30.     Although Battlefield 3 uses the Bell Products in its single-player or "Co-op" campaign mode, consumers' desire for realism and equipment use is particularly acute in "multiplayer" mode, where most Battlefield 3 Product consumers spend the bulk of their time.

31.     The Bell Products are available for selection and extensive use in multiplayer mode, where consumers battle alongside and against up to 64 players on a PC and up to 24

13

players on a console simultaneously in the online game.  Consumers using Battlefield 3 can even elect to begin each round or life by deploying or spawning directly into the Bell Products, so as to start and spend the mission flying the Bell helicopter.

32.  EA's President Frank Gibeau has acknowledged that the consumers' focus is on multiplayer and, accordingly, EA's is as well:  "[W]e consider Battlefield an online service. First and foremost, th[e Battlefield] brand was built on its multiplayer prowess and the technology itself really lends itself to that."  Gibeau went on to extol the financial benefits of multiplayer to the Battlefield franchise:  "[C]learly the multiplayer is the richer opportunity for us because of the services opportunity in keeping customers engaged 365 [days a year]. Fortunately, Battlefield, as a franchise, since the late '90s has been configured around multiplayer and I think that's why you're seeing such popularity around the design."  (Oct. 27, 2011 Earnings Call Tr. at 19, available at http://files.shareholder.com/downloads/ERTS/ 1705981396x0x513301/ad904ec3-2563-4487-b0e3-00115eea403a/ERTS_Q2FY12_ Transcript_10_28_11.pdf, last visited Feb. 22, 2012.)

33.  Similarly, during a December 2011 investor call, EA's Executive Vice President and CFO Eric Brown responded to a question about multiplayer being the key purchasing driver by highlighting that approximately 90% of Battlefield 3 purchasers play the online multiplayer game in its product.  (Dec. 5, 2011 Conference Tr. at 11, available at http://files.shareholder.com/downloads/ERTS/1705981396x0x527462/fecceb3c-4ee4-496a-a320-2231686c82fe/ERTS_UBS_Transcript_2011_12_05.pdf, last visited Feb. 22, 2012.)

34.  The AH-1Z and UH-1Y helicopters play a central role in the game.  The AH-1Z is one of the primary attack helicopters, while the UH-1Y is one of the primary transport helicopters.  In the game, users ride in and pilot the AH-1Z and UH-1Y helicopters.  Users can

experience flying in the same way as in a flight simulator, taking full control over the actions of the helicopter and experiencing what it is like to use the helicopters in combat.





35. In December 2011, EA commercially released the "Back to Karkand" expansion pack for the Battlefield 3 game. In "Back to Karkand," consumers can use the Bell Products bearing the Bell Trade Dress and Trademarks in conjunction with new maps.

**Defendant's Infringing Promotional Material**

36.     EA also uses the Bell Trade Dress and Trademarks in promotions for the game without Plaintiffs' permission or approval.

37.     On a webpage telling customers to "buy now," EA entices consumers to purchase its Battlefield 3 product specifically by advertising the AH-1Z helicopter. http://www.battlefield.com/images/helicoptor:



38.     On its website, EA touts the realistic vehicles it offers: "Drive vehicles. You don't just call in an airstrike. You are the airstrike. Battlefield 3 delivers all-out vehicle warfare with an incredible array of vehicles to control, including jets, tanks, jeeps and helicopters." (http://www.battlefield.com/battlefield3/1/vehicles, last visited Feb. 21, 2012.)

