1  James F. Basile (SBN 228965)
   james.basile@kirkland.com
2  Mark E. McKane (SBN 230552)
   mark.mckane@kirkland.com
3  KIRKLAND & ELLIS LLP
   555 California Street
4  San Francisco, California  94104
   Telephone: (415) 439-1400
5  Facsimile: (415) 439-1500

6  *Additional counsel listed on last page*

7  Attorneys for Defendants
   TEXTRON INC., BELL HELICOPTER
8  TEXTRON INC., and TEXTRON
   INNOVATIONS, INC.

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                **SAN FRANCISCO DIVISION**

13

14  ELECTRONIC ARTS INC.,                    CASE NO. 12-CV-0118-WHA

15              Plaintiff,                    **DEFENDANTS' NOTICE OF MOTION
                                             TO DISMISS OR, IN THE
16       vs.                                 ALTERNATIVE, STAY OR
                                             TRANSFER; MEMORANDUM OF
17  TEXTRON INC., BELL HELICOPTER            POINTS AND AUTHORITIES IN
    TEXTRON INC., and TEXTRON                SUPPORT**
18  INNOVATIONS INC.,

19              Defendants.                   Date:      April 26, 2012
                                             Time:      8:00 a.m.
20                                            Courtroom: Courtroom 8, 19th floor
                                             Judge:     The Honorable William Alsup
21

22

23

24

25

26

27

28

MOTION TO DISMISS, STAY, OR TRANSFER                     Case No. 12-CV-0118-WHA

**TABLE OF CONTENTS**

<u>Page</u>

NOTICE OF MOTION AND MOTION ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES..................................................2

I.      Introduction............................................................................................2

II.     Factual Background..............................................................................4

III.    Argument................................................................................................7

      A.      The Court Should Decline Declaratory-Judgment Jurisdiction and Dismiss This Action..............................................................................................7

      B.      Even if This Court Exercises Declaratory-Judgment Jurisdiction, It Should Decline to Follow the "First-to-File" Rule in Favor of the Current Texas Action.....................................................................................................10

            1.      EA's suit is anticipatory, warranting departure from the first-to-file rule. ...................................................................................10

            2.      EA filed suit first to forum shop, warranting departure from the first-to-file rule......................................................................12

            3.      EA filed suit in bad faith, warranting departure from the first-to-file rule. ...................................................................................12

            4.      The balance of convenience weighs in favor of the second-filed action. ..14

      C.      In the Alternative, This Action Should Be Transferred to Texas ..........................14

            1.      EA's choice of forum is not entitled to deference. ....................................15

            2.      The convenience of the parties weighs in favor of transfer. ......................16

            3.      The convenience of the witnesses and ease of access to the evidence weigh in favor of transfer.........................................................................16

                  a.      Textron Innovations Witnesses and Documents..........................16
                  b.      Bell Witnesses and Documents....................................................17
                  c.      Textron Inc. Witnesses and Documents.......................................17
                  d.      EA Witnesses and Documents .....................................................18

            4.      The Northern District of Texas is more familiar with the applicable law and facts. .........................................................................................18

            5.      Feasibility of consolidation with other claims favors transfer...................18

            6.      The Northern District of Texas has a greater interest in this dispute.........19

            7.      Relative court congestion and time to trial in each forum suggests transfer. ...................................................................................................19

     D.     If This Court Decides to Retain Jurisdiction, Defendants Move to Change Time Pursuant to Civil Local Rule 6-3 ...............................................................19

**IV.**     **Conclusion .................................................................................................20**

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Alexander v. Franklin Res., Inc.,*
  Civil Action No. 06-7121 SI (N.D. Cal. Feb. 14, 2007) ....................................... 4, 12, 15

5

6

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
  946 F.2d 622 (9th Cir. 1991) ................................................................................. 10

7

*AmSouth Bank v. Dale,*
  386 F.3d 763 (6th Cir. 2004) ................................................................................. 9

8

9

*Central United Life Ins. Co. v. Estate of Gleason,*
  No. CV 11-31-H-DWM, 2011 WL 6258448 (D. Mont. Dec. 15, 2011) ...................................... 19

10

*Charles Schwab & Co. v. Duffy,*
  49 U.S.P.Q.2d 1862 (N.D. Cal. 1998) .................................................................... 9

11

12

*Convergence Techs. (USA), LLC v. Microloops Corp.,*
  711 F. Supp. 2d 626 (E.D. Va. 2010) ..................................................................... 20

13

*DeFeo v. Procter & Gamble Co.,*
  831 F. Supp. 776 (N.D. Cal. 1993) ..................................................................... 3, 7, 8

14

15

*F.T.C. v. Watson Pharm., Inc.,*
  611 F. Supp. 2d 1081 (C.D. Cal. 2009) .................................................................. 4, 18

16

*Fresenius USA, Inc. v. Transonic Systems, Inc.,*
  207 F. Supp. 2d 1009 (N.D. Cal. 2001) ................................................................ 3, 7, 8

17

18

*Fujitsu Ltd. v. Nanya Technology Corp.,*
  2007 WL 484789 (N.D. Cal. 2007) ....................................................................... 20

19

*Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV,*
  277 F. Supp. 2d 654 (N.D. Tex. 2002) ................................................................... 15

20

21

*ivi, Inc. v. Fisher Commc'ns, Inc.,*
  No. C10-1512JLR, 2011 WL 197419 (W.D. Wash. Jan. 19, 2011) ............................................. 9

22

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
  342 U.S. 180 (1952) ......................................................................................... 8

23

24

*Nat'l Broom Co. of Cal., Inc. v. Brookstone Co., Inc.,*
  No. C 09-00959 JSW, 2009 WL 2365677 (N.D. Cal. July 30, 2009) ........................................ 12

25

*Newmont USA Ltd. v. American Home Assur. Co.,*
  No. CV-09-33-JLQ, 2009 WL 1764517 (E.D. Wash. Jun. 21, 2009) .......................................... 20

26

*Nortek, Inc. v. Molnar,*
  36 F. Supp. 2d 63 (D.R.I. 1999) ...................................................................... 9, 15

27

28

*Schmitt v. J.D. Edwards World Solutions Co.,*

Civil Action No. 01-1009, 2001 U.S. Dist. LEXIS 7089 (N.D. Cal. May 18, 2001) ...................... 8

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
  819 F.2d 746 (7th Cir. 1987)................................................................................................. 8

*Top Victory Elecs. v. Hitachi Ltd.*,
  2010 WL 4722482 (N.D. Cal. 2010)................................................................................... 17

*Topics Entm't Inc. v. Rosetta Stone Ltd.*,
  No. C09-1408RSL, 2010 WL 55900 (W.D. Wash. Jan. 4 2010)....................................... 9

*Williams v. Bowman*,
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) ............................................................................ 15

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
  2011 WL 3206686 (N.D. Cal. 2011).................................................................................. 17

*Xoxide, Inc. v. Ford Motor Co.*,
  448 F. Supp. 2d 1188 (C.D. Cal. 2006)........................................................................ passim

*Z-Line Designs, Inc. v. Bell'o Int'l LLC*,
  218 F.R.D. 663 (N.D. Cal. 2003) ............................................................................... passim

## **STATUTES**

15 U.S.C. § 1051......................................................................................................................... 10

15 U.S.C. § 1114........................................................................................................................... 2

15 U.S.C. § 1125..................................................................................................................... 2, 10

28 U.S.C. § 1404.................................................................................................................... passim

28 U.S.C. § 2201.................................................................................................................... 7, 19

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Thursday, April 26, 2012 at 8:00 a.m., or as soon thereafter as may be heard, in the Courtroom of the Honorable William Alsup, Defendants Textron Inc. ("Textron Inc."), Bell Helicopter Textron Inc. ("Bell"), and Textron Innovations Inc. ("Textron Innovations") (collectively, "Defendants") will and hereby do move to dismiss or, in the alternative, stay or transfer this action.

