1  KEKER & VAN NEST LLP
   R. JAMES SLAUGHTER, #192813
2  rslaughter@kvn.com
   R. ADAM LAURIDSEN, #243780
3  alauridsen@kvn.com
   633 Battery Street
4  San Francisco, CA 94111-1809
   Telephone:    415-391-5400
5  Facsimile:    415-397-7188

6  Attorneys for Plaintiff
   ELECTRONIC ARTS INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 ELECTRONIC ARTS INC.,                | Case No. CV-12-0118-WHA

12              Plaintiff,               | **OPPOSITION TO DEFENDANTS'
                                         | MOTION TO DISMISS OR, IN THE
13      v.                               | ALTERNATIVE, STAY OR TRANSFER**

14 TEXTRON INC., BELL HELICOPTER         | Date:        April 26, 2012
   TEXTRON INC. and TEXTRON              | Time:        8:00 a.m.
15 INNOVATIONS INC.,                     | Ctrm:        8, 19th Floor
                                         | Judge:       Hon. William H. Alsup
16              Defendants.              |
                                         | Date Comp. Filed:    January 6, 2012
17

18

19

20

21

22

23

24

25

26

27

28

635866.04

# **Table of Contents**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 2

    A.     EA's Expressive Work *Battlefield 3* ........................................................ 2

    B.     The Dispute Between EA and Textron ...................................................... 3

III.   ARGUMENT ....................................................................................................... 5

    A.     The Court Should Retain Jurisdiction Over EA's Declaratory
          Judgment Action. ...................................................................................... 5

          1.     Textron's Threat of "Legal Remedies" Provides a Valid
                  Basis for Declaratory Judgment Jurisdiction. ................................. 6

          2.     EA Did Not Engage in an Improper "Race to the
                  Courthouse" or in Bad-Faith "Sham" Negotiations............................ 7

    B.     The First-To-File Rule Applies Here........................................................ 10

          1.     EA's first-filed action was not improperly anticipatory. .................. 11

          2.     EA's first-filed action was not the result of forum
                  shopping........................................................................................... 13

          3.     EA's first-filed action was not filed in bad faith. ............................. 15

          4.     The balance of convenience weighs in favor of EA's first-
                  filed action. ..................................................................................... 16

    C.     The Court Should Not Transfer EA's Action Because The
          Northern District of California Is The More Convenient Forum.................. 16

          1.     EA's forum choice should be respected. .......................................... 17

          2.     Textron's repeated filing of trademark actions in
                  California demonstrates that it will not be inconvenienced
                  by litigation here. ............................................................................ 17

          3.     The Northern District of California will be more
                  convenient for both party and third-party witnesses and
                  will provide easier access to relevant evidence. ............................... 18

          4.     The Northern District of California and Northern District

i

of Texas are equally familiar with applicable law.............................20

5.   The Texas Action may be feasibly consolidated with this
action.....................................................................................................20

6.   The Northern District of California possesses a stronger
localized interest in this action than the Northern District
of Texas...............................................................................................21

7.   The relative congestion of the Courts does not favor
transfer. ...............................................................................................22

8.   The balance of factors does not strongly favor transferring
this action to Texas. ...........................................................................22

IV.   CONCLUSION............................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

635866.04

1

## <u>TABLE OF AUTHORITIES</u>

2

3   **Federal Cases**

4

*Acclarent, Inc. v. Quest Med., Inc.*
5      2006 WL 2982301 (N.D. Cal. Oct. 17, 2006)....................................................... 13

6   *Adidas Am., Inc. v. Herbalife Int'l, Inc.*
       2010 WL 596584 (D. Or. Feb. 12, 2010)........................................................... 14

7
    *Alexander v. Franklin Resources, Inc.*
8      2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ..................................................... 14

9   *Alltrade, Inc. v. Uniweld Prods., Inc.*
       946 F.2d 622 (9th Cir. 1991) ........................................................................... 10
10
    *Aluminium v. Hunter Eng'g Co.*
11     655 F.2d 938 (9th Cir. 1981) ............................................................................. 6

12  *Barnes & Noble, Inc. v. LSI Corp.*
       --- F. Supp. 2d ---, 2011 WL 4948598 (N.D. Cal. Oct. 18, 2011) .................. 11, 15, 16, 18
13
    *Biodiversity Legal Found. v. Badgley*
14     309 F.3d 1166 (9th Cir. 2002) ........................................................................... 6

15  *Brackett v. Hilton Hotels Corp.*
       619 F. Supp. 2d 810, 820 (N.D. Cal. 2008). ..................................................... 18
16
    *Brown v. E.M.A.*
17     131 S. Ct. 2729 (2011) .................................................................................... 15

18  *Bryant v. Oxxford Express, Inc.*
       181 F. Supp. 2d 1045 (C.D. Cal. 2000) ...................................................... 10, 12
19
    *Charles Schwab & Co. v. Duffy*
20     49 U.S.P.Q. 2d 1862 (N.D. Cal. Dec. 8, 1988).................................................. 9

21  *Commodity Futures Trading Comm'n v. Savage*
       611 F.2d 270 (9th Cir. 1979) ........................................................................... 16
22
    *Decker Coal Co. v. Commonwealth Edison Co.*
23     805 F.2d 834 (9th Cir. 1986) ................................................................. 11, 16, 19

24  *DeFeo v. Procter & Gamble Co.*
       831 F. Supp. 776 (N.D. Cal. 1993) ..................................................................... 8
25
    *Dillinger LLC v. Electronic Arts Inc.*
26     2011 WL 2457678 (N.D. Ind. June 16, 2011) .................................................. 15

27  *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*
       547 F.3d 1095 (9th Cir. 2008) ..................................................................... 15, 20

28

iii

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

*Houston Trial Reports, Inc. v. LRP Publications, Inc.*
    85 F. Supp. 2d 663 (S.D. Tex. 1999) ............................................................. 18

*Inc. v. Fisher Commc'ns, Inc.*
    2011 WL 197419 (W.D. Wash. Jan 19, 2011) .................................................. 9

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*
    544 F. Supp. 2d 949 (N.D. Cal. 2008) ........................................ 12, 13, 14, 15

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC.*
    2007 WL 4532214 (N.D. Cal. Dec. 19, 2007) ................................................ 21

*Nortek, Inc. v. Molnar*
    36 F. Supp. 2d 63 (D. R.I. 1999) ...................................................................... 9

*Puri v. Heathside Food Solutions LLC*
    2011 WL 6257182 (C.D. Cal. Dec. 13, 2011) ................................................ 13

*Rhoades v. Avon Prods., Inc.*
    504 F.3d 1151 (9th Cir. 2007) ........................................................................... 6

*Royal Queentex Ent., Inc. v. Sara Lee Corp.*
    2000 WL 246599 (N.D. Cal. Mar. 1, 2000) ................................................ 7, 12

*Schmitt v. JD Edwards World Solutions Co.*
    2001 WL 590039 (N.D. Cal. May 21, 2001) .................................................... 8

*Secs. Inv. Prot. Corp. v. Vigman*
    764 F. 2d 1309 (9th Cir. 1985) ....................................................................... 16

*Sony Computer Entm't Am. Inc. v. Am. Med. Resp., Inc.*
    2007 WL 781969 (N.D. Cal. Mar. 13, 2007) .................................................... 6

