**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   ELECTRONIC ARTS, INC.,

11          Plaintiff,                          No. C 12-00118 WHA

12   v.

13   TEXTRON, INC.; BELL HELICOPTER          **ORDER DENYING**
     TEXTRON, INC.; and TEXTRON             **DEFENDANTS' MOTION TO**
14   INNOVATIONS, INC.,                      **DISMISS, STAY OR TRANSFER**

15          Defendants.

16   _____/

17                              **INTRODUCTION**

18          In this declaratory relief action for non-infringement of trademarks and trade dress,

19   defendants move to dismiss or, in the alternative, stay or transfer.  For the following reasons,

20   defendants' motion is **DENIED**.

21                               **STATEMENT**

22          Plaintiff Electronic Arts, Inc. is a Delaware corporation with its principal place of

23   business in Redwood City.  EA develops and publishes computer and video games.

24   Defendant Textron, Inc. is a Delaware corporation with its principal place of business in

25   Rhode Island.  Defendant Textron Innovations, Inc., also a Delaware corporation with its

26   principal place of business in Rhode Island, is an affiliate of Textron, Inc., and is the intellectual

27   property holding company of defendant Bell Helicopter Textron, Inc., a Delaware corporation

28   with its principal place of business in Texas.  Bell Helicopter is the designer and manufacturer

1   of the AH-1Z, UH-1Y and V-22 helicopters, the products to which defendants claim intellectual

2   property rights.

3   　　EA makes the *Battlefield 3* video game.  "The game realistically and authentically depicts

4   modern-day armed conflict on land, in air and at sea.  One of the ways *Battlefield 3* accurately

5   depicts military combat is by giving game players control of the weapons, accessories and

6   vehicles — from tanks and jeeps to jets and naval assault vehicles — used by the United States

7   military."  Those include the helicopters at issue here (Compl. ¶ 16).

8   　　In 2008, the same parties were involved in litigation in Texas over EA's use of certain

9   intellectual property owned by defendants in the game *Battlefield: Bad Company 2 – Vietnam*.

10  In February 2008, the parties entered into a settlement agreement, and the case was dismissed.

11  In October 2010, the parties entered into a licensing term sheet for the licensing of certain

12  intellectual property in relation to EA's release of prior games in the *Battlefield* video game

13  franchise.  One year later, EA sent Textron Innovations a letter stating its intent to use the

14  helicopters currently at issue in its upcoming *Battlefield 3* video game (Runstadler Decl. Exh. 6).

15  In November 2011, Textron Innovations responded to the letter stating that it did not believe the

16  settlement agreement covered the release of *Battlefield 3*, that the unlicensed use of the

17  helicopters "may constitute an infringement and dilution of the Intellectual Property," and that

18  more information would be required to determine whether Textron Innovations would consent

19  to license the depicted helicopters (*id*. at Exh. 7).  EA responded that it believed use of the

20  helicopters in the video game was expressive and therefore entitled to First Amendment

21  protection.  Accordingly, EA contended a license would not be necessary (*id.* at Exh. 8).

22  　　Defendants subsequently retained counsel, and on December 21, 2011, asserted in a letter

23  that they believed EA to be infringing intellectual property rights associated with the helicopters,

24  and such use included substantial interactive use within the video game itself, and portrayal of

25  the products in marketing and product packaging.  Defendants demanded that EA cease and

26  desist the uncompensated use of defendants' intellectual property, and warned that failure to do

27  so would result in legal action (*id.* at Exh. 9).  On January 5, 2012, EA responded to defendants'

28  cease-and-desist letter, stating that it was reviewing the allegations in regard to packaging and

United States District Court

For the Northern District of California

2

United States District Court

For the Northern District of California

1   advertising, and requested more evidence of these alleged unlawful uses (*id.* at Exh. 10).

