1   James F. Basile (SBN 228965)
    james.basile@kirkland.com
2   Mark E. McKane (SBN 230552)
    mark.mckane@kirkland.com
3   KIRKLAND & ELLIS LLP
    555 California Street
4   San Francisco, California  94104
    Telephone: (415) 439-1400
5   Facsimile: (415) 439-1500

6   *Additional counsel listed on last page*

7   Attorneys for Defendants
    TEXTRON INC., BELL HELICOPTER
8   TEXTRON INC., and TEXTRON
    INNOVATIONS INC.

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                 **SAN FRANCISCO DIVISION**

13

14  ELECTRONIC ARTS INC.,                    CASE NO. 12-CV-0118-WHA

         Plaintiff,                          **DEFENDANTS' ANSWER AND**
15                                           **COUNTERCLAIMS**

16       vs.

17  TEXTRON INC., BELL HELICOPTER            **DEMAND FOR JURY TRIAL**
    TEXTRON INC., and TEXTRON
18  INNOVATIONS INC.,

         Defendants.
19

20

21                        **ANSWER**

22      Defendants Textron Inc. ("Textron"), Bell Helicopter Textron Inc. ("Bell"), and Textron

23  Innovations Inc. ("Textron Innovations") answer Plaintiff Electronic Arts, Inc.'s ("EA") Complaint

24  as follows.   Defendants deny each and every allegation of the Complaint not expressly and

25  specifically admitted below.

26          **NATURE OF THE ACTION AND RELIEF SOUGHT**

27      1.      Defendants admit that EA seeks a declaratory judgment of non-infringement for EA's

28  use of Textron Innovations' trademarks and trade dress for the Bell-manufactured AH-1Z, UH-1Y,

ANSWER AND COUNTERCLAIMS              1              Case No. CV-12-0118-WHA

and V-22 helicopters in EA's first-person military combat simulation Battlefield 3.  Defendants deny each and every remaining allegation in Paragraph 1 of the Complaint.

2.     Defendants admit that EA is a developer and publisher of computer and video games, and that EA's Battlefield 3 game is a realistic first-person military combat simulation that depicts weapons and vehicles used by the United States military, including the Bell-manufactured AH-1Z, UH-1Y, and V-22 helicopters (the "Bell-Manufactured Helicopters").  These designations are used both by the United States military and by Defendants.  Defendants deny each and every remaining allegation in Paragraph 2 of the Complaint.

3.     Defendants admit that Textron Innovations holds the trademarks and trade dress associated with the Bell-Manufactured Helicopters.  Defendants admit that they assert that EA's use of the helicopters in connection with Battlefield 3 infringe Textron Innovations' trademark and trade dress rights.  To the extent that EA is alleging that either Defendant Textron or Defendant Bell owns the trademarks and trade dress for the Bell-Manufactured Helicopters, that allegation is denied.

4.     Defendants deny the allegations and legal conclusions of non-infringement in Paragraph 4 of the Complaint.

5.     Defendants admit that, while Defendants seek to settle this dispute in the same manner as prior related disputes between the parties, the parties have been unable to resolve this present dispute.

6.     Defendants admit that EA seeks a declaratory judgment of non-infringement for the use of Textron Innovations' trademarks and trade dress associated with the Bell-Manufactured Helicopters in Battlefield 3.

**JURISDICTION AND VENUE**

7.     Defendants admit the specific jurisdictional allegations in Paragraph 7 of the Complaint.  To the extent EA is alleging that this Court has subject matter jurisdiction over Defendant Textron specifically, that allegation is denied.

8.     Defendants admit that they are subject to the exercise of personal jurisdiction for the purposes of this dispute only.

9.     Defendants admit that venue is proper in this district.

10.     Defendants admit the allegations in Paragraph 10 of the Complaint.

**THE PARTIES**

11.     Upon information and belief, Defendants admit the allegations in Paragraph 11 of the Complaint about EA's business.

12.     Defendants admit that Textron is a Delaware corporation with its principal place of business in Providence, Rhode Island.   Defendants deny that Textron has any legal rights in trademarks or trade dress at issue in this litigation.

13.     Defendants admit that Textron Innovations is a Delaware corporation with its principal place of business in Providence, Rhode Island.   Textron Innovations is the intellectual property holding company for Bell and owns federally-registered trademarks, common law trademarks, and common law trade dress in connection with the Bell-Manufactured Helicopters.

14.     Defendants admit that Bell is a Delaware corporation with its principal place of business in Fort Worth, Texas.  Defendants deny that Bell "owns" the trademarks and trade dress in connection with the Bell-Manufactured Helicopters.   Bell is the manufacturer of the Bell-Manufactured Helicopters and a nonexclusive licensee of intellectual property rights in the trade dress and trademarks associated with them.

**FACTUAL ALLEGATIONS**

15.     Defendants admit that EA is a developer and publisher of video and computer games and produces Battlefield 3.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15 of the Complaint.

16.     Defendants admit that Battlefield 3 is a first-person military combat simulation. Defendant admits that players can control weapons and vehicles used in the game.  Defendants admit that the Bell-Manufactured Helicopters are used in the game.   Defendant denies the remaining allegations in Paragraph 16 of the Complaint.

17.     Defendants admit that Battlefield 3 contains both single-player and online multiplayer modes.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17 of the Complaint.

18.     Defendants deny the allegations and legal conclusions in Paragraph 18 of the Complaint.

19.     Defendants admit that Exhibit A is an accurate copy of the packaging.  The remaining allegations in Paragraph 19 of the Complaint merely state a legal conclusion, and therefore no responsive pleading is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 19 of the Complaint.