39.     On that same page, EA includes an image of Bell's AH-1Z helicopter and promotes use of the Bell helicopter to consumers: "[F]ly your squad straight to the action or engage enemy targets directly from your heli." *Id.*



40.    On the Battlefield YouTube channel, EA promotes the "Back to Karkand" expansion pack with video that includes the Bell Products.  As one example, in the "Battlefield 3 Gulf of Oman Gameplay Trailer," which has more than one million views, an AH-1Z helicopter flies into battle in an opening sequence.  http://youtu.be/emGXp-qRrVg?t=21s



41.    Indeed, many of the trailers on the "Back to Karkand" website include images of the AH-1Z helicopter, including the following trailer for the "Wake Island" map:

17



42.     EA has actively used such promotional videos containing the Bell Products to market its Battlefield 3 Products.  EA's Chief Operating Officer Peter Moore boasted in EA's October 27, 2011 Quarterly results call that EA "made adept use of YouTube where 13 million people have viewed our trailers and on Facebook where we have 2.1 million fans."  (Oct. 27, 2011 Earnings Call Tr. at 7, available at http://files.shareholder.com/downloads/ERTS/ 1705981396x0x513301/ad904ec3-2563-4487-b0e3-00115eea403a/ERTS_Q2FY12_Transcript _10_28_11.pdf, last visited Feb. 22, 2012.)

43.     EA has used the Bell Trade Dress and Trademarks in other promotional materials, including advertisements, product manuals, and game kiosks and displays.

### The Parties' Prior Dispute

44.     The Battlefield 3 Products are not the first EA video games to include unauthorized copies of the Bell Products, Bell Trade Dress, and Bell Trademarks.  In December 2006, Textron Innovations and Bell filed a complaint against EA in the Northern District of Texas, Civil Action No. 4-06-CV-841-A, claiming the same causes of action for EA's

unauthorized use of the Bell Products in videogames including Battlefield Vietnam, Battlefield Vietnam: Redux, and Battlefield 2 ("Prior Action").

45.     On May 21, 2007, EA moved to dismiss the Complaint; Textron Innovations and Bell subsequently opposed.

46.     After full briefing by the parties, this Court denied Defendant's motion to dismiss on December 6, 2007.

47.     The parties subsequently negotiated and executed a confidential settlement agreement on February 15, 2008, and stipulated to dismissal with prejudice of the Prior Action. That agreement remains in effect.  Plaintiffs never released any future claims nor did Textron Innovations approve of any future use by EA of the Bell Trade Dress or Trademarks in any products other than those involved in the Prior Action.

48.     In October 2010, Textron Innovations and EA executed a term sheet whereby EA paid Textron Innovations a lump sum for a license to use the Bell Trade Dress and Trademarks in a booster pack for the "Battlefield:  Bad Company 2" game, called "Vietnam."

49.     On October 7, 2011, EA notified Textron Innovations of its intent to use the Bell Trade Dress and Trademarks in its soon-to-be-released Battlefield 3 Products.  The parties engaged in multiple communications regarding EA's use and proposed licensing terms.  The commercial launch of the Battlefield 3 Products occurred on or about October 25, 2011, while the parties were negotiating.  On January 5, 2012, EA's representative asked Textron Innovations for additional factual information related to EA's use.  Without waiting for an answer, and in a bid to be the first to the courthouse, EA filed a declaratory judgment action in the Northern District of California.  On information and belief, EA filed that action in a forum-shopping effort to avoid the jurisdiction of this Court, which presided over the Prior Action.

## EA's Willful Infringement

50.     EA has been aware of Textron Innovations' trademark and trade dress rights since at least as early as the Prior Action.  EA knowingly and willfully decided to use Textron Innovations' intellectual property without Textron Innovations' permission in the Battlefield 3 Products.

51.     EA's willful infringement of Textron Innovations' rights is also evident when considered against the backdrop of EA's use of third parties' intellectual property in EA video games.  EA has acknowledged that it must take a license to use the intellectual property of third parties in its games and has in fact done so.  For example, EA entered into an exclusive licensing agreement with Porsche for use of Porsche cars and associated intellectual property in its "Need for Speed" video game.  As part of that exclusive licensing agreement, EA has the authority to grant or deny sublicenses for use of Porsche cars and associated intellectual property.  Taking advantage of the fact that most gaming companies will only use the marks of third parties if licensed to do so, EA recently refused to license the Porsche marks to its competitor, Turn 10, a decision that "killed" its competition.  (*See, e.g.*, http://www.chrisjonesgaming.net/ea-protects-its-porsche-license/, last visited Feb. 16, 2012.)