Defendants request that the Court dismiss this case by declining to exercise declaratory-judgment jurisdiction or by departing from the first-to-file rule pursuant to the Court's equitable authority. In the alternative, Defendants request that the case either be stayed or transferred pursuant to 28 U.S.C. § 1404 to the more appropriate and convenient forum of the Northern District of Texas, where a suit with overlapping claims is pending. Defendants' requests are based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting declarations filed concurrently herewith, all pleadings and exhibits on file in this action, argument of counsel at the hearing, and such further matters as this Court may consider. In the event this Court decides to exercise jurisdiction and deny the request to stay or transfer, Defendants hereby request 10 days from the date of the Court's order on this motion in which to answer or otherwise respond to EA's declaratory-judgment complaint. This timing request is made only out of an abundance of caution, as Defendants have today reached an agreement in principle with EA and expect to submit a stipulation to change time in the coming days.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This is not the first time these parties have litigated the issues presented here.  In 2006, Textron Innovations and Bell brought suit in the Northern District of Texas against EA for, among other things, trademark and trade dress infringement in connection with EA's unauthorized use of Bell's UH-1, AH-1, and AH-1Z helicopters in an earlier version of EA's Battlefield video game ("Prior Texas Action").  After substantial discovery, EA moved to dismiss the Second Amended Complaint on First Amendment grounds.  After full briefing by the parties, the Texas court denied EA's motion to dismiss the Prior Texas Action.  The parties subsequently reached a confidential settlement agreement ("2008 Settlement Agreement") and agreed to dismiss all claims with prejudice.  The 2008 Settlement Agreement remains in effect.

Two weeks before the October 25, 2011 release of "Battlefield 3," the newest version in the "Battlefield" video game series, EA notified Textron Innovations that it again intended to use Bell Helicopters (the AH-1Z, UH-1Y, and V-22) and their related trademarks and trade dress in its new "Battlefield 3" game. Negotiations ensued and escalated over trademark and trade dress rights, authorization, and license payments.  On December 21, 2011, Textron Innovations' litigation counsel from the Prior Texas Action sent EA a cease-and-desist letter promising to bring legal action if EA did not take a license as it had for prior versions of the game.  On the afternoon of January 5, 2012, EA responded that it was reviewing the allegations and asked Textron Innovations for information regarding EA's use of the trademarks and trade dress in product packaging and instruction manuals.  But this was no good-faith effort to investigate the claims in order to reach a settlement of the parties' dispute.  The very next day, without any warning, EA—using the same firm that defended it in the Prior Texas Action—filed a declaratory-judgment action in this Court ("Action").

Textron Innovations and Bell, as true plaintiffs,[1] subsequently filed an action in the Northern

---

[1] Textron Innovations, as owner of the intellectual property at issue, has brought claims for trademark infringement under 15 U.S.C. §§ 1114 and 1125, trademark infringement and misappropriation under Texas common law, and dilution under the Texas Business & Commerce statute; Bell, as a licensee of the marks at issue, has brought a claim for false designation of origin under 15 U.S.C. § 1125(a)(1), which states that EA is liable for false designation or origin to "any person who believes that he or she is or is likely to be damaged by such act."  Textron Inc. does not own and does not

1
2
3

District of Texas—the same judicial district where the parties previously litigated these same issues in the Prior Texas Action—against EA for Lanham Act violations, Texas common law unfair competition and misappropriation, and dilution under the Texas statute ("Current Texas Action").

4
5
6
7
8
9
10
11
12
13
14
15

In light of the circumstances under which EA filed its declaratory-judgment action in this Court, Defendants respectfully request that the Court decline to exercise jurisdiction under the Declaratory Judgment Act and dismiss this Action. EA's declaratory action is a textbook example of an anticipatory suit that violates the policies of the Declaratory Judgment Act. It is well-settled that "[t]he Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *See DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776, 778 (N.D. Cal. 1993). Where, as here, there was no indication that the true plaintiffs intended to improperly delay bringing suit, district courts should and routinely do decline jurisdiction and dismiss preemptive declaratory actions. *See, e.g., Fresenius USA, Inc. v. Transonic Systems, Inc.*, 207 F. Supp. 2d 1009, 1012 (N.D. Cal. 2001) (declining to exercise jurisdiction where "[t]here [was] no evidence that [the true plaintiff] . . . intended to avoid filing suit if an amicable resolution could not be achieved.").

16
17
18
19
20
21
22
23
24
25
26
27

Alternatively, if the Court elects in its discretion to exercise declaratory-judgment jurisdiction over this Action, Defendants request that the Court decline to follow the first-to-file rule and instead dismiss, stay, or transfer this Action to the Northern District of Texas. Although EA technically "won" the race to the courthouse with its declaratory-judgment filing, the circumstances surrounding that filing warrant applying an exception to the first-to-file doctrine in this case. District courts have the inherent authority to dismiss first-filed actions in favor of second-filed suits, and ***all*** of the factors that typically justify dismissal are present here: (a) EA's declaratory action is a "mirror image" of two of the claims in the pending Texas action; (b) EA filed suit preemptively, after receiving specific notice that Textron Innovations intended to protect its rights; (c) enforcing the first-to-file rule would punish Textron Innovations' good-faith attempts to negotiate; and (d) EA brought this suit in a bad-faith attempt to forum-shop. *See Xoxide, Inc. v. Ford Motor Co.*, 448 F.

28

---

even hold a license to the marks at issue and was therefore not named as a plaintiff in the Current Texas Action. (Declaration of James Runstadler ("Runstadler Decl.") ¶ 24) (filed concurrently herewith).

Supp. 2d 1188, 1192 (C.D. Cal. 2006) (listing factors and dismissing the first-filed declaratory-judgment action).  Where—as here—the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed later.  *Id.* at 1193. Defendants accordingly request that the Court dismiss or stay this first-filed, anticipatory suit.