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*
    497 F.3d 1271 (Fed. Cir. 2007) ......................................................................... 7

*Stomp, Inc. v. NeatO, LLC*
    61 F. Supp. 2d 1074 (C.D. Cal. 1999) ........................................................... 13

*Summit Entm't, LLC v. Bath & Body Works Brand Mgmt., Inc.*
    2011 WL 2649973 (C.D. Cal. July 5, 2011) ........................................ 12, 13, 14

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*
    819 F.2d 746 (7th Cir. 1987) ............................................................................ 8

*Topics Entm't Inc. v. Rosetta Stone Ltd.*
    2010 WL 55900 (W.D. Wash. Jan. 4, 2010) .................................................... 9

*Ward v. Follett Corp.*
    158 F.R.D. 645 (N.D. Cal. 1994) ............................................................. 11, 13

*Xoxide, Inc. v. Ford Motor Co.*
    448 F. Supp. 2d 1188 (July 21, 2006) ................................................. 8, 11, 12

iv

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

*Xtended Beauty v. Xtreme Lashes*
    2007 WL 2669895 (N.D. Cal. Sept. 7, 2007) .................................................................. 12

*Z-Line Designs, Inc. v. Bell'o Int'l LLC*
    218 F.R.D. 663 (N.D.Cal. Oct. 29, 2003) ........................................................... 9, 11, 16

**Federal Statutes**

28 U.S.C. § 1404(a) ................................................................................................... 1, 5, 22

**Federal Rules**

Fed. R. Civ. P. 42 ................................................................................................................ 21

**Constitutional Provisions**

First Amendment ....................................................................................... 4, 5, 11, 15, 20

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

635866.04

## I.      INTRODUCTION

Seven weeks after Plaintiff Electronic Arts Inc. ("EA") filed this trademark and trade dress action (the "California Action"), Defendants Textron Innovations Inc. and Bell Helicopter Textron Inc. filed a mirror-image action in the Northern District of Texas (the "Texas Action"). The Texas Action concerns the same expressive work (EA's videogame *Battlefield 3*), the same purported trademarks and trade dress for three Bell-manufactured helicopters, and the same federal and constitutional issues regarding EA's rights to use those purported marks in its expressive work.  EA has moved the Texas court to transfer the Texas Action to this Court under the first-to-file rule, or, in the alternative, for convenience under 28 U.S.C. § 1404(a).  The parties will complete briefing on EA's Texas motion by April 16, 2012 and a hearing may be held thereafter at the discretion of the Texas court.

Days after filing the Texas Action, Textron[1] filed this motion to dismiss, stay or transfer EA's first-filed action.  Textron's three largely-redundant arguments for legitimizing their subsequently-filed action fail, and its motion therefore should be denied.

First, EA properly filed this declaratory judgment action following Textron's threats of litigation.  EA had a right to seek judicial relief from the cloud of allegations Textron had placed over its newly released expressive work, *Battlefield 3*.  EA's action was not improperly anticipatory.  It was filed nearly two months after EA rejected Textron's initial licensing demand and more than two weeks after receiving Textron's subsequent letter containing a general threat of "legal remedies."

Second, Textron has provided no legitimate basis for departing from the first-to-file rule. EA did not "race to the courthouse" to beat a deadline set by Textron, nor did it engage in ruse settlement negotiations to delay Textron's filing.  A justiciable dispute has existed between the parties since November 7, 2011, and either party properly could have filed an action since that date.  Textron's allegations of forum shopping and bad faith are similarly meritless.  EA filed the

---

[1]      Hereafter, EA refers to Defendants Textron Inc., Textron Innovations Inc. and Bell Helicopter Textron Inc. collectively as "Textron."

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

635866.04

California Action in its home forum where a significant portion of the conduct at issue occurred, and did not engage in bad faith tactics by seeking relief once it was clear that the parties had a justiciable dispute.

Third, Textron fails to meet its burden of demonstrating that the Northern District of Texas would be a more appropriate venue for this action.  Textron has previously filed multiple lawsuits in California attempting to enforce its purported trademark and trade dress rights.  By availing itself of the California courts—including the Northern District of California, where EA is located and this action was filed—Textron confirms that California courts are convenient fora.  Moreover, Textron Innovations—owner of the purported marks at issue and the plaintiff in five of the Texas Action's six claims—is a **Rhode Island** company.  It cannot claim that Texas is a demonstrably more convenient forum than California.  Finally, numerous party and third party witnesses are located in California.  EA employees and documents relating to EA's marketing, public relations, online resources and licensing are located at EA's Redwood City, California headquarters.  Similarly, the Northern District of California is a more convenient venue for likely third-party witnesses for both parties.  For instance, Textron Innovation's licensing agent for the purported trademarks and trade dress at issue here is based in San Diego, California.

For these reasons and others described below, this Court should deny Textron's motion.

## II.   BACKGROUND

EA is one of the world's leading developers and publishers of computer and videogames.  Among EA's expressive works is *Battlefield 3*, which it released on October 25, 2011.  EA maintains its principal place of business in Redwood City, California.  Compl. (Doc. No. 1) ¶ 11.

### A.   EA's Expressive Work *Battlefield 3*

*Battlefield 3* is a first-person, interactive combat simulation videogame built upon an original "ripped-from-the-headlines" story.  *See* Compl. ¶ 16.  Set in the year 2014, the game allows players to assume command of United States soldiers dispatched to stop a terrorist plot involving nuclear weapons near the Iran-Iraq border.  *Id.*  The game realistically and authentically depicts modern-day armed conflict on land, in air and at sea.  *Id.*  One of the ways

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

*Battlefield 3* accurately depicts military combat is by giving game players control of the weapons, accessories and vehicles—from tanks and jeeps to jets and naval assault vehicles—used by the United States military. *Id.* Among the more than twenty-five different modern-day vehicles built by a variety of manufacturers depicted in *Battlefield 3* are the Bell-manufactured AH-1Z, UH-1Y and V-22 helicopters. *Id.*

EA's depiction of the Bell-manufactured helicopters is directly relevant to the game's storyline and is indistinguishable from the reference and use of such vehicles in countless realistic war-themed books and movies, for which no license is necessary. *See* Compl. ¶ 18. Additionally, EA's depiction of the Bell-manufactured helicopters in its expressive work in no way misleads consumers as to the source or content of the work. *Id.* ¶ 19. Nothing in or related to the game contains any indication that Plaintiffs endorse the game or had a role in producing it. *Id.* Indeed, the packaging of *Battlefield 3* contains an explicit disclaimer that the depiction of any weapon or vehicle in the game does *not* indicate affiliation, sponsorship or endorsement by any weapon or vehicle manufacturer. *Id.* Moreover, the Bell-manufactured helicopters are not highlighted or given greater prominence than any of the other vehicles within the game. *Id.*

## B.    The Dispute Between EA and Textron

On October 7, 2011, pursuant to a previously executed agreement, EA informed Textron Innovations of the release of *Battlefield 3* and that the game would contain virtual images of three Bell-manufactured helicopters. *See* Lauridsen Decl., Ex. A. Contrary to Textron's assertion, Mot. at 2:12-15, negotiations did not "ensue[] and escalate[]" following this notice. Rather, on October 21, 2011, Textron Innovations responded by asserting that EA must obtain a license to use virtual images of the Bell helicopters in its expressive work and that unlicensed use could constitute trademark and trade dress infringement.[2] *See* Lauridsen Decl., Ex. B. Textron

---

[2]      Textron has pursued trademark and trade dress claims against EA in the past, filing a lawsuit in the Northern District of Texas on December 1, 2006 regarding a different EA videogame. *See Bell Helicopter Textron Inc. v. Electronic Arts Inc.*, 06-cv-0841 (N.D. Tex.). That action was dismissed following the court's denial of EA's motion to dismiss the complaint for failure to state a claim—the only substantive motion filed by either party in the case—and a subsequent settlement reached between the parties.