2   The next day, EA filed the instant action seeking declaratory relief for non-infringement.

3   Seven weeks later, on February 24, 2012, defendants filed a competing suit in the Northern

4   District of Texas alleging:  (1) trademark infringement and false designation of origin under

5   the Lanham Act; (2) unfair competition and misappropriation under Texas common law; and

6   (3) injury to trademarks under Section 16.29 of the Texas Business and Commerce Code (*id.* at

7   Exh. 12 ¶ 2).  Defendants now move to dismiss this action or, in the alternative, stay or transfer.

8   This order follows full briefing and a hearing.

9                                                **ANALYSIS**

10          **1.      MOTION TO DISMISS OR STAY THIS DECLARATORY ACTION.**

11          Defendants argue that this action should be dismissed or stayed because plaintiff has

12   engaged in a race to the courthouse and forum shopping.

13          "The purpose of the Declaratory Judgment Act is to afford an added remedy to one who

14   is uncertain of his rights and who desires an early adjudication thereof without having to wait

15   until his adversary should decide to bring suit, and to act at his peril in the interim."  *Shell Oil*

16   *Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961).  In choosing to exercise its discretion to

17   dismiss or stay a declaratory-judgment action, a court should consider the following factors:

18   (1) avoiding duplicative litigation; (2) avoiding needless determination of state-law issues; and

19   (3) discouraging forum shopping.  Additionally, a court may consider:

20                     [W]hether the declaratory action will settle all aspects of the
                       controversy; whether the declaratory action will serve a useful
21                     purpose in clarifying the legal relations at issue; whether the
                       declaratory action is being sought merely for the purposes of
22                     procedural fencing or to obtain a res judicata advantage; or
                       whether the use of the declaratory action will result in
23                     entanglement between the federal and state court systems.
                       In addition, the district court might also consider the convenience
24                     of the parties . . . .

25   *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n. 5 (9th Cir. 1998) (en banc).

26          Both parties concede that there was a threat of impending litigation (Br. 8; Opp. 7).

27   Thus, the issue is whether this Court should exercise its discretion and dismiss or stay this

28   declaratory-judgment action.

United States District Court

For the Northern District of California

1    EA waited approximately two months after notice of its potential infringing use, and

2    two weeks after threat of litigation by defendants, before filing for declaratory judgment in this

3    district (Runstadler Decl. Exhs. 7, 9). Defendants had been on notice for three months that EA

4    did not believe they would need a license in order to proceed with production and sale of

5    *Battlefield 3* (*id.* at Exh. 8). Defendants waited approximately seven weeks after the instant

6    action was filed to file their own competing action in Texas (Dkt. No. 38). Based on the above

7    time line, it is clear that defendants here were not ready to file suit immediately. No deadlines

8    were set for pre-suit negotiation, and no explicit threat was made that defendants were in the

9    process of filing suit. *Battlefield 3* was already released, and rather than cease production and

10   distribution and wait for defendants to file suit, EA sought a clear determination of its rights.

11   EA was within its rights to file for declaratory judgment, and not wait until defendants made

12   good on their threat to sue.

13   Defendants also assert, as evidence of plaintiff's forum shopping, that the parties

14   were previously involved in litigation in Texas for trademark and trade dress infringement.

15   Defendants rely on *Alexander v. Franklin Res., Inc.*, No. 06-7121 SI, 2007 WL 518859 (N.D.

16   Cal. Feb. 14, 2007) (Illston, J.), to argue that a plaintiff's choice of forum should be

17   disregarded where it is a clear attempt to avoid a forum that previously ruled against it (Br. 15).

18   This argument is unpersuasive for two reasons. *First*, while it may be true that a Texas court

19   previously rejected plaintiff's First Amendment defense on a motion to dismiss, that does not

20   mean that plaintiff could not have prevailed on that defense. Instead, dismissal in the pleadings

21   phase informs us only that plaintiff's defense was not sufficient to warrant dismissal of

22   defendants' claims. *Second*, *Alexander* is distinguishable. That action involved "the same

23   plaintiff represented by the same law firm [who] filed a similar lawsuit in New Jersey, and after

24   receiving unfavorable rulings from that court, filed [in California]." 2007 WL 518859, at *4.