20.     Defendants admit that Textron Innovations holds the trademarks and trade dress associated with the AH-IZ, UH-1Y, and V-22 helicopters.  Defendants admit that they assert that EA's use of the helicopters in connection with Battlefield 3 infringe Textron Innovations' trademark and trade dress rights.  To the extent that EA is asserting that either Defendant Bell or Defendant Textron owns the trademarks and trade dress for the Bell-Manufactured Helicopters, that allegation is denied.

21.     Defendants admit the allegations in Paragraph 21 of the Complaint.

22.     Defendants admit that the parties have been unable to resolve their present dispute.  The remaining allegations in Paragraph 22 of the Complaint merely state a legal conclusion, and therefore no responsive pleading is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 22 of the Complaint.

**FIRST CAUSE OF ACTION**

23.     Defendants incorporate by reference and restate as if fully set forth herein Paragraphs 1 through 22 of this Answer.

24.     The allegations in Paragraph 24 of the Complaint merely state legal conclusions, and therefore no responsive pleading is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 24 of the Complaint.

25.     The allegations in Paragraph 25 of the Complaint merely state legal conclusions, and therefore no responsive pleading is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 25 of the Complaint.

26.     Defendants admit that Battlefield 3 is a first-person military combat simulation.  Defendants deny that the use of Textron Innovations' trademarks and trade dress is creative.  The

remaining allegations in Paragraph 26 of the Complaint merely state a legal conclusion, and therefore no responsive pleading is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 26 of the Complaint.

27.    The allegations in Paragraph 27 of the Complaint merely state a legal conclusion, and therefore no responsive pleading is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 27 of the Complaint.

28.    The allegations in Paragraph 28 of the Complaint are not directed to Defendants and merely state a legal conclusion or legal request, and therefore no responsive pleading is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 28 of the Complaint.

**SECOND CAUSE OF ACTION**

29.    Defendants incorporate by reference and restate as if fully set forth herein Paragraphs 1 through 28 of this Answer.

30.    The allegations in Paragraph 30 of the Complaint merely state legal conclusions, and therefore no responsive pleading is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 30 of the Complaint.

31.    The allegations in Paragraph 31 of the Complaint merely state legal conclusions, and therefore no responsive pleading is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 31 of the Complaint.

32.    Defendants admit that the game is a first-person military combat simulation. Defendants deny that the use of Textron Innovations' trademarks and trade dress is creative. The remaining allegations in Paragraph 32 of the Complaint merely state legal conclusions, and therefore no responsive pleading is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 32 of the Complaint.

33.    The allegations in Paragraph 33 of the Complaint merely state legal conclusions, and therefore no responsive pleading is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 33 of the Complaint.

34.     The allegations in Paragraph 34 of the Complaint are not directed to Defendants and merely state a legal conclusion or legal request, and therefore no responsive pleading is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 34 of the Complaint.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**COUNTER-COMPLAINT**

Counterclaim-Plaintiffs Textron Innovations and Bell hereby assert counterclaims against Counterclaim-Defendant EA and allege as follows:

**NATURE OF THE ACTION AND REQUESTED RELIEF**

1.      Counterclaim-Plaintiffs assert these claims against EA for trademark infringement and false designation of origin under the Lanham Act, unfair competition under California Business and Professions Code section 17200 *et seq.*, and misappropriation and trademark infringement under California common law in connection with EA's unauthorized use of Textron Innovations' trademarks and trade dress in the video game "Battlefield 3"; the expansion pack "Back to Karkand"; related advertising and promotional materials; and, on information and belief, other Battlefield 3-related products (collectively, "Battlefield 3 Products").

2.      In its effort to meet consumer demand for a realistic military combat simulation, EA chose to include Textron Innovations' trademarks and trade dress for the Bell-Manufactured Helicopters in its Battlefield 3 Products.  For at least two of those Bell-Manufactured Helicopters— the AH-1Z "Viper" (also known as the "Zulu Cobra") and UH-1Y "Venom" (also known as the "Super Huey")—EA included authentic replicas that were not merely observable to gamers, but could be flown and interacted with through simulated flight and combat missions.

3.      One of the major selling points of EA's Battlefield 3 Products is the "multiplayer" gameplay functionality, which allows multiple online users to engage in team play with and against each other.  Multiplayer does not involve a plot or "campaign" storyline; instead, it provides gamers an online simulated battlefield in which to fight alongside or against other players using vehicles that include the Bell-Manufactured Helicopters.  Such combat simulations using the Bell-Manufactured Helicopters are a common and prevalent use of EA's Battlefield 3 Products.

4.      The ability to interact with and fly these Bell-Manufactured Helicopters in EA's Battlefield 3 Products factors into consumer decisions over whether to purchase Battlefield 3 and related products.

5.      Although EA wants to satisfy consumer demand for a realistic combat simulation and uses the trademarks and trade dress for the Bell-Manufactured Helicopters to do so, it is unwilling to

1   license or pay for its current use.  This is not the first time EA has used Bell helicopters in its video

2   games without authorization.  The parties previously litigated EA's unauthorized use of the AH-1Z

3   and similar Bell helicopters and intellectual property rights in an earlier version of the Battlefield

4   video game.  EA once again wishes to reap what it has not sown by offering consumers a simulated

5   ability to pilot and use Bell's helicopters without authorization.

6       6.      Other software and video game makers and other third parties wishing to include

7   Bell-manufactured helicopters pay for that right pursuant to a licensing program.  Similarly, EA has

8   taken a license from third parties for the right to include their vehicles and marks in its video game

9   products.  Indeed, EA has, until the release of Battlefield 3, acknowledged these rights and

10  historically paid for its past use; it recently confirmed as much when it paid for additional licensing

11  rights in connection with the "Vietnam" expansion pack to the Battlefield series (*see infra*).  Yet it

12  has refused to do so in connection with the Battlefield 3 Products, of which it has sold over 10

13  million copies.  (Feb. 1, 2012 EA Earnings Call Tr. at 3.)