52.     EA has also entered into licensing arrangements in connection with other games.  For example, EA entered into an exclusive licensing arrangement with the NFL and NFL Players' Association for use of NFL players' likeness, team colors, names, and logos for its "Madden" videogame.  (*See, e.g.*, http://www.sportsbusinessdaily.com/Journal/Issues/2011/02/20110214/Leagues-and-Governing-Bodies/NFL-EA.aspx, last visited Feb. 16, 2012.)

53.     Indeed, as recently as October 2010, EA executed a term sheet whereby it took a license from Textron Innovations to the Bell Trade Dress and Trademarks in the "Vietnam" booster pack for its "Battlefield:  Bad Company 2" video game.

20

54. EA's decision to incorporate the Bell Trade Dress and Trademarks in the Battlefield 3 Products without Textron Innovations' authorization was willful and in bad faith.

**Consumers, Textron Innovations, and Bell Have Been and Continue to Be Injured by Defendant's Acts**

55. EA has manufactured, distributed, offered for sale, and sold software and video games (including but not limited to the Battlefield 3 Products) that prominently feature, use, and depict the Bell Trade Dress and Trademarks without Textron Innovations' permission or approval.

56. EA has used these marks intentionally and with the knowledge that Textron Innovations owns the marks.

57. EA's use of Textron Innovations' marks in the Battlefield 3 Products and in advertisements and promotional material related thereto is likely to create consumer confusion as to the source, affiliation, or sponsorship of the trademarked products in the video games.

58. Consumers of these games expect that the intellectual property of a party is used with the permission and approval of the mark's owner, particularly when a purpose of the game is to simulate the use of a product associated with the mark. (*See, e.g.*, http://www.destructoid.com/ea-using-first-amendment-to-keep-helicopters-in-bf3-219301.phtml, last visited Feb. 19, 2012 ("siddartha85: This is nonsense. Every flight game gets those licenses. How is a commercial product making tons of money for admission 'fair use'?" "Aequitas: Did they not have to pay to license the real-world weapon names/likenesses from those manufacturers? I'm confused." "RenegadePanda: So from what I can logically gather from this article is one of two things. a) EA got away with 'fair use' on everything but helicopters, or b) EA got the licensing to everything else in the game except for helicopters.

Everything else in that game has some kind of license, right? Surely the jets and weapons and ground vehicles required a similar procedure. So which is it?").)

59.     EA's use of these marks causes confusion and is likely to continue to cause confusion among consumers as to source, sponsorship, or affiliation of EA's products with Textron Innovations and its authorized licensees.

60.     In addition, EA's unauthorized use of Textron Innovations' marks damages and lessens the value of the intellectual property for Textron Innovations and its authorized licensees, including Bell.

## COUNT I—TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

61.     Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

62.     This cause of action asserted by Textron Innovations arises under the Lanham Act of the United States, 15 U.S.C. § 1114.

63.     Plaintiff Textron Innovations owns the incontestable, valid, and enforceable federally-registered marks "AH-1Z" (U.S. Reg. No. 2928806), "UH-1Y" (U.S. Reg. No. 2908650), and "V-22" (U.S. Reg. No. 3063307) (collectively, "Textron Innovations Registered Marks").

64.     Prior to EA's adoption and use of the Textron Innovations Registered marks, EA had actual notice and knowledge of Textron Innovations' ownership and registrations of the Textron Innovations Registered Marks.

65.     EA, in an attempt to trade on the goodwill and reputation established by Textron Innovations and Textron Innovations' licensees under the Textron Innovations Registered Marks, deliberately and willfully used and continues to use the Textron Innovations Registered Marks so as to cause confusion or mistake or to deceive consumers.