Alternatively, the Court should transfer this Action pursuant to 28 U.S.C. § 1404 to the Northern District of Texas for consolidation with Textron Innovations and Bell's pending lawsuit. As the facts recited herein and in the declarations filed concurrently herewith establish, the Northern District of Texas is the more convenient forum and it is one in which EA's action could have been brought.  Moreover, efficient management of judicial resources warrants such a transfer.  *See F.T.C. v. Watson Pharm., Inc.*, 611 F. Supp. 2d 1081, 1088 (C.D. Cal. 2009); *Alexander v. Franklin Res., Inc.*, Civil Action No. 06-7121 SI (N.D. Cal. Feb. 14, 2007).

For these reasons and all the reasons discussed below, Defendants respectfully request that the Court dismiss this Action or, in the alternative, stay or transfer the Action to the Northern District of Texas, where the true plaintiffs' actions against EA are currently pending.

## II.    FACTUAL BACKGROUND

Textron Innovations is a Delaware corporation with its principal place of business in Providence, Rhode Island.  (Runstadler Decl. ¶ 2.)  As the intellectual property holding company of Bell, Textron Innovations owns the trademarks and trade dress at issue.  (*Id.* ¶ 2.)

Bell is a Delaware corporation with its principal place of business in Fort Worth, Texas.  (*Id.* ¶ 3.)  It is a leading designer and manufacturer of helicopters, including the AH-1Z ("Viper" or "Zulu Cobra"), UH-1Y ("Venom" or "Super Huey"), and V-22 ("Osprey").  (*Id.*)  Bell does not own the trademarks and trade dress at issue; rather, it has a non-exclusive license to them.  (*Id.* ¶ 23.)

Textron Inc. is a Delaware corporation with its principal place of business in Providence, Rhode Island.  (*Id.* ¶ 4.)  Textron Inc. does not own and does not hold a license to the trademarks and trade dress at issue.  (*Id.* ¶ 24.)

As its declaratory judgment complaint states, EA is a Delaware corporation with its principal place of business in Redwood City, California.  (D.I. 1 ¶ 11.)  It offers for sale, sells, and otherwise

distributes the "Battlefield" family of war-simulation video games, including "Battlefield 3." (*Id.* ¶ 15.)

On May 1, 2007 in the Prior Texas Action, Textron Innovations and Bell filed their Second Amended Complaint against EA in the Northern District of Texas, alleging that EA's unauthorized use of the UH-1 ("Huey"), AH-1 ("Cobra"), and AH-1Z ("Super Cobra") helicopters in "Battlefield 2," "Battlefield Vietnam," and "Battlefield Vietnam: Redux" infringed Textron Innovations' trademark and trade dress rights. (Runstadler Decl. Ex. 2 ¶¶ 3.3, 3.6.) Keker & Van Nest, the same law firm representing EA here, defended EA in the Prior Texas Action. EA admitted that the Texas court has personal jurisdiction over EA and conceded that venue in that district is proper. (*Id.* Ex. 3 ¶¶ 1.4–1.7)

After substantial discovery, EA filed a partial motion to dismiss the claims directed at EA's in-game use of the UH-1, AH-1, and AH-1Z helicopters. (*Id.* Ex. 1 at entry 14.) After full briefing by the parties, the Texas court denied EA's motion on December 6, 2007. (*Id.* Ex. 4.)

The parties subsequently settled in February 2008 and dismissed the Prior Texas Action. (*Id.* Ex. 5.) The 2008 Settlement Agreement remains in effect. (*Id.* ¶¶ 10, 14.)

In October 2010, Textron Innovations and EA executed a Term Sheet, pursuant to which EA paid Textron Innovations for use of the UH-1 "Huey" helicopter in the "Vietnam" booster pack to "Battlefield: Bad Company 2." (*Id.* ¶ 12.)

One year later, on October 7, 2011, EA notified Textron Innovations that EA intended to use and depict the AH-1Z, UH-1Y, and V-22 ("Products-in-Suit") in the "Battlefield 3" game. (*Id.* Ex. 6.) Textron Innovations responded on October 21, 2011, stating that it is the owner of the trademark and trade dress rights in the AH-1Z and UH-1Y, and the co-owner (along with Boeing) of the trademark and trade dress rights in the V-22. (*Id.* Ex. 7.) Textron Innovations informed EA that the new version of "Battlefield" was not covered by the 2008 Settlement Agreement, and requested additional details regarding EA's anticipated use in order to determine whether Textron Innovations would grant EA a license. (*Id.*) On November 7, 2011, EA responded, stating, among other things,

1

that it did not believe a license was required.  (*Id.* Ex. 8.)[2]  In response, Brown Dean—the same

2

Texas law firm that prosecuted the Prior Texas Action against EA—sent a formal cease-and-desist

3

letter to EA on December 21, 2011.  (*Id.* Ex. 9.)  The letter was clear about Textron Innovations'

4

position regarding EA's unauthorized use:

5

6

> Demand is hereby made that EA immediately cease the uncompensated use of our
> clients' intellectual property rights and to compensate our clients for past use.  Failure
> to do so will force our clients to seek legal remedies to protect their property rights
> and goodwill.

7

8

(*Id.*)  EA's in-house counsel Ms. Gajwani responded on January 5, 2012, suggesting that EA had

9

been unable to focus on the concerns raised in the cease-and-desist letter because she "ha[d] just

10

returned from vacation time over the holidays" and was "currently reviewing the allegations in

11

[Textron Innovations'] letter."  (*Id.* Ex. 10.)  Ms. Gajwani then requested that Textron Innovations

12

provide EA with certain additional information to support its claims.  (*Id.*)  While EA portrayed

13

itself as "looking into" Textron Innovations' concerns and needing more information and time to

14

respond, it is now apparent that EA was instead warming up for a race to the courthouse, and had

15

done its best to ensure that Textron would not even hear the starting gun.

16

     ***The very next day***, EA—using its counsel from the Prior Texas Action—filed a preemptive

17

declaratory action in this Court.  (D.I. 1.)  Significantly, EA's complaint admits that "Textron,

18

through its litigation counsel, demanded that EA ***immediately cease*** its depiction of [Textron's

19

helicopters] . . . ***or face legal action*** by Textron," and that EA filed this suit based on its "***strong***

20

***apprehension*** that it will ***soon*** face a trademark and/or trade dress action from Textron."[3]  (*Id.* ¶¶

21

21–22.).  EA brought claims for a declaration of no trademark infringement (First Cause) and a

22

declaration of no trade dress infringement (Second Cause).  EA remained mum about the suit for one

23

week, until it mentioned in passing the filing in a communication to Brown Dean.  (Runstadler Decl.

24

Ex. 11 ("***By now***, I am sure that you are aware of EA's action for declaratory relief against

25

Textron.").)

26

     Textron Innovations and Bell subsequently filed suit for trademark and trade dress

27

28

[2] Although EA's letter is undated on its face, the December 21, 2011 cease-and-desist letter indicates EA's letter was dated November 7, 2011.  (*Id.* Ex. 9.)