3

635866.04

1   Innovations requested more information so that it could determine whether EA would be

2   "granted a license" for its depiction of Bell-manufactured helicopters in *Battlefield 3*.

3        On November 7, EA responded with a categorical rejection of Textron's position and its

4   demand for a license.  EA stated that its virtual depiction of military vehicles in its expressive

5   work *Battlefield 3* was protected by the First Amendment and did not constitute trademark or

6   trade dress infringement.  *See* Lauridsen Decl., Ex. C.  EA did not engage Textron in licensing

7   discussions.  Just the opposite—EA stated "**we do not believe a license is necessary**."  *Id.*

8   (emphasis added).  EA's position was unequivocal, and the November 7 letter did not request a

9   response from Textron.

10        On December 21, 2011, EA received a letter from the same litigators representing

11   Textron in the Texas Action.  In the letter, the litigators informed EA that they represented

12   Textron Inc., Bell Helicopter Textron Inc., and Textron Innovations Inc. (collectively "Textron")

13   and demanded that EA cease depicting Bell-manufactured helicopters in its expressive works,

14   including *Battlefield 3*.  *See* Lauridsen Decl., Ex. D.  This letter also introduced new allegations

15   regarding packaging and instruction materials used in connection with *Battlefield 3*.  *Id.*  The

16   letter did not contain a deadline for EA's response—nor would one have made sense because

17   there was no ongoing discussion between the parties.  *Id.*  Rather, the letter contained a general

18   threat that Textron would seek "legal remedies" if EA did not immediately cease use of the

19   purported marks and compensate Textron for "past use."  *Id.*  In a declaration filed in support of

20   Textron's motion, the President of Textron Innovations confirms that, upon sending the

21   December 21 letter, "Textron Innovations was prepared to enforce its rights."  Doc. No. 37

22   (Runstadler Decl.) ¶ 18.

23        On January 5, 2012, EA confirmed receipt of the December 21 letter.  *See* Lauridsen

24   Decl., Ex. E.  EA also informed Textron that it had investigated one of the new allegations

25   contained in the December 21 letter, regarding packaging and instruction materials, and found no

26   support for Textron's allegations.  *Id.*  EA offered to review any additional evidence that Textron

27   claimed to possess for those specific allegations only—"packaging and instruction manuals," not

28

the game itself.  EA did not offer to discuss a license with Textron.

On January 6, 2012, EA filed this action against Textron.  EA seeks a declaration that EA's expressive work *Battlefield 3* does not infringe trademarks or trade dress held by Textron.  EA alleges, in part, that its identification and depiction of Bell-manufactured helicopters in *Battlefield 3* are protected by the First Amendment and the doctrine of nominative fair use.  EA served all three defendants on the next business day following the filing.[3]  *See* Doc. Nos. 9-11.

In late January 2012, Textron's California lawyers requested an extension of time to respond to this action.  *See* Lauridsen Decl. ¶ 23.  On January 30, 2012, Textron and EA stipulated to a 30-day extension of the California Action response date, placing the deadline on February 29, 2012.  *See* Doc. No. 17.  At no time during this discussion did Textron or its lawyers inform EA that it intended to file a duplicative action in Texas, challenge EA's decision to file the California Action, or contest this Court's jurisdiction to hear the California Action.

On February 24, 2012, seven weeks after EA filed this action and over a month after Textron's California lawyers asked for an extension of time to respond to it, Textron Innovations and Bell Helicopter Textron filed the Texas Action.  They assert, *inter alia*, that EA's depiction of Bell-manufactured helicopters constitutes trademark and trade dress infringement.  Textron Inc. is a defendant in this action but is not a party in Texas.

On March 12, 2012, EA filed a motion in the Northern District of Texas to transfer the Texas Action to this court.  EA argues that the Texas Action should be transferred under the first-to-file rule or, alternatively, for convenience under 28 U.S.C. § 1404(a).  The parties anticipate that briefing will be complete in the Northern District of Texas on April 16, 2012.

## III.  ARGUMENT

### A.  The Court Should Retain Jurisdiction Over EA's Declaratory Judgment Action.

---

[3]     Despite service of the Complaint on all defendants within one business day, *see* Doc. Nos. 9-11, Textron incorrectly asserts that EA "remained mum about the suit for one week." Mot. at 6:22-23.

1.     **Textron's Threat of "Legal Remedies" Provides a Valid Basis for Declaratory Judgment Jurisdiction.**

"The purpose of the Declaratory Judgment Act is to give litigants an early opportunity to resolve federal issues to **avoid 'the threat of impending litigation**.'"  *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1172 (9th Cir. 2002) (emphasis added).  "[A]n action for a declaratory judgment that a patent [or trademark] is invalid, or that the plaintiff is not infringing, [presents] a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product."  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (alterations in original; quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555-56 (9th Cir. 1990)).

Courts routinely retain jurisdiction over declaratory judgment actions filed following threats of trademark litigation by the declaratory judgment defendant.  For example, in *Rhoades*, the Ninth Circuit found that the plaintiff possessed a "reasonable apprehension of an infringement suit" based on allegations that "1) Avon's lawyer specifically threatened a trademark infringement suit at a meeting; 2) Avon's counsel wrote a letter threatening 'additional proceedings or litigation'; and 3) Avon's counsel told [plaintiff's] counsel that Avon would not give up its right to damages."  *Rhoades*, 504 F.3d at 1158 (emphasis added); *see also Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir. 1981).  In *Sony Computer Entm't Am. Inc. v. Am. Med. Resp., Inc.*, 2007 WL 781969, at *1 (N.D. Cal. Mar. 13, 2007), a trademark owner sent a draft complaint to an allegedly infringing videogame company and warned that "the complaint might be filed without further notice" if the company did not cease all uses of the mark within ten days.  The videogame company filed its declaratory judgment complaint the first business day after the ten-day deadline expired because "Defendant threatened legal action against Plaintiff" and "Plaintiff perceived the possibility of a future suit."  *Id.* at *1 & *5.  These threats of litigation prior to the filing of the plaintiff's declaratory judgment action did not make the exercise of jurisdiction improper—they provided

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

635866.04

1  the basis for the courts' declaratory judgment jurisdiction.[4]

2        Here, the Court should reject Textron's claim that declaratory judgment jurisdiction is

3  improper.  Textron first demanded that EA take a license to its purported trademarks and trade

4  dress on October 21, 2011, and a justiciable conflict between the parties was created as of

5  November 7, 2011, when EA unequivocally rejected Textron's demand that it pay a licensing

6  fee.  See Lauridsen Decl., Exs. B & C.  On December 21, 2011, Textron sent EA another letter

7  reiterating the same licensing demand that EA had already rejected on November 7.  *See id.*, Ex.