25   That is not the case here. EA was the defendant in the previous Texas action, not the plaintiff,

26   and EA did not choose to file suit in Texas only to obtain unfavorable rulings and subsequently

27   file here in California in order to avoid a forum that arguably disfavors it. This factor weighs in

28   favor of retaining jurisdiction.

4

United States District Court

For the Northern District of California

1    In considering to what degree the instant action invites unnecessary duplicative litigation,

2    in this instance the threat of duplicative litigation arises from the Texas action which was filed

3    second.  Furthermore, the Texas action is subject to the first-to-file rule, which generally favors

4    the action filed first.  Therefore, it is the Texas action which is duplicative.  This factor also

5    weighs in favor of retaining jurisdiction.

6    The underlying dispute is one of trademark and trade dress infringement, and as such,

7    a declaratory action finding non-infringement would certainly clarify the legal relations between

8    the parties.  The present action does not present any state-law issues and there is no underlying

9    state-court action.  While it is true that there are state-law claims raised by defendant Bell

10   Helicopter before the Texas court, defendants maintain that this Court lacks jurisdiction over

11   Bell, and they intend to file a motion to dismiss should this Court retain jurisdiction over the

12   action (Br. 18 n. 8).  Defendants concede that Bell Helicopter has "no ownership interest in

13   the intellectual property at issue" (Reply Br. 13).  Defendants therefore maintain that the claim

14   asserted by Bell is important enough to decline exercise of declaratory-judgment jurisdiction, but

15   not important should this Court retain jurisdiction.  This order finds that this factor is neutral.

16   Discouraging procedural fencing and actions begun to obtain a *res judicata* advantage

17   is not an issue here.  This was not a race to the courthouse, a reactive or a defensive

18   declaratory-judgment action.  There was no other suit pending when plaintiff filed its complaint,

19   and either party could have commenced suit.  In addition, this order has already rejected

20   defendants' forum-shopping argument on related considerations.  Neither is there a state-court

21   action currently pending, and thus, there is no need to avoid entanglement between federal and

22   state courts.  These factors weigh against staying or dismissing the declaratory-judgment action.

23   *Finally*, if a stay or dismissal prevents a disproportionate hardship for one of the parties,

24   it may be favored.  The moving defendants certainly would be inconvenienced if forced to

25   litigate both proceedings concurrently, but defendants brought this on themselves by launching

26   a second front.  They cannot claim that a hardship warrants staying or dismissing this action

27   when the hardship is a result of their own actions.  Travel is also a consideration, but it cannot

28

5

1  be said that requiring defendants to travel to California is disproportionately more harsh than

2  requiring plaintiff to travel to Texas.  Thus, this factor favors retaining jurisdiction.

3  Accordingly, this order holds that the factors support the exercise of declaratory-

4  judgment jurisdiction.  Defendants' motion to stay or dismiss plaintiff's declaratory-judgment

5  action is **DENIED**.

6  **2.    MOTION TO TRANSFER.**

7  Defendants also request a transfer of this action to the Northern District of Texas.

8  Section 1404 states that "[f]or the convenience of parties and witnesses, in the interest of justice,

9  a district court may transfer any civil action to any other district or division where it might have

10  been brought."  28 U.S.C. 1404(a).  In determining whether to grant a motion to transfer

11  pursuant to Section 1404(a), courts may consider:  (1) the state that is most familiar with the

12  governing law; (2) the plaintiff's choice of forum; (3) the respective parties' contacts with the

13  forum; (4) the contacts relating to the plaintiff's claim in the chosen forum; (5) the difference in

14  the costs of litigation between the two forums; (6) the availability of compulsory process to

15  compel attendance of unwilling non-party witnesses; and (7) the ease of access to sources of

16  proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  Courts may also

17  consider, "the administrative difficulties flowing from court congestion and [the] local interest

18  in having localized controversies decided at home."  *Decker Coal Co. v. Commonwealth Edison*

19  *Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  "The defendant must make a strong showing of

20  inconvenience to warrant upsetting the plaintiff's choice of forum."  *Ibid*.