14      7.      As a result of EA's unlawful conduct, Textron Innovations has suffered monetary

15  damage, as well as damage to the value of its intellectual property.  If EA is not enjoined from

16  infringing and trading on Textron Innovations' intellectual property rights, Textron Innovations'

17  exclusive rights in its marks and the distinctiveness of its marks will be diluted and damaged.  In

18  addition, consumers and potential consumers will likely be confused as to the source of EA's

19  infringing products, and as to the affiliation, connection, and association of those infringing products

20  with the source of the Bell-Manufactured Helicopters.   Bell, as one of Textron Innovations'

21  licensees, has suffered and will continue to suffer from damage done by EA to the value of Textron

22  Innovations' intellectual property.

23      8.      Counterclaim-Plaintiffs seek permanent injunctive relief, monetary damages, costs,

24  and attorneys' fees based on EA's willful trademark infringement and false designation of origin

25  under the Lanham Act and unfair competition, misappropriation, and trademark infringement under

26  the law of the State of California.

27

28

**PARTIES**

9.     Counterclaim-Plaintiff Bell is a Delaware corporation with its principal place of business in Fort Worth, Texas.  Bell is the manufacturer of the Bell-Manufactured Helicopters and a licensee of the trade dress and trademarks associated with them.

10.     Counterclaim-Plaintiff Textron Innovations is a Delaware corporation with its principal place of business in Providence, Rhode Island.  Textron Innovations is the intellectual property holding company for Bell and owns federally-registered trademarks, common law trademarks, and common law trade dress in connection with the Bell-Manufactured Helicopters.

11.     On information and belief, Counterclaim-Defendant EA is a Delaware corporation with its principal place of business in Redwood City, California.  EA develops, imports, sells, offers to sell, and advertises the Battlefield 3 Products in California and throughout the United States.

**JURISDICTION AND VENUE**

12.     This Court has original federal question jurisdiction and supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, and 15 U.S.C. § 1121.

13.     EA has consented to personal jurisdiction through the filing of this action, and it otherwise has sufficient contacts with this state.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

**FACTUAL BACKGROUND**

**Textron Innovations' Legal Rights in the Bell-Manufactured Helicopters**

15.     Bell designs, manufactures, and sells the Bell-Manufactured Helicopters at issue in this dispute.  These helicopters include the AH-1Z (also known as "Viper" or "Zulu Cobra"), UH-1Y (also known as "Venom" or "Super Huey"), and V-22 (also known as "Osprey").  Bell expended a significant amount of time, labor, skill, and money to design, develop, and manufacture the Bell-Manufactured-Helicopters, which are depicted below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**AH-1Z "Viper" or "Zulu Cobra"**



**UH-1Y "Venom" or "Super Huey"**

1
2
3
4
5
6
7
8
9
10
11
12



**V-22 "Osprey"**

13    16.    As Bell developed, designed, and manufactured the Bell-Manufactured Helicopters,

14 Bell assigned its intellectual property rights in them to Textron Innovations in exchange for a non-

15 exclusive license to the same.

16    17.    The Bell-Manufactured Helicopters bear distinctive, non-functional, and unique trade

17 dress including but not limited to:  (a) the design and shape of the fuselage and chin bubble on the

18 UH-1Y; (b) the design and shape of the tandem-seat cockpit, fuselage, and wing pylons on the AH-

19 1Z; (c) the design and shape of the fuselage, chin bubble, wings, rotatable engines, and empennage

20 on the V-22 ("Textron Trade Dress").  These design features are non-functional in nature.  The

21 claimed features are not essential to the use or purpose of the product and do not affect the cost or

22 quality of the product.  Moreover, the design of the respective Bell-Manufactured Helicopters is one

23 of countless design options; indeed, several other manufacturers compete successfully without using

24 the design of the Bell-Manufactured Helicopters.  Use of the Textron Trade Dress by Bell and

25 Textron Innovations' other authorized licensees has been continuous and exclusive since the 1960s

26 for the UH-1Y and AH-1Z trade dress and since the 1980s for the V-22 trade dress.  The Textron

27 Trade Dress has been the subject of extensive promotion, unsolicited media attention, sales, and

28

advertising, including advertising related to the aesthetic features of the Bell-Manufactured Helicopters such as the following examples:



As a result, the Textron Trade Dress and products bearing it have taken on secondary meaning in the minds of consumers, resulting in a belief among consumers that the Bell-Manufactured Helicopters have a single source of origin.  As the intellectual property holding company for Bell, Textron Innovations owns the rights to the Textron Trade Dress.

18.    Textron Innovations, as Bell's assignee, also owns incontestable, valid, and enforceable federally-registered trademarks for "AH-1Z" (U.S. Reg. No. 2928806), "UH-1Y" (U.S. Reg. No. 2908650), and "V-22" (U.S. Reg. No. 3063307), attached hereto as Exhibit A.  In addition to these federally-registered trademarks, Textron Innovations owns common law rights in the inherently distinctive names "VIPER," "VENOM," and "OSPREY."   Because of extensive advertising, promotion, and sales by Bell, these inherently distinctive federally-registered and common-law-trademarked product names (collectively, "Textron Trademarks") have become strongly associated with a single source in connection with helicopters.  As the intellectual property holding company for Bell, Textron Innovations owns the rights in the Textron Trademarks.