66.     The goods on which EA uses the Textron Innovations Registered Marks, namely, helicopters, are identical to and/or substantially similar to the goods offered by Textron Innovations and its licensees in connection with the marks.

67.     Textron Innovations has not consented to EA's use of the Textron Innovations Registered Marks.

68.     EA's unauthorized use of the Textron Innovations Registered Marks falsely indicates to consumers, and is likely to lead consumers to mistakenly believe, that EA's videogames and/or the featured helicopters therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations.

69.     The aforementioned acts of EA constitute federal trademark infringement in violation of 15 U.S.C. §1114.

70.     Textron Innovations is entitled to monetary damages for EA's infringement, in an amount to be determined at trial.

71.     The intentional nature of EA's acts makes this case exceptional under 15 U.S.C. § 1117(a).

72.     Textron Innovations has been, is now, and will be irreparably harmed by EA's infringement and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, EA will continue to infringe the Textron Innovations Registered Marks.  There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

## COUNT II—TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

73.     Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

74.     This cause of action asserted by Textron Innovations arises under the Lanham Act of the United States, 15 U.S.C. § 1125(a).

75.     Textron Innovations owns unregistered trade dress rights in the distinctive, non-functional, and unique design of the AH-1Z, UH-1Y, and V-22 helicopters.

76.     The distinctive, non-functional, and unique features of the Bell Products, in conjunction with extensive advertising and sales, has caused Bell's Trade Dress to take on secondary meaning in the minds of customers, and resulted in a belief that products bearing the Bell Trade Dress have a single source of origin.

77.     Textron Innovations owns unregistered trademark rights in the names "VIPER," "VENOM," and "OSPREY," used in connection with helicopters (collectively, with the foregoing unregistered trade dress, "Textron Innovations Unregistered Marks").  The arbitrary nature of the marks, as well as the extensive advertising and sales of products bearing those marks, has caused these marks to take on secondary meaning in the minds of customers, and resulted in a belief that products bearing the Textron Innovations Unregistered Marks have a single source of origin.

78.     The goods on which EA uses the Textron Innovations Unregistered Marks, namely, helicopters, is identical to and/or substantially similar to the goods offered by Textron Innovations and its licensees in connection with the marks.

79.     Textron Innovations has not consented to EA's use of the Textron Innovations Unregistered Marks.

80.     EA's unauthorized use of the Textron Innovations Unregistered Marks falsely indicates to consumers, and is likely to lead consumers to mistakenly believe, that EA's videogames and/or the featured helicopters therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations.

24

81. The aforementioned acts of EA constitute trademark infringement in violation of 15 U.S.C. §1125.

82.     Textron Innovations is entitled to monetary damages for EA's infringement, in an amount to be determined at trial.

83.     The intentional nature of EA's acts makes this case exceptional under 15 U.S.C. § 1117(a).

84.     Textron Innovations has been, is now, and will be irreparably harmed by EA's infringement and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, EA will continue to infringe the Textron Innovations Unregistered Marks.  There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

## COUNT III—FALSE DESIGNATION OF ORIGIN

85.     Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

86.     This cause of action asserted by Bell arises under the Lanham Act of the United States, 15 U.S.C. § 1125(a).

87.     As a result of Textron Innovations' and its licensees' extensive use and promotion of the Bell Trade Dress and Trademarks, such marks enjoy considerable goodwill, widespread recognition, and secondary meaning in commerce, and have become associated with a single source of origin.

88.     EA's unauthorized use of the Bell Trade Dress and Trademarks falsely suggests that EA's video games and/or the helicopters featured therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations.

89.     EA's unauthorized use of the Bell Trade Dress and Trademarks as alleged herein constitutes false designation of the origin of EA's video games and/or the helicopters featured

therein, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  By reason of its violation of 15 U.S.C. § 1125(a), EA is "liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act," including Bell.