[3] All emphasis is added, unless otherwise noted.

infringement, false designation of origin, common law trademark infringement, common law misappropriation, and Texas statutory dilution on February 24, 2012 in the Northern District of Texas,[4] the court before whom the parties litigated the same issues between 2006 and 2008.[5] (Runstadler Decl. Ex. 12.)

## III.   ARGUMENT

### A.    The Court Should Decline Declaratory-Judgment Jurisdiction and Dismiss This Action

Whether to accept or decline jurisdiction in a declaratory-judgment action is within the sound discretion of the Court. *Fresenius*, 207 F. Supp. 2d at 1012 ("Even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction.") (citation omitted); *see also* 28 U.S.C. § 2201(a).  As discussed below, the circumstances regarding EA's declaratory-judgment complaint counsel against accepting jurisdiction in this case.

"The Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *See DeFeo*, 831 F. Supp. at 778.  Rather, the proper purpose of an action brought pursuant to the Declaratory Judgment Act is to remove the uncertainty of a long-standing threat. *See id.*  No evidence favoring the exercise of jurisdiction is present here.  By virtue of Textron Innovations' December 21, 2011 cease-and-desist letter and the parties' prior litigation history, EA knew that suit was imminent.  Indeed, EA admits as much in its complaint:

On December 21, 2011, Textron, **through its litigation counsel**,

---

[4] After EA filed suit in this Court, the law firm of Jones Day appeared on behalf of Defendants in this action on January 30, 2012. (D.I. 16, 21.)  When Jones Day entered its appearance, EA raised a conflict issue and suggested that it would seek disqualification, which led to an investigation and ultimate decision by Jones Day to withdraw as Defendants' counsel.  Jones Day petitioned for withdrawal from this action on February 13, 2012. (D.I. 22.)  The Court's order granting Jones Day's withdrawal and entering Kirkland & Ellis's substitution as counsel was docketed February 23, 2012. (D.I. 32.)  Kirkland & Ellis worked with Textron Innovations, Bell, and the Brown Dean law firm to file the Texas complaint on February 24, 2012, within 11 days of appearing as counsel here. (Declaration of Mark E. McKane ("McKane Decl.") ¶¶ 5–7) (filed concurrently herewith).

[5] On February 28, 2012, EA filed a Notice of Pendency identifying the Current Texas Action.  EA's notice is conspicuously silent about the fact that the Northern District of Texas presided over the Prior Texas Action involving nearly identical trademark issues and parties.  EA also fails to mention that Textron Innovations and Bell filed a notice of related cases, alerting the Texas court to this Action and identifying the Prior Texas Action as a related case. (McKane Decl. Ex. 1.)

1

2

> demanded that EA **immediately cease** its depiction of the AH-1Z, UH-
> 1Y and V-22 helicopters in *Battlefield 3 **or face legal action*** by
> Textron.

3    (D.I. 1 ¶ 21.)   With suit by Textron Innovations looming in the jurisdiction where the parties

4    previously litigated the same issues (it was, after all, Textron Innovations' Texas counsel from the

5    Prior Texas Action who sent the cease-and-desist letter), one can only conclude that EA manipulated

6    the Declaratory Judgment Act to choose its forum.  *See Kerotest Mfg. Co. v. C-O-Two Fire Equip.*

7    *Co.*, 342 U.S. 180, 185 (1952) (noting that Declaratory Judgment Act cannot be used by alleged

8    infringer to give it "a paramount right to choose the forum for trying out questions of infringement");

9    *Fresenius*, 207 F. Supp. 2d at 1012 (declining to exercise jurisdiction in an intellectual property

10   dispute where "[t]here [was] no evidence that [the true plaintiff] . . . intended to avoid filing suit if an

11   amicable resolution could not be achieved.").   Now that the true plaintiffs' infringement action is

12   pending in the Northern District of Texas, this Court should decline to exercise jurisdiction and

13   dismiss EA's suit.  *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th

14   Cir. 1987) (holding that because the declaratory judgment action was filed in anticipation of the

15   infringement action, it should be stayed and the second-filed infringement action should proceed);

16   *DeFeo*, 831 F. Supp. at 780 (this Court citing *Tempco* with approval for dismissal of the first-filed

17   declaratory judgment action in federal court); *Xoxide*, 448 F. Supp. 2d at 1193 (citing *Tempco* with

18   approval for dismissal of first-filed declaratory-judgment action in favor of second-filed action);

19   *Schmitt v. J.D. Edwards World Solutions Co.*, Civil Action No. 01-1009, 2001 U.S. Dist. LEXIS

20   7089, at *4 (N.D. Cal. May 18, 2001) ("If a court is faced with two suits, a first filed declaratory

21   relief action and a subsequent coercive suit filed in a different court, and the court determines that

22   the declaratory judgment suit is a preemptive suit meant to deprive the natural plaintiff of the forum

23   of his choice, the court should dismiss or stay the declaratory suit.  This prevents forum shopping by

24   a declaratory judgment plaintiff who files suit in anticipation of being sued by a natural plaintiff.").

25        EA's race-to-the-courthouse strategy also counsels in favor of dismissal.  Courts  routinely

26   decline declaratory-judgment jurisdiction where the declaratory action was brought in a bad-faith

27   race to the courthouse, such as where the natural defendant misleads the natural plaintiff during pre-

28   filing discussions.  EA did just that here.  Knowing that it would be filing this declaratory action the

very next day, EA's January 5, 2012 response letter to Textron Innovations was an insincere communication at best—portraying its review as delayed due to vacation, seeking additional information regarding its own actions, and feigning interest in pursuing an amicable resolution outside of the courts.  (Runstadler Decl. Ex. 10.)  EA's filing of its declaratory judgment suit the very next day confirms its bad faith—the complaint undoubtedly had been prepared and was being finalized when EA's in-house counsel sent its January 5th letter.

This Court faced similarly sharp tactical practices in *Charles Schwab & Co. v. Duffy*, 49 U.S.P.Q.2d 1862 (N.D. Cal. 1998).  In *Charles Schwab*, this Court declined to hear a case filed under the Declaratory Judgment Act where the plaintiff "won" the race to the courthouse in part by sending a letter to the defendant's attorney that likely misled the defendant as to the plaintiff's settlement intentions.  *Id.*, 49 U.S.P.Q.2d at 1864.  Other decisions in this District and beyond come to the same conclusion:  a declaratory-judgment plaintiff ought not "win" a race to the courthouse after misleading the natural plaintiff into believing there might not be a need for the race at all.  *See Xoxide*, 448 F. Supp. 2d at 1194 (dismissing first-filed declaratory-judgment suit where plaintiff secretly filed suit while simultaneously giving defendant's representatives the false impression that it was making its best efforts to negotiate a settlement); *Z-Line Designs, Inc. v. Bell'o Int'l LLC*, 218 F.R.D. 663, 666 (N.D. Cal. 2003) (dismissing declaratory-judgment action in favor of second-filed action where declaratory-judgment plaintiff misled defendant into believing it would explore settlement and then raced to courthouse); *AmSouth Bank v. Dale*, 386 F.3d 763, 790 (6th Cir. 2004) (**reversing** the district court's exercise of declaratory-judgment jurisdiction in part because declaratory plaintiff "sent a letter stating that it was still considering" defendants' demands "just one day before filing its declaratory action"); *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 70 (D.R.I. 1999) (declining jurisdiction over first-filed action where declaratory plaintiff asked for letter outlining the defendant's legal reasoning and then filed action prior to responding to letter).[6]