8  D.  At no point did EA negotiate with Textron, or even indicate a willingness to negotiate.

9  Textron's unilateral requests that EA seek a license from it did not transform their letter

10  exchange into a negotiation.  To the contrary, it was clear from this exchange that both parties

11  were fixed on their original positions, and either party was free to seek judicial relief at that time.

12  Accordingly, more than two weeks after Textron's December 21 letter—and nearly two months

13  after telling Textron that EA would not take a license— EA filed this action to ensure that

14  Textron's unreasonable demands would not leave an indefinite cloud over the just-released

15  *Battlefield 3* game.[5]

16         **2.**     **EA Did Not Engage in an Improper "Race to the Courthouse" or in**
           **Bad-Faith "Sham" Negotiations.**

17

18        Contrary to Textron's claims, the threat of legal action alone does not make any

19  subsequent declaratory judgment action filed against the threatening party an improper attempt to

20  "race to the courthouse."  Courts require evidence of some improper or unfair behavior by the

21  plaintiff when declining to exercise declaratory judgment jurisdiction.  *See Royal Queentex Ent.,*

22  *Inc. v. Sara Lee Corp.*, 2000 WL 246599, at *4 (N.D. Cal. Mar. 1, 2000) ("[T]he court was not

---

23  [4]     Until recently in the Federal Circuit, threats of litigation were not merely permissible

24  grounds for declaratory judgment jurisdiction, but were required.  *See Sony Elecs., Inc. v.
Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007).

25  [5]     EA had reason to believe that Textron would use its allegations to create open-ended

26  uncertainty over EA's expressive work.  In Bell's 2006 dispute with EA over a different game,
nearly six months passed between Bell's initial, unsuccessful licensing demand and its eventual

27  infringement action against EA.  *See* Lauridsen Decl., Exs. F & P.  Here, EA has a right to seek
declaratory relief to avoid a similar extended period of uncertainty regarding the newly-released
*Battlefield 3* game.

28

1   penalizing plaintiff for winning the race to the courthouse; rather, the court penalized plaintiff for

2   the tactics used to win the race.").  All the cases cited by Textron involve improper or unfair

3   litigation tactics not present here, such as filing immediately upon the threat of litigation or ruse

4   settlement negotiations.  There is no equitable reason, therefore, for the Court to decline

5   declaratory judgment jurisdiction.

6        Textron had ample time to file its own action following EA's rejection of its demand for

7   a license and Textron's subsequent threat of legal action.  EA's conduct therefore does not

8   resemble the cases cited by Textron in which the plaintiff immediately—within 24 hours of

9   receiving the threat—filed a declaratory judgment action.  *See Schmitt v. JD Edwards World*

10  *Solutions Co.*, 2001 WL 590039, at *1 (N.D. Cal. May 21, 2001) (declaratory judgment action

11  filed same day as litigation threat and by which defendant had promised to file an action); *DeFeo*

12  *v. Procter & Gamble Co.*, 831 F. Supp. 776, 777 (N.D. Cal. 1993) (declaratory judgment action

13  filed the same day as litigation threat);[6] *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819

14  F.2d 746, 747 (7th Cir. 1987) (declaratory judgment action filed the same day as defendant's

15  statement that it would file action).  Here, more than two weeks passed from Textron's threat of

16  litigation to EA's filing—not to mention the two months since EA equivocally told Textron that

17  it did not need a license for its expressive work.  EA was not required to wait for an indefinite

18  period before seeking judicial relief from the cloud of Textron's allegations and threats of legal

19  action.

20       Moreover, EA did nothing—let alone anything misleading—to delay Textron from filing

21  an action.  This action does not resemble cases cited by Textron in which declaratory judgment

22  plaintiffs initiated "ruse" settlement negotiations and/or requested extensions of compliance

23  deadlines to allow them to race to court.  *See Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d

24  1188, 1191 (July 21, 2006) (plaintiff repeatedly requested compliance-deadline extensions and

25

26  ――――――――――――――――――
    [6]      The language Textron cites from *DeFeo* also is dicta.  *See Mot.* at 7:14-16.  The *DeFeo*
27  court declined jurisdiction based on the presence of an overlapping state action.  831 F. Supp. at
    778.  "In such cases, there is a presumption that the entire suit should be heard in state court."
    *Id.*  No such state action exists here.
28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

filed a declaratory judgment action during the extra time granted by defendant); *Z-Line Designs, Inc. v. Bell'o Int'l LLC*, 218 F.R.D. 663 (N.D.Cal. Oct. 29, 2003) (plaintiff repeatedly requested compliance-deadline extensions and filed a declaratory judgment action the day before the final deadline expired); *Charles Schwab & Co. v. Duffy*, 49 U.S.P.Q. 2d 1862, 1864 (N.D. Cal. Dec. 8, 1988) (plaintiff sent defendant a letter "that may have misled [defendant] as to [plaintiff's] settlement intentions").[7]

Here, Textron never set a deadline by which it would file an action and EA never requested more time to negotiate.  EA did not engage in any negotiations, or do anything else that could have led Textron to delay a lawsuit.  Textron attempts to portray a single January 5, 2012 email as "feigning interest in pursuing an amicable resolution outside of the courts."  Mot. at 9:1-4.  But at the time EA sent the email, it had already rejected Textron's demands regarding the game itself.  As the text of the email makes clear, EA was responding only to Textron's new allegations regarding packaging and instructions and it expressly told Textron that EA had found no support for those allegations.  *See* Lauridsen Decl., Ex. E.  The email contains no indication that EA had moved from its established position that it needed no license and was not infringing Textron's marks.

Significantly, Textron fails to assert that it in fact delayed filing an action based on any statements or conduct of EA, including the January 5 email on which it so heavily relies.  The record is similarly bereft of any circumstantial support for such a claim.  Indeed, Textron's post-

---

[7]     The cases Textron cites from other district and circuits similarly all involve ruse settlement negotiations or deadline extensions, and therefore provide no support for declining jurisdiction here.  *See AmSouth Bank Dale*, 386 F. 3d 763, 790 (6th Cir. 2004) (plaintiff sent letters indicating that settlement negotiations were ongoing, stated that it was considering defendant's settlement offer and offered to schedule a meeting before filing declaratory judgment action); *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 65-66 (D. R.I. 1999) (plaintiff sought extension of offer deadline to "discuss a possible resolution," then filed a declaratory judgment action the next day); *ivi, Inc. v. Fisher Commc'ns, Inc.*, 2011 WL 197419, at *1-2 (W.D. Wash. Jan 19, 2011) (plaintiff sent letters expressing desire to negotiate, then filed declaratory judgment action day before compliance deadline); *Topics Entm't Inc. v. Rosetta Stone Ltd.*, 2010 WL 55900, at *1-2 (W.D. Wash. Jan. 4, 2010) (plaintiff filed declaratory judgment action while awaiting defendant's settlement offer and despite a prior agreement that no party would file an action without further communication).

filing conduct contradicts any inference that it was on the verge of filing an action but for EA's

conduct.  Textron's first response to this action was to seek an additional month to respond to it.