21  Plaintiff has filed suit in its home forum and deference should be given to this choice.

22  *Jones*, 211 F.3d at 498–99.  Defendants again raise the issue of forum shopping as a reason to

23  ignore plaintiff's decision to file in the Northern District of California.  For reasons already

24  stated, this argument is rejected.  This factor weighs against transfer.

25  The respective parties' contacts with the forum and the difference in the costs of

26  litigation between the two forums also favors plaintiff.  This factor essentially examines the

27  convenience of the forums.  Defendants state that Bell Helicopter is located in Texas, and that

28  Texas is closer to Rhode Island than California (Br. 16).  At issue in this litigation is not the

United States District Court
For the Northern District of California

6

United States District Court
For the Northern District of California

1   manufacture of helicopters, but the trademarks associated with those helicopters, which are

2   controlled by the Rhode Island defendants. While Bell Helicopter's participation may be

3   necessary in the litigation, this alone cannot support a finding of convenience in defendants'

4   favor when the following points are considered. *First*, defendants' arguments that Texas is the

5   more convenient forum because it is the location of Bell Helicopter, and that Bell Helicopter

6   should not be party to this suit as it does not own nor hold exclusive license to the trademarks at

7   issue, conflict. *Second*, defendants have filed at least four trademark and trade dress suits in

8   California, one of which was in the Northern District (Lauridsen Decl. Exhs. Q–T). Defendants'

9   claim that Texas is a "neutral" location for plaintiff because it participated in prior litigation

10  there, but California is inconvenient, even though defendants engaged in prior litigation in

11  California, is contradictory (Reply Br. 13).

12          Plaintiff's claim may rely on defendants' contacts outside of the forum, including Texas

13  and Rhode Island, but the bulk of the conduct at issue is plaintiff's actions in California,

14  not defendant Bell Helicopter's creation of the underlying products with which Textron holds

15  intellectual property rights. Plaintiff maintains its principal place of business in California:

16              [D]ecisions related to EA's overall business are made at EA's
                headquarters in Redwood City, California, including the most
17              significant sales, marketing and licensing decisions related to
                EA's products and services, including EA's *Battlefield 3* game;
18              [r]elevant EA documents related to marketing, public relations
                and/or sales of *Battlefield 3* are located at EA's headquarters in
19              Redwood City, California [including] [d]ocuments related to the
                operations and financial performance of EA; and most of the
20              employees with potentially relevant knowledge are located
                in California.
21

22  (Evans Decl. ¶¶ 3, 5–7). *Finally*, "EA does not maintain any documents, witnesses, offices, or

23  other facilities within the Northen District of Texas" (*id.* at ¶ 8). Defendants concede that the

    bulk of Textron's documents and witnesses related to the trademarks and trade dress at issue are
24
    located in Rhode Island (Br. 16–18). Again, defendants rely on the location of Bell Helicopter
25
    to support transfer, but this order has already addressed the problem with defendants' reliance
26
    on the convenience and location of defendant Bell Helicopter. In addition, defendants have
27
    identified no third-party witnesses, and only state that plaintiff's intent to call certain California
28
    third-party witnesses is nothing more than an "attempt to tip the balance in its favor" (Reply

United States District Court
For the Northern District of California

1   Br. 13).  Yet, because plaintiff has indicated that it will call the third-party witnesses, this order

2   finds that the availability of compulsory process to compel attendance of unwilling non-party

3   witnesses at trial, contacts relating to plaintiff's claim in the chosen forum and ease of access

4   to sources of proof weigh against transfer.

5           Defendants argue that Texas has a greater local interest in the dispute because prior

6   litigation between the parties took place in Texas, and therefore, the local interest in having

7   localized controversies decided at home favors transfer.  Defendants contend that Bell Helicopter

8   is located in Texas and therefore the dispute is a local one, favoring transfer to Texas.