19.     Use of the Textron Trade Dress and Textron Trademarks has been continuous and substantially exclusive, including as licensed to third parties.  Textron Innovations has generated substantial revenues from worldwide licensing of the Bell-Manufactured Helicopters, Textron Trade Dress, and Textron Trademarks, in connection with, among other things, video games, computer software, motion pictures, and aircraft models.

**Counterclaim-Defendant's Infringing Video Games**

20.     Battlefield 3 is a first-person military combat simulation.  Because EA's customers "know what guns and gear look like," EA determined that Battlefield 3 "need[ed] to look real" and endeavored to create as authentic and realistic a simulation of military combat as possible.  (*See, e.g.*, http://www.joystiq.com/2011/03/02/battlefield-3-frostbite-2-engine-interview/, last visited May 2, 2012.)  To facilitate this realism, players can choose to represent the U.S. military, in which case they are given realistic U.S. military equipment and vehicles to use in battle.  According to EA's President Frank Gibeau, "that visceral realistic feeling is what set [Battlefield] apart from [its primary competitor Call of Duty]."   (*See* http://venturebeat.com/2011/06/14/eas-frank-gibeau-prepares-for-the-grudge-match-between-battlefield-and-modern-warfare/, last visited May 3, 2012).

21.     Upon information and belief, EA's obsession with combat realism has paid dividends. Consumers largely purchase the Battlefield 3 Products because of their realistic military simulations including   authentic   equipment   that   the   U.S.   military   would   use.   (*See*,   *e.g.*, http://tech.ca.msn.com/video-games/article/battlefield-3-sets-new-standards-in-realism,   last   visited May 3, 2012 ("The story, however, is not the game's strong point," but vehicle use "feel[s] more like simulations   of   the   real   thing   than   just   a   mere   video   game."); http://www.planetxbox360.com/article_15304/Five_Reasons_Battlefield_3_Will_Trump_Modern_ Warfare_3, last visited May 3, 2012 (noting that realism and pilot-able vehicles are among the reasons it beats competitors).)

22.     In order to satisfy its customers' demands for realism and authenticity, EA knowingly chose to use the Textron Trade Dress and Trademarks throughout its Battlefield 3 Products, including the Battlefield 3 game and "Back to Karkland" expansion pack, without Textron Innovations' permission or approval.  Although EA could have chosen other helicopters or created

its own helicopter design like other video games, it wrongfully copied and misappropriated the Textron Trade Dress and Trademarks in the Bell-Manufactured Helicopters in order to appeal to consumers who demand to be able to use Bell-Manufactured Helicopters, which are widely used by the U.S. military.

23.     During gameplay, the Bell-Manufactured Helicopters are identified both by their trademarked numerical designations ("UH-1Y," "AH-1Z," and "V-22") and by their alternative trademarked names (including "Venom," "Viper," and "Osprey").   The Bell-Manufactured Helicopters are also recognizably depicted and viewable from various angles.  In fact, a player can walk around a helicopter, board it, select a seat as pilot, crew member, or gunner, and then fly it in a manner of the consumer's choosing.

24.     The AH-1Z and UH-1Y helicopters bearing Textron Trade Dress and Trademarks are given particular prominence in the game.  The AH-1Z is the primary attack helicopter, while the UH-1Y is the primary transport helicopter.     (*See* http://bf3blog.com/battlefield-3-helicopters/, accessed on May 3, 2012 ("The Bell UH-1Y Venom, a.k.a. Super Huey, is the main transport helicopter for the US side in Battlefield 3.").)  Users can experience flying these vehicles in the same way as in a flight simulator, taking full control over the actions of the Bell-Manufactured Helicopter and experiencing what it is like to use the vehicle in combat.  Several examples of the use of the Bell-Manufactured Helicopters in the Battlefield 3 Products are shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1

2

3

4

5

6

7

8

9

10



11

12

13

14

15

16



17

18

19

20

21

22

23

24

25

26



27

28

25.     Although Battlefield 3 uses the Bell-Manufactured Helicopters in its single-player or "Co-op" campaign mode, consumers' desire for realism and equipment use is particularly acute in "multiplayer" mode.  Unlike single-player or co-op mode, multiplayer mode does not contain progressive "campaigns," "stories," or "plots" provided by EA.  Rather, multiplayer mode allows consumers to participate in one-time battles of their own design—using the Bell-Manufactured Helicopters bearing the Textron Trade Dress and Trademarks—in groups of up 64 (on a PC) or 24 (on a game console).

26.     Upon information and belief, this non-campaign multiplayer mode is the most popular aspect of the Battlefield 3 Products, the primary driver of Battlefield 3's sales, and where Battlefield 3 consumers spend most of their time.  In an October 27, 2011 earnings call, EA's President Frank Gibeau stated:  "[W]e consider Battlefield an online service.  First and foremost, th[e Battlefield] brand was built on its multiplayer prowess and the technology itself really lends itself to that."  Gibeau went on to extol the financial benefits of multiplayer to the Battlefield franchise:  "[C]learly the multiplayer is the richer opportunity for us because of the services opportunity in keeping customers engaged 365 [days a year].  Fortunately, Battlefield, as a franchise, since the late '90s has been configured around multiplayer and I think that's why you're seeing such

ANSWER AND COUNTERCLAIMS                    18                    Case No. CV-12-0118-WHA

popularity around the design." (Oct. 27, 2011 Earnings Call Tr. at 19). Similarly, during a December 2011 investor call, EA's Executive Vice President and CFO Eric Brown responded to a question about multiplayer being the key purchasing driver by highlighting that approximately 90% of Battlefield 3 purchasers play the online multiplayer game in its product. (Dec. 5, 2011 Conference Tr. at 11.)