90.     The intentional nature of EA's acts makes this case exceptional under 15 U.S.C. § 1117(a).

91.     Bell has been, is now, and will be harmed by EA's false designation of origin and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, EA will continue to falsely suggest that EA's video games and/or the helicopters featured therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations, thereby diluting the value of Bell's license and the intellectual property that is the subject of that license. There is no adequate remedy at law for the harm caused to Bell by the acts of EA alleged herein.

## COUNT IV—COMMON LAW TRADEMARK INFRINGEMENT

92.     Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

93.     This cause of action asserted by Textron Innovations arises under the common law of the State of Texas.

94.     As a result of Textron Innovations' and its licensees' extensive use and promotion of the Bell Trade Dress and Trademarks, such marks enjoy considerable goodwill, widespread recognition, and secondary meaning in commerce, and have become associated with a single source of origin.

95.     EA's unauthorized use of the Bell Trade Dress and Trademarks falsely suggests that EA's video games and/or the helicopters featured therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations.

96.     The foregoing acts of EA constitute trademark infringement under the common law of the State of Texas.

97.     EA has been unjustly enriched by reason of its unauthorized use.

98.     Textron Innovations is entitled to monetary damages for EA's infringement, in an amount to be proved at trial.

99.     Textron Innovations has been, is now, and will be irreparably harmed by EA's infringement and, unless enjoined by the Court, EA will continue to infringe the Bell Trade Dress and Trademarks.  There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

## COUNT V—COMMON LAW MISAPPROPRIATION

100.     Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

101.     This cause of action asserted by Textron Innovations arises under the common law of the State of Texas.

102.     Bell expended a significant amount of time, labor, skill, and money to design, develop, and manufacture the Bell Products.  Bell assigned its rights in the Bell Products to Textron Innovations, its intellectual property holding company.

103.     EA is free-riding on the efforts of Bell through EA's unauthorized copying and incorporation of the Bell Trade Dress and Trademarks in the Battlefield 3 Products.

104.     EA competes with Textron Innovations' authorized licensees who pay to use Plaintiffs' rights.  That competition extends to Textron Innovations by reducing the value of its licensing program and intellectual property rights.

105.     Textron Innovations, as owner and licensor of the misappropriated intellectual property, has been damaged as a result of EA's misappropriation.

106. Textron Innovations is entitled to monetary damages for EA's misappropriation, in an amount to be proved at trial.

107. Textron Innovations has been, is now, and will be irreparably harmed by EA's misappropriation and, unless enjoined by the Court, EA will continue to misappropriate the efforts of Bell and the ownership rights of Textron Innovations. There is no adequate remedy at law for the harm caused by the acts of EA alleged herein.

## COUNT VI—INJURY TO BUSINESS REPUTATION & TRADEMARK

108. Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

109. This cause of action asserted by Textron Innovations arises under Texas Business & Commerce Code § 16.29.

110. The Bell Trade Dress and Trademarks are strong and inherently distinctive.

111. EA's acts have impaired the distinctiveness of the Bell Trade Dress and Trademarks.

112. Defendant has deprived Textron Innovations of the exclusive rights to its distinctive trademarks and trade dress and will continue to do so unless enjoined by this Court pursuant to its statutory authority. Accordingly, Textron Innovations seeks a permanent injunction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Court:

(i) Adjudge that EA has infringed Textron Innovations' trademarks and trade dress and committed unfair competition;

(ii) Adjudge that EA has diluted Textron Innovations' trademarks;

(iii) Adjudge that EA committed false designation of origin;

28

(iv)     Adjudge that EA has misappropriated the efforts of Bell and the intellectual property rights of Textron Innovations;

(v)      Permanently enjoin EA from further activities that would infringe and dilute Plaintiff's trademarks and trade dress under 15 U.S.C. § 1116 and Tex. Bus. & Comm. Code § 16.29;

(vi)     Permanently enjoin EA from committing false designation of origin under 15 U.S.C. § 1116;

(vii)    Order an accounting of EA's profits and an award of damages by reason of EA's unlawful conduct;

(viii)   Order an award of treble and other available exemplary damages pursuant to 15 U.S.C. § 1117, based on EA's intentional, malicious, willful, and deliberate use of Textron Innovations' trademarks and trade dress;

(ix)     Order an award of attorney's fees, costs, prejudgment and post judgment interest; and

(x)      Provide any such further relief as this Court may deem just, equitable, and proper.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues triable by a jury.