---

[6] *See also ivi, Inc. v. Fisher Commc'ns, Inc.*, No. C10-1512JLR, 2011 WL 197419, *3 (W.D. Wash. Jan. 19, 2011) (dismissing first-filed declaratory action and explaining that "[t]he record demonstrates . . . the disingenuity of ivi's settlement posture, because on the following Monday [after indicating a willingness to negotiate], ivi filed suit in the Western District of Washington."); *Topics Entm't Inc. v. Rosetta Stone Ltd.*, No. C09-1408RSL, 2010 WL 55900, at *3-4 (W.D. Wash. Jan. 4 2010) (dismissing a first-filed declaratory suit and explaining that "permitting [the declaratory plaintiff] to gain from its tactic would encourage parties to precipitously abandon settlement negotiations to rush to the

Under such circumstances, this Court should not countenance EA's tactics and should instead dismiss the suit.

**B.    Even if This Court Exercises Declaratory-Judgment Jurisdiction, It Should Decline to Follow the "First-to-File" Rule in Favor of the Current Texas Action**

Although EA will inevitably argue that it filed its action first, Defendants submit that the Court should decline to follow the "first-to-file" rule given the anticipatory nature of EA's suit, which was brought in a bad-faith attempt to secure a more favorable forum.[7]  In addition, the balance of convenience weighs in favor of the Current Texas Action.  For the reasons set forth below, Defendants respectfully request that the Court dismiss or stay this action.

"Circumstances under which the first to file rule will not be applied include bad faith, anticipatory suit, and forum shopping."  *Z-Line Designs*, 218 F.R.D. at 665 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).  A suit is anticipatory where a plaintiff files "upon receipt of specific, concrete indications that a suit by defendant [is] imminent." *Id.*  Such suits are disfavored examples of forum shopping. *Id.*  Moreover, the Declaratory Judgment Act "is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *Id.* (internal quotation and citation omitted).  "Application of the first to file rule in such situations would thwart settlement negotiations, encouraging intellectual property holders to file suit rather than communicate with an alleged infringer." *Id.*  Finally, a court "may also refuse to apply the first-to-file rule if the balance of convenience weighs in favor of the later-filed action." *Id.*

1.    EA's suit is anticipatory, warranting departure from the first-to-file rule.

EA filed its declaratory-judgment complaint with specific knowledge that Textron

---

courthouse.").

[7] Defendants assume for sake of argument that the first-to-file rule would otherwise apply here, despite the fact that this Action does not address all of the claims in the Current Texas Action.  EA's declaratory judgment complaint consists of two causes of action:  (i) an action under "15 U.S.C. § 1051 et seq." for "a declaration that *Battlefield 3* does not infringe any of Textron's [sic] purported trademarks"; and (ii) an action under "15 USC 1125" for "a declaration that *Battlefield 3* does not infringe Textron's purported trade dress."  (D.I. 1 at First Cause and ¶ 28, and Second Cause and ¶ 34.)  Assuming for sake of argument that EA's first cause of action involves the federally-registered and common law trademarks that are at issue in the Current Texas Action (EA fails to identify the trademarks at issue in its complaint), the Texas complaint has at least those claims, as well as claims by Textron Innovations for common law infringement and misappropriation under Texas common law and dilution under Texas statutory law, and a claim by Bell for false designation under 1125(a).

Innovations' suit was imminent by virtue of Brown Dean's December 21, 2011 cease-and-desist letter. Courts have repeatedly held that receipt of a cease-and-desist letter threatening a potential trademark lawsuit renders a suit anticipatory. *Xoxide*, 448 F. Supp. 2d at 1193 ("Anticipatory suits are found when the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent, and are viewed with disfavor as examples of forum shopping and gamesmanship."). For example, in *Z-Line Designs*, Bell'O sent a cease-and-desist letter to its counterparty Z-line on June 23, 2003. The letter asserted that Z-Line was infringing Bell'O's trade dress rights and requested a response by July 7, 2003. After several weeks of attempted negotiations, Z-Line filed a declaratory action seeking a finding of non-infringement in the Northern District of California on July 31, 2003. Bell'O subsequently filed its own infringement action in the District of New Jersey, and moved to dismiss the first-filed California action pursuant to the court's equitable authority. Judge Whyte of this Court granted the motion, explaining that the first-filed suit was "anticipatory" because Bell'O's actions put Z-Line on notice that it intended to enforce its rights if negotiations broke down:

> Potential plaintiffs should be encouraged to attempt settlement discussions prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before the plaintiff files a complaint. …[W]here as here a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first.

*Id.* at 666–67 (internal citations and punctuation omitted).

Here, Brown Dean's letter expressly promised litigation if the parties did not settle their dispute through a license. (Runstadler Decl. Ex. 9 ("immediately cease the uncompensated use of [Textron Innovations'] intellectual property…"; "[f]ailure to comply will force our clients to seek legal remedies to protect their property rights and goodwill.").) Unlike previous correspondence from Textron Innovations to EA, the December 21, 2011 cease-and-desist letter was authored by Brown Dean—the same Texas law firm that had prosecuted Textron's Prior Texas Action against EA over these same rights and an earlier version of this same video game. EA cannot plausibly argue that Textron Innnovations' litigation threat was anything but real and immediate, nor has it

tried.   In fact, EA admits that "Textron, through its litigation counsel, **_demanded_** that EA **_immediately cease_** its depiction of [Textron's helicopters] **_or face legal action_**," and that EA thus filed its preemptive action two weeks later based on "a reasonable and strong apprehension that it [would] soon face a trademark and/or trade dress action from Textron."  (D.I. 1 ¶¶ 21–22.)  Because EA admits that it filed this action based on Textron Innovations' threat of litigation in its cease-and-desist letter, this action is on its face an "anticipatory suit," warranting departure from the first-to-file rule.  *See Xoxide*, 448 F. Supp. 2d at 1193; *Z-Line Designs*, 218 F.R.D. at 666-67.

> 2.   EA filed suit first to forum shop, warranting departure from the first-to-file rule.

As discussed above, anticipatory suits are an aspect of forum shopping and thus inherently problematic.  *Nat'l Broom Co. of Cal., Inc. v. Brookstone Co., Inc.*, No. C 09-00959 JSW, 2009 WL 2365677, *3 (N.D. Cal. July 30, 2009) (declining to follow first-to-file rule, finding that declaratory plaintiff "filed the action in this Court in anticipation of Brookstone's lawsuit and to forum shop, and that JLR filed this action in bad faith.").  A litigant's efforts to secure a home-forum advantage are even more suspect when coupled with a motive to **_avoid_** an alternative forum.  *See Alexander*, 2007 WL 518859 at *4 ("One could reasonably infer forum shopping" where plaintiff filed suit in Northern District of California after receiving unfavorable rulings in New Jersey court).