*See* Doc. No. 17.  Only on the eve of that extended response date—seven weeks after EA's

filing—did Textron file its own action in the Northern District of Texas.  This is not a case, like

many of those cited by Textron, where the parties' complaints are filed within hours or days of

each other.  Textron's delay in pursuing its own case is further evidence that the California

Action cannot be deemed improper anticipatory litigation.

### B.     The First-To-File Rule Applies Here.

"The first-to-file rule states that when two suits are pending involving the same parties

and issues, the action filed first ordinarily should proceed to judgment."  *Bryant v. Oxxford

Express, Inc.*, 181 F. Supp. 2d 1045, 1048 (C.D. Cal. 2000).  The rule "was developed to "serve[]

the purpose of promoting efficiency well and should not be disregarded lightly."  *Alltrade, Inc. v.

Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).  "Three threshold factors should be

considered in deciding whether to apply the first-to-file rule: (1) the chronology of the two

actions; (2) the similarity of the parties; and (3) the similarity of the issues."  *Bryant*, 181 F.

Supp. 2d at 1048 (enjoining subsequently-filed trademark infringement action in favor of first-

filed declaratory judgment action).  Because this action satisfies all three factors, the Court

should allow it to proceed to judgment and deny Textron's motion to dismiss, stay or transfer.

Textron does not dispute that the Texas Action was filed seven weeks after this one.  *See*

Mot. at 6-7.  Moreover, Textron's motion concedes, for good reason, that there is nearly

complete overlap between this action and the subsequently-filed Texas Action.  *See* Doc. No. 37

¶ 21 ("The Current Texas Action relates to EA's use of the Products-in-Suit in the 'Battlefield 3'

games and related advertising, just as the California Action does.").  The actions involve the

same parties (EA, Bell Helicopter Textron Inc., and Textron Innovations Inc.), the same

expressive work (*Battlefield 3*) and the same federal legal issues (whether EA's depiction of

Bell-manufactured helicopters in *Battlefield 3* constitutes trademark and trade dress infringement

and, relatedly, whether EA's use of Textron's alleged marks in its expressive work is protected

by the First Amendment and the doctrine of nominative fair use). *See id.*, Ex. G.[8]

Textron needlessly subjected the court system and EA to unnecessary and inefficient litigation when it knowingly filed a subsequent duplicative action in the Northern District of Texas.  To prevent such wasteful tactics, it is within this Court's discretion to enjoin Textron from pursuing the Texas action.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  At a minimum, the Court should deny Textron's motion and retain jurisdiction over EA's undisputedly first-filed action.

Because Textron cannot escape the general application of the first-to-file rule, it argues that this case is exceptional and warrants a rare departure from that rule.  But as explained below, "Defendants have provided [no] evidence of bad faith, anticipatory suit, or forum shopping that would distinguish this case from virtually any declaratory judgment action in which a party could show a reasonable threat of suit so as to satisfy the case or controversy requirement." *Barnes & Noble, Inc. v. LSI Corp.*, --- F. Supp. 2d ---, 2011 WL 4948598, at *10 (N.D. Cal. Oct. 18, 2011).

### 1.     EA's first-filed action was not improperly anticipatory.

"Generally a suit is anticipatory when the plaintiff filed its suit upon receipt of **specific, concrete indications** that a suit by the defendant was imminent." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994) (emphasis added).  As previously discussed regarding declaratory judgment jurisdiction, "specific, concrete indications" of an imminent action include a deadline for compliance or express indication regarding when a suit will be filed.  The two cases Textron relies upon in arguing that EA's action was anticipatory—*Z-Line Designs* and *Xoxide*—include such indications.  In *Z-Line Designs*, 218 F.R.D. at 664, "defendant's counsel set a 'final deadline of July 30,' and asserts that he made clear to Z-Line that Bell'O would file suit if Z-Line did not agree to settlement."  Z-Line filed a declaratory judgment action on July 29, two days before Bell'O followed through on its threat and filed its own action.  *Id.* at 665.

---

[8]     Textron's tag-along Texas trademark and dilution claims—assuming they are more than simply a means of attempting to manufacture a greater connection to Texas—may be brought here as counterclaims.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

635866.04

1    Similarly, in *Xoxide*, 448 F. Supp. 2d at 1191, the defendant demanded that Xoxide return an

2    executed settlement agreement by March 23, 2006.  On March 23, Xoxide responded with a

3    letter labeled "confidential settlement discussion and offer" that requested "2 to 3 business days

4    to complete [its] consideration and response."  *Id*.  Six business days later and with no further

5    communications indicating that it was rejecting the settlement offer, Xoxide filed its declaratory

6    judgment action.  *Id*.

7           In contrast to declaratory judgment actions motivated by such "specific, concrete

8    indications," filing a declaratory judgment action when faced with more generalized threats is

9    not improper anticipatory litigation.  "[A] letter which suggests the possibility of legal action …

10   in order to encourage or further a dialogue[] is not a specific, imminent threat of legal action."

11   *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 960 (N.D. Cal.

12   2008) (citations and quotations omitted).  "[T]here is no requirement that a business threatened

13   with the *possibility* of an infringement lawsuit wait to be served."  *Id*. at 961.  For example, in

14   *Royal Queentex Ent.,* 2000 WL 246599, at *1, defendant stated in a threat letter that it was

15   "willing to forego legal action to enforce its rights only if we receive prompt written assurances

16   that [plaintiff] will immediately discontinue all us [sic] of any name containing [the marks]."

17   The court found that the letter "constituted specific, concrete indications of a legal dispute,"

18   sufficient to justify declaratory judgment jurisdiction, "but not specific, concrete indications that

19   suit was imminent," sufficient to make the declaratory judgment action improperly anticipatory.[9]

20   *Id*. at *5.

21          Textron's December 21, 2012 letter to EA, containing language almost identical to the

22

23   [9]      *See also Summit Entm't, LLC v. Bath & Body Works Brand Mgmt., Inc.*, 2011 WL
     2649973, at *1 (C.D. Cal. July 5, 2011) ("[T]he Court finds that Summit's cease and desist
24   letters did not use explicit language signifying that a lawsuit was imminent."); *Xtended Beauty v.
     Xtreme Lashes*, 2007 WL 2669895, at *2 (N.D. Cal. Sept. 7, 2007) ("This letter at best supports
25   an inference that Plaintiff filed suit in California with some knowledge that Defendant might
     later file suit."); *Bryant*, 181 F. Supp. at 1048 ("Such language no doubt put Bryant on notice
26   that [Oxxford] was at least considering filing suit against [him].  [Oxxford's] letter, however,
     gave no indication that a lawsuit was imminent, or that [Oxxford] was doing anything more than
27   blowing smoke about a potential lawsuit." (alterations in original; quotations and citations
     omitted)).

28

6358664

letter in *Royal Queentex Enterprises*, does not constitute a "specific, concrete indication[] that a suit by the defendant was imminent." *Ward*, 158 F.R.D. at 648. The Textron letter states:

> Demand is hereby made that EA immediately cease the uncompensated use of our clients' intellectual property rights and to compensate our clients for past use. Failure to do so will force our clients to seek legal remedies to protect their property rights and goodwill.