9   Again, this argument is contradictory given defendants' assertion that Bell Helicopter neither

10  owns nor has exclusive license to any of the trademarks at issue, and is relevant only to the

11  extent that it has asserted a Texas state-law claim against EA in the currently pending Texas

12  action (Reply Br. 13).  By contrast, the majority of plaintiff's actions at issue in this dispute

13  occurred in California.  This considered, and in light of defendants' assertion that the bulk of

14  its documents and witnesses related to the trademarks at issue are located in Rhode Island,

15  California has a greater local interest in this dispute than Texas.  This factor weighs against

16  transfer.

17          Defendants assert that transfer is warranted because Texas is more familiar with the

18  governing law.  Defendants support this argument by asserting that Texas state-law claims

19  have been alleged in their Texas complaint.  This argument has already been considered above.

20  Defendants further contend that transfer is appropriate because Texas is more familiar with the

21  underlying facts (Br. 18–19).  However, this particular action has never been before the Texas

22  courts.  While it is true that the parties were previously engaged in litigation in Texas for a

23  similar dispute, the dispute was based on different products.  Furthermore, that dispute never

24  went to trial.  Defendants claim that "significant discovery" was completed in the prior Texas

25  action, but cite no evidence to support this contention (*ibid.*).  Defendants have only shown

26  that pleading amendments occurred, a motion to dismiss was denied, and shortly thereafter,

27  a settlement agreement was entered into by the parties (Runstadler Decl. Exh. 1).  To the

28  contrary, plaintiff asserts that the Texas court "did not hear discovery issues, review evidence,

1   or [] consider anything beyond the sufficiency of the allegations in the [] complaint" (Opp. 20).

2   This order finds that this factor is neutral.

3         *Finally*, defendants assert that the filing-to-trial time in the Northern District of Texas is

4   approximately 20.2 months and the time in the Northern District of California is 34.3 months

5   and, consequently, considerations of court congestion favor transfer (Br. 19).  Plaintiff does not

6   dispute this, but instead argues that the filing-to-disposition time between the two districts

7   differs only by 1.4 months in Texas's favor (Opp. 22).  The undersigned judge is committed

8   to efficient and speedy adjudications and will likely bring the case to trial sooner than others

9   average.  This factor weighs in favor of keeping the case here.

10        In light of the above reasoning, this order finds that the balance of factors does not

11   strongly favor defendants, and therefore, the request to transfer is **DENIED**.

12        **3.    FIRST-TO-FILE RULE.**

13        "[W]hen cases involving the same parties and issues have been filed in two different

14   districts, the *second district court* has discretion to transfer, stay, or dismiss the second case in

15   the interest of efficiency and judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d

16   765, 769 (9th Cir. 1997) (emphasis added).  Courts have interpreted this rule as requiring

17   the court where the second action was filed to consider the application of the first-to-file rule.

18   *See Heartland Payment Sys., Inc. v. Verifone Israel Ltd.*, C 10-0654 MHP, 2010 WL 1662478

19   (N.D. Cal. Apr. 22, 2010) (Patel, J.); *but see Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218

20   F.R.D. 663, 665 (N.D. Cal. 2003) (Whyte, J.).

21        Defendants request that the Court decline to follow the first-to-file rule, and stay or

22   dismiss plaintiff's declaratory-judgment claim.  Defendants have raised this argument in the

23   wrong forum, as considerations of whether to ignore the first-to-file rule in this instance are

24   more appropriate for the Texas court.  Regardless, defendants' arguments in support of their

25   motion are all premised on the same general theory:  That plaintiff engaged in impermissible

26   forum shopping (Br. 10–14).  This argument has already been addressed and rejected.

27

28

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss, or in the alternative, stay or transfer, is **DENIED**.

**IT IS SO ORDERED.**

Dated:  April 27, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

10