27. Press reviews of the Battlefield 3 product have similarly focused on the realistic multiplayer experience and questioned the need for single-player campaigns at all: "Some are surprised that Battlefield 3 is even bothering with a single player campaign. The franchise has built its loyal fanbase thanks to its multiplayer offerings. Is it even necessary to bother with a campaign?" (*See*, http://www.joystiq.com/2011/03/02/battlefield-3-frostbite-2-engine-interview/, last visited May 2, 2012.)

28. The Bell-Manufactured Helicopters are available for selection and extensive use in this popular, non-campaign multiplayer mode. Consumers can even elect to begin each round or life by deploying or spawning directly into the Bell-Manufactured Helicopters, so as to start and spend the battle flying a Bell vehicle bearing the Textron Trade Dress and Trademarks. Consumers have identified the use of authentic vehicles in multiplayer mode as one of Battlefield 3's strong features: "One thing that the Call of Duty series has been sorely lacking is the inclusion of vehicles in multiplayer, something that Battlefield 3 will have in spades. From driving tanks to piloting jets, multiplayer battles will take on a whole new dynamic that will set Battlefield 3's multiplayer experience head and shoulders above the competition." (http://www.planetxbox360.com/article_15304/Five_Reasons_Battlefield_3_Will_Trump_Modern_Warfare_3, last visited May 3, 2012.)

29. In December 2011, EA commercially released the "Back to Karkand" expansion pack for the Battlefield 3 game. In "Back to Karkand," consumers can use the Bell-Manufactured Helicopters bearing the Textron Trade Dress and Trademarks in conjunction with new maps.

**Counterclaim-Defendant's Infringing Promotional Material**

30. EA also uses the Textron Trade Dress and Trademarks in promotions for the game without Counterclaim-Plaintiffs' permission or approval.

31.     On a webpage telling customers to "buy now," EA entices consumers to purchase its Battlefield 3 Products specifically by advertising the AH-1Z helicopter:



32.     On its website, EA touts the realistic vehicles it offers:  "Drive vehicles.  You don't just call in an airstrike.  You are the airstrike.  Battlefield 3 delivers all-out vehicle warfare with an incredible array of vehicles to control, including jets, tanks, jeeps and helicopters." (http://www.battlefield.com/battlefield3/1/vehicles, last visited Feb. 21, 2012.)

33.     On that same page, EA included an image of Bell's AH-1Z helicopter and promoted use of the Bell-Manufactured Helicopter to consumers:  "[F]ly your squad straight to the action or engage enemy targets directly from your heli."  *Id.*



34.     On the Battlefield YouTube channel, EA also promotes the "Back to Karkand" expansion pack with video that includes the Bell-Manufactured Helicopters.  As one example, in the "Battlefield 3 Gulf of Oman Gameplay Trailer," which has more than one million views, an AH-1Z helicopter flies into battle in an opening sequence.  http://youtu.be/emGXp-qRrVg?t=21s



35.     Indeed, many of the trailers on the "Back to Karkand" website include images of the AH-1Z helicopter, including the following trailer for the "Wake Island" map:



36.     EA has actively used such promotional videos containing the Textron Trade Dress and Trademarks to market its Battlefield 3 Products.  EA's Chief Operating Officer Peter Moore boasted in EA's October 27, 2011 Quarterly results call that EA "made adept use of YouTube where 13 million people have viewed our trailers and on Facebook where we have 2.1 million fans."  (Oct. 27, 2011 Earnings Call Tr. at 7.)

37.     EA has used the Textron Trade Dress and Trademarks in other promotional materials, including advertisements, product manuals, and game kiosks and displays.

### The Parties' Prior Dispute

38.     The Battlefield 3 Products are not the first EA video games to include unauthorized copies of the Bell-manufactured vehicles bearing Textron Innovations' trademarks and trade dress. In December 2006, Textron Innovations and Bell filed a complaint against EA in the Northern District of Texas, Civil Action No. 4-06-CV-841-A, claiming the same causes of action for EA's unauthorized use of Bell-manufactured helicopters (including the AH-1Z) in video games including Battlefield Vietnam, Battlefield Vietnam: Redux, and Battlefield 2 ("Prior Action").

39.     On May 21, 2007, EA moved to dismiss the Complaint; Textron Innovations and Bell subsequently opposed.  After full briefing by the parties, the Northern District of Texas denied Counterclaim-Defendant's motion to dismiss on December 6, 2007.

40.     The parties subsequently negotiated and executed a confidential settlement agreement on February 15, 2008, and stipulated to dismissal with prejudice of the Prior Action.  That agreement remains in effect.  Counterclaim-Plaintiffs never released any future claims related to EA's misuse of Textron Innovations' trademarks and trade dress in future versions of the Battlefield series.

41.     In October 2010, Textron Innovations and EA executed a term sheet whereby EA paid Textron Innovations a lump sum for a license to use certain Bell-manufactured vehicles bearing Textron Innovations' trademarks and trade dress in a booster pack for the "Battlefield:  Bad Company 2" game, called "Vietnam."

### EA's Willful Infringement

42.     Based on the above, EA has been aware of Textron Innovations' trademark and trade dress rights since at least as early as the Prior Action.  Nevertheless, EA knowingly and willfully

1    decided to use Textron Innovations' intellectual property without Textron Innovations' permission in

2    the Battlefield 3 Products.