Dated: February 24, 2012          Respectfully submitted,

Beale Dean (05685000)
bdean@browndean.com
Vince Cruz, Jr. (05196600)
vcruz@browndean.com
David W. Chant (24009951)
dchant@browndean.com
Brown Dean Wiseman Proctor Hart & Howell
306 West 7th Street
Suite 200
Fort Worth, Texas 76102
Telephone: 817-332-1391
Facsimile: 817-870-2427

*Attorneys for Plaintiffs Bell Helicopter Textron Inc. and Textron Innovations Inc.*

29

# EXHIBIT A

Int. Cl.: 12

Prior U.S. Cls.: 19, 21, 23, 31, 35 and 44

**United States Patent and Trademark Office**

Reg. No. 2,928,806
Registered Mar. 1, 2005

### TRADEMARK
#### PRINCIPAL REGISTER

# AH-1Z

BELL HELICOPTER TEXTRON INC. (DELA-
WARE CORPORATION)
P.O. BOX 482
FORT WORTH, TX 76101

FOR: FLYING VEHICLES, NAMELY, HELICOP-
TERS AND STRUCTURAL PARTS THEREFOR, IN
CLASS 12 (U.S. CLS. 19, 21, 23, 31, 35 AND 44).

FIRST USE 12-7-2000; IN COMMERCE 12-7-2000.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-327,346, FILED 11-13-2003.

SEAN DWYER, EXAMINING ATTORNEY

**Int. Cl.: 12**

**Prior U.S. Cls.: 19, 21, 23, 31, 35 and 44**

**United States Patent and Trademark Office**

Reg. No. 2,908,650
Registered Dec. 7, 2004

**TRADEMARK**
**PRINCIPAL REGISTER**

# UH-1Y

BELL HELICOPTER TEXTRON INC. (DELA-
WARE CORPORATION)
P.O. BOX 482
FORT WORTH, TX 76101

FOR: FLYING VEHICLES, NAMELY, HELICOP-
TERS AND STRUCTURAL PARTS THEREFOR, IN
CLASS 12 (U.S. CLS. 19, 21, 23, 31, 35 AND 44).

FIRST USE 12-20-2001; IN COMMERCE 12-20-2001.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-327,051, FILED 11-12-2003.

GINA FINK, EXAMINING ATTORNEY

Int. Cl.: 12

Prior U.S. Cls.: 19, 21, 23, 31, 35 and 44

**United States Patent and Trademark Office**

Reg. No. 3,063,307

Registered Feb. 28, 2006

## TRADEMARK
### PRINCIPAL REGISTER

V-22

BOEING MANAGEMENT COMPANY (DELA-
WARE CORPORATION)
M/C 110-SB70
2201 SEAL BEACH BOULEVARD
SEAL BEACH, CA 907401515 AND
BELL HELICOPTER TEXTRON INC. (DELAWARE
CORPORATION)
600 EAST HURST BOULEVARD
HURST, TX 75063

FOR: HELICOPTERS AND STRUCTURAL PARTS
THEREFOR, IN CLASS 12 (U.S. CLS. 19, 21, 23, 31, 35
AND 44).

FIRST USE 5-23-1988; IN COMMERCE 5-23-1988.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-580,377, FILED 3-4-2005.

GIANCARLO CASTRO, EXAMINING ATTORNEY