Here, EA had a strong motive to avoid the Northern District of Texas.  From 2006 through 2008, these same parties litigated the same issues arising out of EA's use of Textron Innovations' intellectual property in earlier versions of the "Battlefield" video game.  In that Prior Texas Action, EA (using the same firm that filed the complaint here) moved to dismiss the plaintiffs' claims based on a First Amendment defense of the same sort it purports to rely on today.  The Texas court denied the motion.  No doubt with that unfavorable ruling in mind, EA rushed to this Court in an effort to secure what it hopes will be a more favorable forum.  Such gamesmanship is an additional factor that counsels dismissing this action in favor of the Current Texas Action.  *See Nat'l Broom*, 2009 WL 2365677 at *3.

> 3.   EA filed suit in bad faith, warranting departure from the first-to-file rule.

Another factor in the equitable analysis is whether the exercise of declaratory-judgment

jurisdiction would punish the true plaintiff's efforts to negotiate or, conversely, reward the declaratory plaintiff's bad-faith conduct.

> Potential plaintiffs should be encouraged to attempt settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before the plaintiff files a complaint.

*Z-Line Designs*, 218 F.R.D. at 666–67.

The *Xoxide* decision provides a telling example, with conduct similar to EA's here.   In *Xoxide*, trademark-holder Ford sent a letter to Xoxide on January 26, 2006, asserting that Xoxide was improperly violating Ford's intellectual-property rights.  *Xoxide*, 448 F. Supp. 2d at 1190.  After several weeks of negotiation, Ford sent another letter on March 9, demanding that Xoxide accept its settlement terms by March 23, or "Ford will have no choice but to seek a judicial resolution of this matter."  *Id.* at 1191.  Xoxide responded on March 23, seeking more time to consider its position. Before providing another response, however, Xoxide filed a declaratory action on April 3, 2006 in the Central District of California, seeking a declaration of non-infringement.  Six weeks later, on May 16, 2006, Ford filed its own affirmative suit for infringement in the Eastern District of Michigan, and then moved the California court to dismiss or transfer the first-filed action.  *Id.* at 1192.  The court granted the motion to dismiss, explaining that it would be inequitable to punish Ford for its good-faith attempts to negotiate:

> Here, as the owner of the marks, Ford attempted to minimize needless litigation and resolve the dispute amicably by negotiating a resolution outside of litigation. Xoxide responded by secretly filing a lawsuit in Los Angeles while giving the impression to Ford's representatives that it was making its best efforts to negotiate a settlement of the dispute. …Under these circumstances, Xoxide's suit was anticipatory and an improper attempt at forum shopping; the Court will not give such a suit the deference ordinarily reserved for first-filed actions. … Given these circumstances, the Court concludes that to impose the 'first-to-file' doctrine in this instance would unreasonably penalize Ford, which attempted to resolve the dispute before filing suit.  Accordingly, dismissal of the instant action is appropriate.

*Id.* at 1193–94 (internal citation and punctuation omitted).

These exact concerns are present here.  Given the history of prior licenses, litigation, and settlement between the parties, Textron Innovations' Texas litigation counsel offered to negotiate a

license as an alternative to filing suit.  On the afternoon of January 5, 2012, EA disingenuously responded that it was "currently reviewing the allegations in [Textron Innovations'] letter," and requested additional information.  (Runstadler Decl. Ex. 10.)  Yet after explicitly indicating its purported willingness to review Textron Innovations' claims, EA filed this anticipatory suit the very next day.  Exercising declaratory-judgment jurisdiction under such circumstances would unjustly force trademark owners to adopt the tactic of "sue first; ask later," which would have a chilling effect on the true plaintiff's good-faith efforts to resolve trademark disputes without initiating expensive litigation and wasting precious judicial resources.  *Xoxide*, 448 F. Supp. 2d at 1193-94; *Z-Line Designs*, 218 F.R.D. at 666–67.  Moreover, exercising jurisdiction over such a case would tacitly condone the sort of gamesmanship that should have no place in settlement negotiations or the legal profession generally.  The Court should decline to follow the first-to-file rule here and dismiss or stay this Action.

> 4.     The balance of convenience weighs in favor of the second-filed action.

In addition to the foregoing factors of bad faith, anticipatory suit, and forum shopping, "[a] court may relax the 'first to file' rule if the balance of convenience weighs in favor of the later-filed action."  *Z-Line Designs*, 218 F.R.D. at 665, 667 (internal citation and quotation marks omitted).  As discussed in the section below regarding Defendants' motion in the alternative to transfer the case to the Northern District of Texas, the balance of convenience weighs in favor of a stay or transfer.

### C.     In the Alternative, This Action Should Be Transferred to Texas

If this Court declines to dismiss EA's declaratory action outright, then the case should be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404.

Section 1404(a) states in relevant part:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Courts have developed lists of factors to consider in deciding whether to transfer venue.  This Court has recently set forward a list of factors that addresses both the private convenience and public interest prongs of the statute:  "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5)

familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1105–06 (N.D. Cal. 2001) (granting defendants' § 1404 transfer request and setting forth factors that accord with 9th Circuit precedent).

As a threshold issue, venue is proper in the transferee district because it is a district in which the Action could have otherwise been brought.  There is no legitimate dispute that EA could have brought this Action in the Northern District of Texas.  Venue is proper as to Bell, who is headquartered in that district.  (Runstadler Decl. ¶ 3.)  Venue is also proper as to Textron Innovations, as it routinely does business with Bell in the district, and even has one of its three employees stationed at Bell's Fort Worth headquarters.  (Runstadler Decl. ¶ 22.)  Indeed, venue is proper as to all three, as Textron Inc., Textron Innovations, and Bell previously availed themselves of that venue in the Prior Texas Action, which is a related case to the Current Texas Action.  *See Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F. Supp. 2d 654, 668 (N.D. Tex. 2002) (holding that defendant's filing of prior, related suits in Texas warranted the exercise of personal jurisdiction).  In addition, EA sells its video games in Texas, has a registered agent of process there, and therefore could have invoked the jurisdiction of the Northern District of Texas.  Moreover, EA admitted that it is subject to the personal jurisdiction of the Texas court and that venue in the Northern District of Texas is proper.  (Runstadler Decl. Ex. 3 ¶¶ 1.4–1.7.)

Because the Action could have been filed in the transferee district, the Court should consider the private and public factors, all of which weigh in favor of transfer.

        1.      EA's choice of forum is not entitled to deference.

While the plaintiff's choice of forum is often cited as a § 1404 factor, "the Ninth Circuit has established that courts should disregard a plaintiff's forum choice where the suit is a result of forum-shopping." *See Alexander*, 2007 WL 518859 at *4.  Because EA filed suit to avoid a forum that had previously ruled against it, EA's choice of forum should be given no weight. *See id.* (disregarding plaintiff's choice of forum where "[o]ne could reasonably infer forum shopping" where a plaintiff filed a lawsuit in California after receiving an unfavorable ruling in New Jersey); *Nortek*, 36 F.