Lauridsen Decl., Ex. E. Although the letter references "legal remedies," it neither specifies when Textron will file a lawsuit, nor that EA must agree to a license by a concrete date to avoid litigation. If such general language were sufficient to render EA's declaratory judgment filing improperly anticipatory, then nearly any threat letter would allow the threatening party to hold the target "in limbo indefinitely" on "a mere possibility" of litigation. *Intersearch Worldwide, Ltd.*, 544 F. Supp. 2d at 961.

Moreover, the time that passed between EA's rejection of Textron's licensing demand and EA's declaratory judgment filing demonstrates that the action was not improperly anticipatory. *See Puri v. Heathside Food Solutions LLC*, 2011 WL 6257182, at *3 (C.D. Cal. Dec. 13, 2011) (holding that declaratory judgment action is not improperly anticipatory because "settlement discussions proved futile."); *Summit Entm't*, 2011 WL 2649973, at *1 (same). This is not a case, as Textron suggests, where application of the first-to-file rule would "thwart settlement negotiations" or "encourage[] intellectual property holders to file suit rather than communicate with an alleged infringer." Mot. at 10:16-18. The parties clearly communicated their respective positions—Textron told EA that it must take a license on October 26, 2011; EA rejected the licensing demand on November 7, 2011. In the nearly two months between EA's letter and its filing, there were no settlement negotiations to be thwarted. Textron's December 21, 2012 letter merely reiterated the already-rejected licensing demand, and EA waited more than two weeks after receipt of it to file this action.

### 2. EA's first-filed action was not the result of forum shopping.

"[Plaintiff's] decision to sue in its home forum of California does not amount to impermissible forum shopping." *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1082 (C.D. Cal. 1999); *see also Acclarent, Inc. v. Quest Med., Inc.*, 2006 WL 2982301, at *4 (N.D. Cal. Oct.

13

63586604

1    17, 2006) (same).  "A plaintiff does not engage in forum shopping simply by choosing to file suit

2    in the most convenient forum available to it."  *Adidas Am., Inc. v. Herbalife Int'l, Inc.*, 2010 WL

3    596584, at *2 (D. Or. Feb. 12, 2010); *see also Summit Entm't*, 2011 WL 2649973, at *1 (C.D.

4    Cal. July 5, 2011) (finding no forum shopping because party "persuasively demonstrated that it

5    had substantial connections to warrant filing the suit in [the forum].").  Additionally, forum

6    shopping typically involves a legal advantage for plaintiff in the chosen forum.  *See Intersearch*

7    *Worldwide*, 544 F. Supp. 2d at 962.

8        EA did not engage in improper forum shopping by filing this action.  EA maintains its

9    principal place of business in Redwood City, California, which is located in the Northern District

10   of California.  The Northern District of California is the venue where a substantial number of the

11   events at issue took place and witnesses central to these cases are located.  *See* Compl. ¶ 11.

12   Moreover, Textron does not argue that filing in this district gives EA any legal advantage.  Both

13   this Court and the Northern District of Texas will apply federal trademark, trade dress and

14   constitutional law to this action.  Thus, the Northern District of California is neither

15   inappropriate nor abusive—it is the demonstrably logical and proper venue for resolution of both

16   the California Action and Textron's subsequently-filed claims against EA.

17       Finally, contrary to Textron's insinuations, the limited 2006 litigation between EA and

18   Textron does not demonstrate that EA engaged in forum shopping by filing this action in the

19   Northern District of California.  The only case Textron cites in support of considering prior

20   litigation is easily distinguishable.  In *Alexander v. Franklin Resources, Inc.*, 2007 WL 518859,

21   at *2-3 (N.D. Cal. Feb. 14, 2007), the plaintiff accused of forum shopping filed suit in a foreign

22   forum with little connection to the action while a similar, long-pending matter was progressing to

23   conclusion in his home district.  If the plaintiff had filed in his home district, the new action

24   likely would have been consolidated with the pending one and subject to its adverse rulings as

25   law of the case.

26       Here, the prior litigation between EA and Textron concluded more than four years ago

27   after a single substantive filing and a voluntary dismissal.  Textron does not argue—nor could

28

14

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

1   it—that the two-page order issued in the 2006 litigation is binding on this action, as it involved a

2   different EA videogame and different purported trademarks and trade dress.[10]  Moreover, this

3   action will be decided according to five years of new, directly-applicable case law .  Since the

4   2006 litigation, numerous courts, including the Supreme Court, have clarified the broad First

5   Amendment protection for videogames—including protection from trademark claims targeting

6   the use of marks within expressive works.  *See, e.g., Brown v. E.M.A.*, 131 S. Ct. 2729, 2737 n. 4

7   (2011) (holding that videogames "are as much entitled to the protection of free speech as the best

8   of literature."); *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101

9   (9th Cir. 2008) (affirming dismissal as matter of law on First Amendment grounds federal

10  trademark and related state law claims alleging videogame's use of mark); *Dillinger LLC v.*

11  *Electronic Arts Inc.*, 2011 WL 2457678, at *4-8 (N.D. Ind. June 16, 2011) (holding that the First

12  Amendment bars federal trademark and related state law claims alleging videogames' use of

13  mark).

14                    **3.      EA's first-filed action was not filed in bad faith.**

15          EA's refusal to negotiate for an unreasonable, unnecessary license does not constitute bad

16  faith.  A plaintiff may file a declaratory judgment action "to 'cut to the chase' and resolve the

17  conflict as soon as possible once it reasonably believed it was not infringing the subject

18  [trademarks]."  *Barnes & Noble,* --- F. Supp. 2d ---, 2011 WL 4948598, at *10.  For example, in

19  *Intersearch Worldwide*, 544 F. Supp. 2d at 961, the court held that plaintiff's decision to file its

20  declaratory judgment action because "settlement negotiations were not proceeding well …. does

21  not show bad faith."  Here, EA had already rejected all of Textron's demands when it filed the

22  declaratory judgment action and there were no ongoing negotiations.

23          Textron argues that it will be forced to "sue first; ask later" if EA's declaratory judgment

24  action is allowed to proceed.  Mot. at 14:5-8.  But the two cases cited by Textron as analogous

25

26  _____

27  [10]     Under Textron's baseless reasoning, EA would engage in forum shopping if, finding
    itself in repeat litigation against a party to whom it previously lost a motion, EA did not file the
    action in the district where it lost that motion.  This is not and should not be the law.

28

635866.04

1  instances of bad faith—*Xocide* and *Z-Line Designs*—are easily distinguishable here because EA

2  was not engaged in settlement negotiations when it filed this action.  Textron had requested and

3  EA had rejected taking a license for *Battlefield 3* nearly two months before EA filed this action.

4  *See* Lauridsen Decl., Ex. C.  EA's January 5, 2012 email did not indicate any shift in EA's

5  position or a new desire for settlement negotiations.  Just the opposite—in a portion of the email

6  not quoted by Textron, EA expressly rejects the only new allegations contained in Textron's

7  December 21, 2011 letter.  EA's request for additional information is similarly limited only to

8  those already-rejected allegations:

> Your letter claims that EA's *Battlefield 3* game uses your client's trademarks and trade dress on **"product packaging and instruction manuals."**  I have investigated this within EA but **haven't been able to find any support for your statement**.  I'd appreciate it if you could send me any evidence that you have identified of these uses.

12  Lauridsen Decl., Ex. E (emphasis added).  The January 5 email does not demonstrate that EA's

13  action was in bad faith, but rather that the action was entirely appropriate because "EA

14  reasonably believed it was not infringing the subject [trademarks]."  *Barnes & Noble,* --- F.