3         43.    On October 7, 2011, EA first notified Textron Innovations of its intent to use the

4    Textron Trade Dress and Trademarks in its soon-to-be-released Battlefield 3 Products.  The parties

5    engaged in multiple communications regarding EA's use and the need for a license.  The commercial

6    launch of the Battlefield 3 Products occurred on or about October 25, 2011.  On January 5, 2012,

7    EA's representative asked Textron Innovations for additional factual information related to EA's use

8    of the Textron Trade Dress and Trademarks.  Without waiting for an answer, EA filed the present

9    declaratory judgment action.

10        44.    The willfulness of this infringement of Textron Innovations' rights is also evident

11   when considered against the backdrop of EA's use of other third parties' intellectual property in EA

12   video games.  EA has acknowledged that it must take a license to use the intellectual property of

13   third parties in its games and has in fact done so.  For example, EA entered into an exclusive

14   licensing agreement with Porsche for use of Porsche cars and associated intellectual property in its

15   "Need for Speed" video game.  As part of that exclusive licensing agreement, EA has the authority

16   to grant or deny sublicenses for use of Porsche cars and associated intellectual property.  Taking

17   advantage of the fact that most gaming companies will only use the marks of third parties if licensed

18   to do so, EA recently refused to license the Porsche marks to its competitor, Turn 10, a decision that

19   "killed" its competition.  (*See, e.g.*,  http://www.chrisjonesgaming.net/ea-protects-its-porsche-

20   license/, last visited May 3, 2012.)

21        45.    EA has also entered into licensing arrangements in connection with other games.  For

22   example, EA entered into an exclusive licensing arrangement with the NFL and NFL Players'

23   Association for use of NFL players' likeness, team colors, names, and logos for its "Madden" video-

24   game series.  (*See, e.g.*, http://www.sportsbusinessdaily.com/Journal/Issues/

25   2011/02/20110214/Leagues-and-Governing-Bodies/NFL-EA.aspx, last visited May 3, 2012.)

26        46.    Indeed, as recently as October 2010, EA executed a term sheet whereby it took a

27   license from Textron Innovations to the Textron Trade Dress and Trademarks in the "Vietnam"

28   booster pack for its "Battlefield:  Bad Company 2" video game.

ANSWER AND COUNTERCLAIMS              23              Case No. CV-12-0118-WHA

47.     Thus, EA's decision to incorporate the Textron Trade Dress and Trademarks in the Battlefield 3 Products without Textron Innovations' authorization was willful and in bad faith.

**Consumers, Textron Innovations, and Bell Have Been and Continue to Be Injured
by Counterclaim-Defendant's Acts**

48.     EA's use of the Textron Trade Dress and Trademarks in the Battlefield 3 Products has created and is likely to continue to create consumer confusion as to the source, affiliation, or sponsorship of the trademarked products in the video games.

49.     Consumers of these games expect that the intellectual property of a party is used with the permission and approval of the mark's owner, particularly when a purpose of the game is to realistically simulate the use of a product associated with the mark.     (*See, e.g.*, http://www.destructoid.com/ea-using-first-amendment-to-keep-helicopters-in-bf3-219301.phtml, last visited May 3, 2012 ("siddartha85: This is nonsense. Every flight game gets those licenses. How is a commercial product making tons of money for admission 'fair use'?"  "Aequitas: Did they not have to pay to license the real-world weapon names/likenesses from those manufacturers?  I'm confused."  "RenegadePanda:  So from what I can logically gather from this article is one of two things. a) EA got away with 'fair use' on everything but helicopters, or b) EA got the licensing to everything else in the game except for helicopters.  Everything else in that game has some kind of license, right?  Surely the jets and weapons and ground vehicles required a similar procedure. So which is it?"  BoomingEchoes: . . . [L]ook at what EA's doing here.  They're basically pirating the helicopters out from under this company to help themselves turn a buck.").)

50.     In addition to this confusion as to source, sponsorship, or affiliation, EA's unauthorized use of Textron Innovations' trademarks and trade dress damages and lessens the value of the intellectual property for Textron Innovations and its authorized licensees, including Bell.

## <u>COUNT I</u>

### Trademark Infringement

### 15 U.S.C. § 1114

51.     Counterclaim-Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

52.     This cause of action asserted by Textron Innovations arises under the Lanham Act of the United States, 15 U.S.C. § 1114.

53.     Plaintiff Textron Innovations owns the incontestable, valid, and enforceable federally-registered marks "AH-1Z" (U.S. Reg. No. 2928806), "UH-1Y" (U.S. Reg. No. 2908650), and "V-22" (U.S. Reg. No. 3063307) (collectively, "Textron Innovations Registered Marks").

54.     Prior to EA's adoption and use of the Textron Innovations Registered marks, EA had actual notice and knowledge of Textron Innovations' ownership and registrations of the Textron Innovations Registered Marks.

55.     EA, in an attempt to trade on the goodwill and reputation established by Textron Innovations and Textron Innovations' licensees under the Textron Innovations Registered Marks, deliberately and willfully used and continues to use the Textron Innovations Registered Marks so as to cause confusion or mistake or to deceive consumers.  Textron Innovations has not consented to EA's use of the Textron Innovations Registered Marks.

56.     The goods on which EA uses the Textron Innovations Registered Marks, namely, helicopters, are identical to and/or substantially similar to the goods offered by Textron Innovations and its licensees in connection with the marks.

57.     EA's unauthorized use of the Textron Innovations Registered Marks falsely indicates to consumers, and is likely to lead consumers to mistakenly believe, that EA's video games and/or the featured helicopters therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations.

58.     The aforementioned acts of EA constitute federal trademark infringement in violation of 15 U.S.C. § 1114.

59.     Textron Innovations is entitled to monetary damages for EA's infringement, in an amount to be determined at trial.  The intentional nature of EA's acts makes this case exceptional under 15 U.S.C. § 1117(a).