Supp. 2d at 70 (holding that declaratory plaintiff "certainly shopped for a forum" by suggesting a willingness to consider additional information and then preemptively filing suit).

2.       The convenience of the parties weighs in favor of transfer.

The Northern District of Texas is a more convenient forum for Textron Inc., Textron Innovations, and Bell.  Bell is headquartered in Fort Worth, Texas.  The Northern District of Texas is also closer to Rhode Island, the principal place of business for Textron Inc. and Textron Innovations, than the Northern District of California.  Google Maps shows that Providence, Rhode Island is approximately 3100 miles from San Francisco, California, whereas it is only about 1800 miles away from Fort Worth, Texas.  Although EA's headquarters are in California, the fact that it admitted venue was proper in Ft. Worth in the Prior Texas Action where it previously litigated identical issues suggests a lack of significant burden.  (Runstadler Decl. Ex. 3 ¶¶ 1.4–1.7.)  This analysis weighs in favor of transfer as to three of the parties and is neutral as to EA.

3.       The convenience of the witnesses and ease of access to the evidence weigh in favor of transfer.

With regard to the convenience of witnesses and access to proof (factors 3 and 4), the Northern District of Texas is clearly the more convenient forum, as the following paragraphs show.

a.       Textron Innovations Witnesses and Documents

The Textron Innovations witnesses and documents likely to be relevant to this matter are located in Providence, Rhode Island and Fort Worth, Texas.  James Runstadler is the President of Textron Innovations.  (Runstadler Decl. ¶ 1.)  His office and documents are located in Providence, Rhode Island.  (*Id.* ¶ 22.)  Mr. Runstadler has information about the Prior Texas Action, the 2008 Settlement Agreement, the Term Sheet, the discussions leading up to the filing of this Action, and the decision to file the Current Texas Action.  (*Id.*)  In addition, he executed many of the relevant license and assignment agreements on behalf of Textron Innovations.  (*Id.*)  Sandra Pinto is the IP Administrative Coordinator for Textron Innovations.  She is located in Providence, Rhode Island.  Ms Pinto is the custodian of all of the licensing and assignment agreements related to the intellectual property at issue in this Action.  (*Id.*)  Robert Pascal, Textron Innovations' Intellectual Property Director, is located at Bell's offices in Fort Worth, Texas.  Mr. Pascal has information regarding

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

licensing projects involving Textron Innovations' intellectual property in the Bell helicopters at issue in this suit.  (*Id.*)

### b.   Bell Witnesses and Documents

Assuming subject-matter jurisdiction solely for sake of this transfer argument,[8] Bell's witnesses and documents are all located in Fort Worth, Texas or Amarillo, Texas.  (*Id.* ¶ 23.)  All Bell military aircraft, including the AH-1Z, UH-1Y, and V-22, are produced and delivered from Bell's facility in Amarillo, Texas.  The wing, rotors, and drive train of the V-22 are manufactured at Bell's facilities in Fort Worth, Texas.  Those subassemblies are sent to Bell's Amarillo facility for final assembly.  The AH-1Z and UH-1Y are solely manufactured by Bell.  (*Id.*)  The Bell witnesses and documents likely to be relevant to this matter are all located in Texas.  (*Id.*)  For example, Michael Miller, Director of Business Development, has knowledge of the sales and promotion of the Products-in-Suit.  Mr. Miller is located in Fort Worth, Texas.  (McKane Decl. ¶ 11.)  Michael Shaw, Director of Engineering Support, has knowledge of the design and development of the Products-in-Suit, including their unique and distinctive trade dress.  Mr. Shaw is located in Fort Worth, Texas.  (*Id.*)  The design and development documents related to the Products-in-Suit are located in Fort Worth, as are the advertising and marketing materials related to the Products-in-Suit.  (*Id.*)

### c.   Textron Inc. Witnesses and Documents

Assuming subject-matter jurisdiction solely for sake of this transfer argument,[9] to the extent any Textron Inc. witnesses and documents could be relevant to this matter, such witnesses and documents are located in Providence, Rhode Island.

---

[8] Because Bell neither owns nor holds an exclusive license to the trademarks or trade dress at issue in this suit (Runstadler Decl. ¶ 23), this Court lacks subject matter jurisdiction over Bell for all of the claims EA brought.  *See, e.g.*, *Top Victory Elecs. v. Hitachi Ltd.*, 2010 WL 4722482, *2 (N.D. Cal. 2010) ("A declaratory judgment action must be dismissed for lack of standing if the plaintiff fails to name the patent owner, assignee, or exclusive licensee, even if the plaintiff was led to believe that the named defendant was in fact the patent owner."); *Xilinx, Inc. v. Invention Inv. Fund I LP*, 2011 WL 3206686, 7 (N.D. Cal. 2011) (dismissing declaratory-judgment claims as to four defendants for lack of case or controversy where defendants did not own the patents-in-suit or possess the right to bring a suit in their own names).  If the Court denies the instant motion and the Action remains in the Northern District of California, Bell and Textron Inc. intend to move to dismiss the claims against them for lack of subject matter jurisdiction.
[9] Because Textron Inc. neither owns nor holds a license to the trademarks or trade dress at issue in this suit (Runstadler Decl. ¶ 24), the Court lacks subject matter jurisdiction over Textron Inc. for all of the claims EA brought.

d.      EA Witnesses and Documents

With regard to EA, its video games are marketed and sold nationwide, including in Texas. On information and belief, EA's "Battlefield 3" game was primarily developed in Sweden by an EA affiliate, not in California.

4.      The Northern District of Texas is more familiar with the applicable law and facts.

In addition to familiarity with the applicable law, courts often look to the familiarity of each forum with the underlying facts or the dispute between the parties.  *See Watson Pharm.*, 611 F. Supp. 2d at 1088 (granting defendants' § 1404(a) motion in part because the transferee court was "familiar with the underlying facts" and transfer would "conserve judicial resources").  Here, the Northern District of Texas has a high degree of familiarity with this dispute based on the nearly-identical Prior Texas Action concerning EA's unauthorized use of Textron Innovations' intellectual property in earlier versions of the "Battlefield" game series.  The Prior Texas Action was pending between 2006 and 2008 and involved significant discovery, motion-to-dismiss briefing, and a judicial order denying EA's motion to dismiss.

In addition, while both forums are no doubt familiar with federal trademark law, the Current Texas Action contains claims under the common law of Texas and the Texas Business & Commerce Code, with which the Northern District of Texas is undoubtedly more familiar.  Thus, conservation of judicial resources favors transfer of this entire dispute to the Northern District of Texas for an efficient resolution.  *See Watson Pharm.*, 611 F. Supp. 2d at 1088.