15  Supp. 2d ---, 2011 WL 4948598, at *10.

16          **4.**      **The balance of convenience weighs in favor of EA's first-filed action.**

17        For the reasons explained below, the balance of convenience weighs in favor of

18  upholding the requirements of the first-to-file rule.  The Northern District of California is a more

19  convenient forum for this action than the Northern District of Texas.

20      **C.**    **The Court Should Not Transfer EA's Action Because The Northern District of California Is The More Convenient Forum.**

22        It is Textron's burden to demonstrate that transfer is appropriate.  *Commodity Futures*

23  *Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  "The defendant must make a

24  strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.  *Decker*

25  *Coal*, 805 F.2d at 843.  "[U]nless the balance of factors is strongly in favor of the defendants, the

26  plaintiff's choice of forum should rarely be disturbed."  *Secs. Inv. Prot. Corp. v. Vigman*, 764 F.

27  2d 1309, 1317 (9th Cir. 1985) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  As

28  explained below, defendants have not only failed to meet this high standard, but the balance of

1   factors strongly favors allowing the action to proceed in California rather than Texas.

2   **1.    EA's forum choice should be respected.**

3   EA's choice of the Northern District of California as the forum for this action weighs

4   against transfer.  Textron's only argument against giving EA's forum choice preference—that

5   EA engaged in improper forum shopping by filing in its home district—is fully addressed above.

6   *See supra* Section III.B.2.

7   **2.    Textron's repeated filing of trademark actions in California**
     **demonstrates that it will not be inconvenienced by litigation here.**

8

9   Textron will not be inconvenienced by pursuing its trademark and trade dress claims in

10  California.  To the contrary, Textron has repeatedly filed lawsuits in California federal courts,

11  demonstrating that it believes the state to be a convenient forum.  As of 2010, the Textron

12  entities have filed and litigated at least four trademark and trade dress actions in California

13  federal courts—including at least one in the Northern District of California[11]  In fact, Textron

14  resolved the Northern District of California action by entering into a settlement agreement

15  covering the same purported trademark and trade dress rights associated with the AH-1 and UH-

16  1 helicopter families that are at issue here and in the Texas Action.  *See* Lauridsen Decl., Ex. H.

17  This demonstrates that Textron has found the Northern District of California to be a convenient

18  forum to enforce its purported trademark and trade dress rights.  Before the recent Texas Action,

19  Textron had filed as many trademark claims in California as it had in Texas since 1998.  *See*

20  Lauridsen Decl. ¶ 24.  Textron's litigation activity in California makes sense, as the corporation

21  and its subsidiaries have numerous offices within the state including a Bell Helicopter sales

22  office.  *Id.*, Ex. I.

23  In contrast to Textron's frequent and affirmative litigation in California, EA has never

24  filed suit in the Northern District of Texas and maintains no employees or offices in the district.

25

26  [11]    *See Textron Innovations Inc. et al. v. Banana Hobby Inc.*, 10-cv-7484 (C.D. Cal.);
    *Textron Innovations Inc. and Bell Helicopter Textron Inc. v. Helicopter World Inc.*, 06-cv-6474

27  (N.D. Cal.); *Bell Helicopter Textron Inc. v. Hill Indus. Inc.*, 05-cv-1835 (C.D. Cal.); *Textron Inc.*
    *v. Allfast Fastening Sys. Inc.*, 98-cv-8355 (dockets attached hereto as Exhibits Q through T to the
    Lauridsen Declaration).

28

17

*See* Evans Decl. ¶ 8.  As discussed, *supra,* EA appeared in the Northern District of Texas in 2007 only after being sued by Textron for trademark infringement regarding a different videogame.  It will be substantially inconvenienced by further litigation in the Northern District of Texas. Textron's assertion that EA's prior appearance in Texas will lead to more efficient litigation of this action is entirely speculative.  The Texas Action is not before the court that heard the earlier litigation and, regardless, the entirety of EA's activity in that litigation consisted of a single substantive filing—a motion to dismiss pursuant to Rule 12(b).  *See* Lauridsen Decl., Ex. F. Textron has failed to explain why the court to which the Texas Action is assigned—possessing no more familiarity with Textron's or EA's claims than this one—will provide a more efficient forum simply because it is in the same district as limited prior litigation between the parties.

> **3.  The Northern District of California will be more convenient for both party and third-party witnesses and will provide easier access to relevant evidence.**

"Intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions."  *Houston Trial Reports, Inc. v. LRP Publications, Inc.*, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999); *see also Barnes & Noble*, --- F. Supp. ---, 2011 WL 4948598, at *12 (N.D. Cal. Oct. 18, 2011) (holding that "the bulk of the relevant evidence usually comes from the accused infringer" in a patent infringement case); *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008) (Alsup, J.) (same, in a copyright infringement case).  This trademark action is no different.  The Northern District of California is the location of EA's principal place of business, many of its employees who may have information relevant to the dispute, and relevant documents.  The employees ultimately responsible for *Battlefield 3*'s marketing, public relations policy, website and licensing—issues Textron claims are relevant— are also found within the Northern District of California.  *See id.* Ex., G ¶¶ 36-43; 49; Evans Decl. ¶¶ 6-7.  Many documents related to the marketing and promotion of *Battlefield 3* are likewise located at EA's headquarters in the Northern District of California.  Evans Decl. ¶ 5.

18

6358660

The Northern District of California, therefore, is the more convenient venue for access to the EA witnesses and documents.

In contrast, the only defendant that Textron asserts is rightfully before this Court—Textron Innovations—is a **Rhode Island**-based company.  *See* Mot. at 17 n.8 ("Bell and Textron Inc. intend to move to dismiss the claims against them for lack of subject matter jurisdiction."). Textron Innovations also brings five of the six counts in the Texas Action.  Textron cannot credibly assert that Texas is the more convenient forum for a Rhode Island-based, Delaware-incorporated party to litigate intellectual property claims against a California-based corporation—particularly when Textron has availed itself of California venues in the past to protect its purported trademark and trade dress rights.  But even if Bell Helicopter Textron and Textron Inc. are rightfully before this Court, or to the extent Textron identifies any witnesses and documents located in Texas, transfer based on those witnesses "would merely shift rather than eliminate the inconvenience."  *Decker*, 805 F.2d at 843.  Such burden shifting does not justify granting a motion to transfer.  *Id.*

Finally, the location of likely third-party witnesses—a factor not discussed by Textron—similarly favors the Northern District of California.  Textron's allegations in the Texas Action describe likely topics on which Textron will seek discovery regardless of whether this action is transferred: Textron's efforts to license their purported trademarks and trade dress, Compl. ¶¶ 21-22, EA's marketing of the *Battlefield 3* game, *id.* ¶¶ 36-43, and the design of the Bell Helicopters, *id.* ¶ 20, among others.  Numerous likely third-party witnesses on these topics reside in California, elsewhere on the West Coast or, at a minimum, outside of the Northern District of Texas.  Textron Innovations' licensing agent for these exact purported trademark and trade dress rights, Equity Management Inc. is based in San Diego, California.  Lauridsen Decl., Ex. J. Northrop Grumman Aerospace Systems, which contributed systems to all three helicopters at issue, is based in Redondo Beach, California.  *See id.*, Exs. K-N.  Boeing Corporation, which jointly designed one of the helicopters at issue, was based during the design-period at issue in Seattle, Washington, where it still maintains a large presence, and currently has its principal

19

6358666.04

1   place of business in Chicago, Illinois.  *See id.*, Ex. O.  The comparative proximity of this Court

2   to these potential third-party witnesses further weighs against a finding that Textron has made a

3   "strong showing" that the Northern District of California is an inconvenient forum.