60.     Textron Innovations has been, is now, and will be irreparably harmed by EA's infringement and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, EA will continue to

1    infringe the Textron Innovations Registered Marks.  There is no adequate remedy at law for the

2    harm caused by the acts of infringement alleged herein.

3    **COUNT II**

4    **Trademark And Trade Dress Infringement**

5    **15 U.S.C. § 1125(a)**

6        61.    Counterclaim-Plaintiffs incorporate by reference the allegations of the previous

7    paragraphs as though fully set out herein.

8        62.    This cause of action asserted by Textron Innovations arises under the Lanham Act of

9    the United States, 15 U.S.C. § 1125(a).

10       63.    Textron Innovations owns the unregistered Textron Trade Dress in the distinctive,

11   non-functional, and unique design of the AH-1Z, UH-1Y, and V-22 helicopters.  The distinctive,

12   non-functional, and unique features of the Textron Trade Dress, in conjunction with extensive

13   advertising and sales of the Bell-Manufactured Helicopters, has caused Textron's Trade Dress to

14   take on secondary meaning in the minds of customers, and resulted in a belief that products bearing

15   the Textron Trade Dress have a single source of origin.

16       64.    Textron Innovations owns unregistered trademark rights in the names "VIPER,"

17   "VENOM," and "OSPREY," used in connection with helicopters ("Textron Unregistered Marks").

18   The arbitrary nature of the marks, as well as the extensive advertising and sales of products bearing

19   those marks, has caused these marks to take on secondary meaning in the minds of customers, and

20   resulted in a belief that products bearing the Textron Unregistered Marks have a single source of

21   origin.

22       65.    EA uses the Textron Trade Dress and Unregistered Marks in Battlefield 3, its

23   expansion packs, and in marketing and promotion of the same.  The goods on which EA uses the

24   Textron Trade Dress and Unregistered Marks, namely, helicopters, is identical to and/or

25   substantially similar to the goods offered by Textron Innovations and its licensees in connection with

26   the marks.

27       66.    Textron Innovations has not consented to EA's use of the Textron Trade Dress and

28   Unregistered Marks.  EA's unauthorized use of the Textron Trade Dress and Unregistered Marks

falsely indicates to consumers, and is likely to lead consumers to mistakenly believe, that EA's video games and/or the featured helicopters therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations.

67.    The aforementioned acts of EA constitute trademark infringement in violation of 15 U.S.C. § 1125.

68.    Textron Innovations is entitled to monetary damages for EA's infringement, in an amount to be determined at trial.  The intentional nature of EA's acts makes this case exceptional under 15 U.S.C. § 1117(a).

69.    Textron Innovations has been, is now, and will be irreparably harmed by EA's infringement and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, EA will continue to infringe the Textron Trade Dress and Unregistered Marks.  There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

## COUNT III

### False Designation Of Origin

### 15 U.S.C. § 1125(a)

70.    Counterclaim-Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

71.    This cause of action asserted by Textron Innovations and Bell arises under the Lanham Act of the United States, 15 U.S.C. § 1125(a).

72.    As a result of Textron Innovations' and its licensees' extensive use and promotion of the Textron Trade Dress and Trademarks, such marks enjoy considerable goodwill, widespread recognition, and secondary meaning in commerce, and have become associated with a single source of origin.

73.    EA's unauthorized use of the Textron Trade Dress and Trademarks falsely suggests that EA's video games and/or the helicopters featured therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations.

74.    EA's unauthorized use of the Textron Trade Dress and Trademarks as alleged herein constitutes false designation of the origin of EA's video games and/or the helicopters featured

1  therein, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  By reason of its

2  violation of 15 U.S.C. § 1125(a), EA is "liable in a civil action by any person who believes that he or

3  she is or is likely to be damaged by such act," including Bell and Textron Innovations.

4       75.    The intentional nature of EA's acts makes this case exceptional under 15 U.S.C.

5  § 1117(a).

6       76.    Bell and Textron Innovations have been, are now, and will be harmed by EA's false

7  designation of origin and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, EA will

8  continue to falsely suggest that EA's video games and/or the helicopters featured therein are in some

9  manner connected with, sponsored by, affiliated with, related to, or approved by Textron

10  Innovations, thereby diluting the value of Bell's license and the intellectual property that is the

11  subject of that license.  There is no adequate remedy at law for the harm caused to Bell and Textron

12  Innovations by the acts of EA alleged herein.

### COUNT IV

**California Unfair Competition**

**Cal. Bus. Prof. Code § 17200 *et seq.***

16       77.    Counterclaim-Plaintiffs incorporate by reference the allegations of the previous

17  paragraphs as though fully set out herein.

18       78.    This cause of action asserted by Textron Innovations and Bell arises under California

19  Business and Professions Code section 17200 *et seq.*

20       79.    As a result of Textron Innovations' and its licensees' extensive use and promotion of

21  the Textron Trade Dress and Trademarks, such marks enjoy considerable goodwill, widespread

22  recognition, and secondary meaning in commerce, and have become associated with a single source

23  of origin.

24       80.    EA's unauthorized use of the Textron Trade Dress and Trademarks in the Battlefield

25  3 products and related advertising and promotional materials falsely suggests that EA's video games

26  and/or the helicopters featured therein are in some manner connected with, sponsored by, affiliated

27  with, related to, or approved by Textron Innovations.

28

81.     EA's conduct constitutes unfair, unlawful, and fraudulent business practices and unfair, deceptive, and misleading advertising in violation of California Business and Professions Code section 17200 *et seq.*

82.     Textron Innovations and Bell are entitled to restitution, including disgorgement of profits, for EA's misappropriation, in an amount to be proved at trial.