5.      Feasibility of consolidation with other claims favors transfer.

The feasibility of consolidating all of the claims at issue likewise favors a transfer to the Northern District of Texas.  Because Bell—as a non-owner and non-exclusive licensee of the intellectual property at issue—is not a proper declaratory-judgment defendant on the claims brought by EA here and therefore must be dismissed from the Action, Bell could not bring as a counterclaim plaintiff in this Action its sole pending claim in the Current Texas Action.  EA, by contrast, can bring both of the claims it asserted here as compulsory counterclaims against Textron Innovations— the owner of the intellectual property at issue—in the Current Texas Action.

6.      The Northern District of Texas has a greater interest in this dispute.

The Northern District of Texas has a local interest in this dispute based on the Prior Texas Action concerning nearly identical claims.  In addition, the Northern District of Texas has an interest in interpreting and applying the laws and statutes of the State of Texas, which are at issue.  Finally, the Northern District of Texas has an interest in this Action as Bell—the designer and developer of the Products-in-Suit—is located there.   While EA is headquartered in the Northern District of California, a substantial part of the acts leading to the dispute occurred in Texas, including EA's sales of the accused video games.

7.      Relative court congestion and time to trial in each forum suggests transfer.

The Northern District of Texas has a lesser case burden and a shorter file-to-trial time than the Northern District of California,[10] suggesting that the Texas forum would provide a more efficient resolution of the parties' dispute.

Finally, as mentioned previously, allowing EA's preemptive suit to proceed in this forum would discourage settlement attempts and reward a race to the courthouse built on EA's misdirection.  For all of these reasons, the private convenience and public interest factors weigh in favor of transfer to the Northern District of Texas, and Defendants respectfully submit that this Action should be transferred to that forum in the interest of judicial efficiency and fairness.

**D.      If This Court Decides to Retain Jurisdiction, Defendants Move to Change Time Pursuant to Civil Local Rule 6-3**

In the event this Court decides to exercise jurisdiction and deny the request to dismiss, transfer, or stay, Defendants hereby request 10 days from the date of the Court's order on this motion in which to answer EA's complaint or file a Rule 12(b) motion to dismiss.[11]  Pursuant to

---

[10] According to the latest statistics from the Federal Judiciary, for the 12-month period ending September 30, 2011, the Northern District of California had 6,645 civil cases pending with a median file-to trial time of 34.3 months, while the Northern District of Texas had 4,879 cases with a file-to-trial time of 20.2 months.  (*See* U.S. District Courts, Table C at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx, last visited February 29, 2012.)

[11] The motion currently before this Court is not a Rule 12(b) motion.  Requests to dismiss pursuant to the first-to-file rule and requests to decline the exercise of discretionary jurisdiction both fall outside the scope of Rule 12.  *See Fujitsu Ltd. v. Nanya Tech. Corp.*,  2007 WL 484789, 5 (N.D. Cal. 2007) (explaining that "motions under the first-to-file rule are generally considered to be outside of the ambit of the Rule 12(b) motions"); *Central United Life Ins. Co. v. Estate of Gleason*, No. CV 11-31-H-DWM, 2011 WL 6258448, at *1 (D. Mont. Dec. 15, 2011) ("The Estate brings its motion to dismiss under two legal theories: lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)and the right of a federal district court to decline to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.").  The same is true for motions to transfer pursuant to § 1404(a).  *See Convergence Techs. (USA), LLC v.*

1

2       Federal Rule of Civil Procedure (6)(b)(1)(A), this motion is made before the time to act has expired

3       and is supported by good cause.  Specifically, the resolution of Defendants' current motion to

4       dismiss, stay, or transfer prior to further litigation will best preserve judicial resources and avoid

5       potentially unnecessary litigation.  *See Fujitsu Ltd. v. Nanya Technology Corp.*,  2007 WL 484789,

6       5 (N.D. Cal. 2007) (providing 20 days after denial of the defendants' motion to dismiss or transfer in

7       which to file a responsive pleading and explaining that "motions under the first-to-file rule . . . are

8       often considered by courts prior to the filing of an answer.").  Pursuant to Civil Local Rule 6-3,

9       Defendants have provided the accompanying Declaration of Mark E. McKane and the Alternative

10      Proposed Order in support of Defendants' alternative motion to change time.[12]

11      **IV.    CONCLUSION**

12              For the reasons discussed above, Defendants respectfully request that the Court dismiss this

13      anticipatory Action or, in the alternative, stay or transfer the case to the Northern District of Texas

14      for the convenience of the parties and the conservation of judicial resources.  If this Court decides to

15      retain jurisdiction, Defendants request 10 days from the date of the Court's order on this motion in

16      which to answer EA's complaint or file a Rule 12(b) motion to dismiss.

17      DATED:  February 29, 2012.                    Respectfully submitted,

18                                                   KIRKLAND & ELLIS LLP

19                                                   */s/ Mark E. McKane*

20                                                   Mark E. McKane

21                                                   James F. Basile (SBN 228965)
                                                     james.basile@kirkland.com
22                                                   Mark E. McKane (SBN 230552)
                                                     mark.mckane@kirkland.com
23                                                   KIRKLAND & ELLIS LLP
                                                     555 California Street
24                                                   San Francisco, California  94104

25      *Microloops Corp.*, 711 F. Supp. 2d 626, 632–33 (E.D. Va. 2010) ("[I]t is well-understood that a motion to transfer
        pursuant to 28 U.S.C. § 1404 is distinct from a motion to dismiss pursuant to Rule 12(b)[.]"); *see generally Newmont*
26      *USA Ltd. v. American Home Assur. Co.*, No. CV-09-33-JLQ, 2009 WL 1764517, at *2 (E.D. Wash. Jun. 21, 2009) ("The
        motion before the court . . . seeks dismissal/transfer/stay based upon 1) the first to file rule, 2) forum non conveniens and
27      3) 28 U.S.C. § 1404(a). . . .  Whether the court should dismiss on these grounds is a discretionary decision which can be
        made at any time.").

28      [12] As of today, Defendants have reached an agreement in principle with EA on the requested time change and expect to
        submit a stipulation for this Court's approval in the coming days.   (McKane Decl. ¶ 9.)

1

Telephone: (415) 439-1400
Facsimile: (415) 439-1500

2

3

Gregg F. LoCascio, P.C. (*pro hac vice*)
gregg.locascio@kirkland.com
Eugene F. Assaf (*pro hac vice*)

4

eugene.assaf@kirkland.com
KIRKLAND & ELLIS LLP

5

655 Fifteenth Street, N.W.
Washington, D.C.  20005

6

Telephone: (202) 879-5000
Facsimile: (202) 879-5200

7

8

Jeanne M. Heffernan (*pro hac vice*)
jeanne.heffernan@kirkland.com
KIRKLAND & ELLIS LLP

9

601 Lexington Avenue
New York, New York  10022

10

Telephone:  (212) 446-4800
Facsimile:  (212) 446-6460

11

12

Attorneys for Defendants
TEXTRON INC., BELL HELICOPTER TEXTRON
INC., and TEXTRON INNOVATIONS INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28