### 4.   The Northern District of California and Northern District of Texas are equally familiar with applicable law.

6           Both fora are equally qualified to rule upon the federal legal issues—statutory and

7   constitutional—at the core of both EA's and Textron's complaints.  Textron does not dispute this

8   point, but instead attempts to shift consideration to purported "familiarity with the underlying

9   facts."  Mot. at 18:6-14.  But even focusing on factual familiarity does not weigh in favor of

10  transfer.  This action involves a different expressive work and a different Bell helicopter than the

11  parties' prior litigation.  Even if the facts were the same, the Texas Action is not pending before

12  the same court that heard the prior dispute.  And even if the court was the same, any familiarity

13  with the allegations in the five-year-old litigation would be de-minimis at most.  As explained

14  above, the court in that action did not hear discovery issues, review evidence, or indeed consider

15  anything beyond the sufficiency of the allegations in Textron's complaint.

16          Finally, the presence of purported Texas state-law claims in the Texas Action does not

17  provide a basis for the transfer of this action.  Even if Textron were to counterclaim here with

18  Texas state-law claims—which it has not done, and therefore cannot rely upon for a transfer—

19  the potential counterclaims would not change the Court's transfer analysis because such tag-

20  along claims will rise and fall with the federal ones.  A finding that EA's alleged use is protected

21  under the First Amendment, for example, would defeat all of Textron's claims.  *See*, *e.g.*, *E.S.S.*

22  *Entm't*, 547 F.3d at 1101.  Similarly, a finding that Textron does not possess valid trademarks or

23  trade dress would eliminate both federal and state grounds for recovery.  *Id.*  The Northern

24  District of California and the Northern District of Texas are equally qualified to make these

25  determinations.

### 5.   The Texas Action may be feasibly consolidated with this action.

26          Textron's only argument regarding the feasibility of consolidation is based on the

27  assertion that Bell is not a proper declaratory judgment defendant here.  This issue is not

28

63586604

1   properly before the Court—Bell could have raised it here, but opted not to—and therefore cannot

2   serve as a basis for transfer.[12]

3        Moreover, consolidation of the California and Texas Actions would not require complete

4   identity of parties or issues.  *See* Fed. R. Civ. P. 42 ("If actions before the court involve a

5   common question of law or fact…").  Textron has already conceded such factual and legal

6   overlap here.  *See* Doc. No. 37 at ¶ 21.  And even if the Texas Action is not transferred to the

7   Northern District of California, Bell does not argue that its claims in the Texas Action arise out

8   of a different transaction and occurrence than the claims in the California Action.  There are,

9   therefore, a variety of procedural ways it could have its rights adjudicated in the California

10  Action even if it is not properly a declaratory relief defendant.

11        **6.    The Northern District of California possesses a stronger localized**
              **interest in this action than the Northern District of Texas.**
12
13        The Northern District of California has a strong localized interest in the conduct and

    rights of corporations—such as EA—based within its jurisdiction.  "California has a strong
14
    public interest in deciding controversies involving its citizens."  *Jonathan Browning, Inc. v.*
15
    *Venetian Casino Resort, LLC.*, 2007 WL 4532214, at *6 (N.D. Cal. Dec. 19, 2007) (citing
16
    *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991)).  This
17
    action fundamentally concerns EA's conduct within the Northern District of California and EA's
18
    rights to create expressive works without the impediment of constant threats of meritless
19
    litigation.  In contrast, the Northern District of Texas does not share an equivalent localized
20
    interest in the purported rights of Textron Innovations, a Rhode Island-based intellectual
21
    property holding company, or Textron Inc., similarly based in Rhode Island.  *See* Compl. ¶¶ 12-
22
    13.  The Northern District of Texas' interest in Bell's licensing activity is also attenuated since,
23

24  _____

    [12]      Both Bell and Textron Inc. are proper declaratory judgment defendants.  The December
25  21 letter demanding that EA take a license or face "legal remedies" was sent on behalf of all
    three parties.  *See* Lauridsen Decl., Ex. D ("We have been retained by Bell Helicopter Textron
26  Inc. ('Bell'), Textron Inc. ('Textron'), and Textron Innovations Inc. ('TII') (collectively
    hereinafter our 'clients') in connection with the defense of our clients' intellectual property
27  rights.").  EA therefore had a reasonable basis for seeking declaratory relief that it was not
    infringing any of the three "clients'" purported trademarks or trade dress.
28
                                              21
    _____
              OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
                                   STAY OR TRANSFER
                              Case No. CV-12-0118-WHA

on information and belief, its third-party licensing agent is based in and operates from California.

*See* Lauridsen Decl., Ex. J.

### 7.     The relative congestion of the Courts does not favor transfer.

Given Textron's seven-week delay in filing the Texas Action, the marginal difference in court congestion between the Northern District of California and the Northern District of Texas should have no impact on the transfer decision.  According to the most recent statistics,[13] the median time from filing to disposition for civil cases in the Northern District of California is 8.0 months, compared to 6.6 months in the Northern District of Texas.  This 1.4 month difference—slightly over six weeks—is less than the Texas Action lags behind this one.[14]  Any speculative time advantage to proceeding in the Northern District of Texas was therefore negated by Textron's seven-week delay in filing the Texas Action.

### 8.     The balance of factors does not strongly favor transferring this action to Texas.

As explained above, the Section 1404(a) factors  do not favor—let alone "strongly favor"—a transfer to the Northern District of Texas:

1.     Plaintiff's choice of forum:  favors California.

2.     Convenience of the parties:  favors California.

3.     Convenience of the witnesses:  favors California.

4.     Ease of access to the evidence:  favors California.

5.     Familiarity of each forum with applicable law:  neutral.

6.     Feasibility of consolidation with other claims:  neutral.

7.     Local interest in the controversy:  favors California.

8.     Relative court congestion:  neutral.

---

[13]     *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx (most recently accessed on March 1, 2012).

[14]     In its motion, Textron considers the median time from filing to trial.  *See*  Mot. at 19:9-12.  This measure is less relevant to this case than EA's use of the filing-to-disposition comparison because EA intends to file at a dispositive motion at the earliest possible date.

6358666.04

1    Because not even a single factor favors the transfer of this action to the Northern District of

2    Texas, the Court should allow EA's action to proceed in the Northern District of California.

3    **IV.    CONCLUSION**

4            For these reasons, Textron's motion should be denied.

5

6    Dated:  March 14, 2012                        KEKER & VAN NEST LLP

7

8                                                   /s/ R. James Slaughter
                                     By:    R. JAMES SLAUGHTER
9                                            R. ADAM LAURIDSEN

10                                          Attorneys for Plaintiff
                                            ELECTRONIC ARTS INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
STAY OR TRANSFER
Case No. CV-12-0118-WHA

635866.04