83.     Textron Innovations and Bell have been, are now, and will be irreparably harmed by EA's misappropriation and, unless enjoined by the Court, EA will continue to misappropriate the efforts of Bell and the ownership rights of Textron Innovations.  There is no adequate remedy at law for the harm caused by the acts of EA alleged herein.

## COUNT V

### California Common Law Trademark Infringement

84.     Counterclaim-Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

85.     This cause of action asserted by Textron Innovations arises under the common law of the State of California.

86.     As a result of Textron Innovations' and its licensees' extensive use and promotion of the Textron Trade Dress and Trademarks, such marks enjoy considerable goodwill, widespread recognition, and secondary meaning in commerce, and have become associated with a single source of origin.

87.     EA's unauthorized use of the Textron Trade Dress and Trademarks falsely suggests that EA's video games and/or the helicopters featured therein are in some manner connected with, sponsored by, affiliated with, related to, or approved by Textron Innovations.

88.     The foregoing acts of EA constitute trademark infringement under the common law of the State of Texas.

89.     EA has been unjustly enriched by reason of its unauthorized use, and Textron Innovations is entitled to monetary damages for EA's infringement, in an amount to be proved at trial.

90.     Textron Innovations has been, is now, and will be irreparably harmed by EA's infringement and, unless enjoined by the Court, EA will continue to infringe the Textron Trade Dress and Trademarks.  There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

<u>**COUNT VI**</u>

**California Common Law Misappropriation**

91.     Counterclaim-Plaintiffs incorporate by reference the allegations of the previous paragraphs as though fully set out herein.

92.     This cause of action asserted by Textron Innovations arises under the common law of the State of California.

93.     Bell expended a significant amount of time, labor, skill, and money to design, develop, and manufacture the Bell-Manufactured Helicopters, including the Textron Trade Dress and Trademarks assigned to Textron Innovations.

94.     EA is free-riding on the efforts of Bell through EA's unauthorized copying and incorporation of the Textron Trade Dress and Trademarks in the Battlefield 3 Products.

95.     EA competes with Textron Innovations' authorized licensees who pay to use Counterclaim-Plaintiffs' rights.  EA's improper competition harms Textron Innovations by reducing the value of its licensing program and intellectual property rights.

96.     Textron Innovations, as owner and licensor of the misappropriated intellectual property, has been damaged as a result of EA's misappropriation.

97.     Textron Innovations is entitled to monetary damages for EA's misappropriation, in an amount to be proved at trial.

98.     Textron Innovations has been, is now, and will be irreparably harmed by EA's misappropriation and, unless enjoined by the Court, EA will continue to misappropriate the efforts of Bell and the ownership rights of Textron Innovations.  There is no adequate remedy at law for the harm caused by the acts of EA alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim-Plaintiffs request this Court:

(i)  Adjudge that EA has infringed Textron Innovations' trademarks and trade dress and committed unfair competition;

(ii)  Adjudge that EA committed false designation of origin;

(iii)  Adjudge that EA has misappropriated the efforts of Bell and the intellectual property rights of Textron Innovations;

(iv)  Permanently enjoin EA from further activities that would infringe and dilute Plaintiff's trademarks and trade dress under 15 U.S.C. § 1116;

(v)  Permanently enjoin EA from committing false designation of origin under 15 U.S.C. § 1116;

(vi)  Permanently enjoin EA from further unfair or wrongful business activities under California Business and Professions Code section 17203;

(vii)  Order an accounting of EA's profits and an award of damages by reason of EA's unlawful conduct;

(viii)  Order restitution, including disgorgement of EA's profits obtained through use of the trademarks and trade dress;

(ix)  Order an award of treble and other available exemplary damages pursuant to 15 U.S.C. § 1117, based on EA's intentional, malicious, willful, and deliberate use of Textron Innovations' trademarks and trade dress;

(x)  Order an award of attorney's fees, costs, prejudgment and post judgment interest; and

(xi)  Provide any such further relief as this Court may deem just, equitable, and proper.

1

**JURY DEMAND**

2

Counterclaim-Plaintiffs hereby demand trial by jury on all issues triable by a jury.

3

Dated:  May 7, 2012                                              Respectfully submitted,

4

5

                                                                    */s/Mark E. McKane*
6                                                                   James F. Basile (SBN 228965)
                                                                    james.basile@kirkland.com
7                                                                   Mark E. McKane (SBN 230552)
                                                                    mark.mckane@kirkland.com
8                                                                   KIRKLAND & ELLIS LLP
                                                                    555 California Street
9                                                                   San Francisco, California 94104
                                                                    Telephone: (415) 439-1400
10                                                                  Facsimile: (415) 439-1500

11                                                                  Gregg F. LoCascio, P.C. (*pro hac vice*)
                                                                    gregg.locascio@kirkland.com
12                                                                  KIRKLAND & ELLIS LLP
                                                                    655 Fifteenth Street, N.W.
13                                                                  Washington, D.C.  20005
                                                                    Telephone: (202) 879-5000
14                                                                  Facsimile: (202) 879-5200

15                                                                  Jeanne M. Heffernan (*pro hac vice*)
                                                                    jeanne.heffernan@kirkland.com
16                                                                  KIRKLAND & ELLIS LLP
                                                                    601 Lexington Avenue
17                                                                  New York, New York  10022
                                                                    Telephone:  (212) 446-4800
18                                                                  Facsimile:  (212) 446-6460

19                                                                  Attorneys for Defendants
                                                                    TEXTRON INC.; BELL HELICOPTER
20                                                                  TEXTRON INC.; and TEXTRON
                                                                    INNOVATIONS INC.

21

22

23

24

25

26

27

28