

633 Battery Street
San Francisco, CA 94111-1809
415 391 5400
kvn.com

**R. James Slaughter**
(415) 773-6623
rslaughter@kvn.com

October 2, 2012

**VIA ELECTRONIC FILING**

The Honorable William H. Alsup
United States District Judge
Courtroom 8, 19th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

Re:   *Electronic Arts Inc. v. Textron Inc., et al.*
        Case No. 12-CV-0118-WHA (N.D. Cal.)

Dear Judge Alsup:

Textron asks the Court to compel EA to produce a variety of licensing-related materials, including *all* draft and final licenses and related communications for *any* intellectual property for *any* EA game in the past five years.  Textron fails to inform the Court that: *First*, EA offered Textron over a month ago to produce a significant set such licensing documents, but Textron simply ignored this offer (as it does in its brief).  *Second*, EA has already produced all documents and responded to all requests relating in any way to the game that is actually at issue in this case, *Battlefield 3*—including those related to *Battlefield 3* licensing.  Textron has (or will shortly have) all documents that could be relevant to the claims and defenses in this case.  The additional information it seeks regarding EA's licensing practices for *other* games is irrelevant to EA's First Amendment defense and to the trademark and trade dress claims at issue.  Furthermore, the burden on EA to respond to Textron's request would be enormous.  For these reasons, Textron's request should be denied.

           **A.**      **EA's Licensing Practices are Irrelevant to the Claims and Defenses.**

EA's licensing practices are irrelevant to Textron's claims and EA's defenses, even if they are "inconsistent" or establish "industry custom."  Courts repeatedly have held that defendants' uses of plaintiffs' marks in expressive works is protected by the First Amendment, regardless of whether the defendants previously sought permission to use the disputed elements.  For example, in *University of Alabama Board of Trustees v. New Life Art, Inc.*, the Eleventh Circuit held that defendant's unauthorized use of the University's trademarks in paintings of famous scenes from the University's football history was protected by the First Amendment (under the *Rogers* test) despite defendant's prior licensing of the trademarks for use in similar paintings. 2012 WL 2076691, at *6-9 (11th Cir. June 11, 2012); *see also Campbell v. Acuff-Rose Music*, 510 U.S. 569, 585 n.18 (1994) (an alleged copyright infringer's prior request for permission was irrelevant to the First Amendment defense); *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 326 (Cal. Ct. App. 1997) ("industry custom of obtaining 'clearance' establishes nothing, other than the unfortunate reality that many filmmakers may deem it wise to

The Honorable William H. Alsup
October 2, 2012
Page 2

pay a small sum up front for a written consent to avoid later having to spend a small fortune to defend unmeritorious lawsuits"). First Amendment protection against a claim of misappropriation in an expressive work is determined under the *Rogers* test based on the content of the game at issue; whether EA has taken licenses for other games has no effect on the analysis. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002); *see also* Dkt. 76 at 14-15.

*Second*, even if the Court were to apply the *Sleekcraft* likelihood-of-confusion test rather than the *Rogers* test (which would be error), EA's licensing practices would be irrelevant. Apparently recognizing that EA has done nothing to explicitly convey endorsement by Textron of its game (indeed, such endorsement is explicitly *disclaimed* on the game package), Textron intends to rely on an implied endorsement theory to prove likelihood of confusion. But if something in *Battlefield 3* implies endorsement by Textron, this, again, is determined by the content of the game, and EA's licensing practices with respect to other games are irrelevant. *CBS Interactive Inc. v. Nat'l Football League Players Ass'n*, 259 F.R.D. 398, 420 n.18 (D. Minn. 2009) (similar discovery request rejected because "[w]hether CBS Interactive used player information in a manner that might imply an endorsement can be determined by looking to the manner in which player information was used, without any need to consider the subjective strategy or intent behind the use"). Textron does not cite any cases holding that licensing agreements or other actions by the alleged *mark-user* are relevant to implied endorsement. To the contrary, Textron relies on *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, which held that such an endorsement inquiry is determined according to the expectations of the *consumer*. 610 F.3d 1171, 1176.[1] EA has already produced to Textron all documents relating to consumer expectations for *Battlefield 3*, and has even agreed to produce similar documents for other *Battlefield* games. Textron Br., Ex.5, at 5-8; *id.*, Ex. 2, at 3.[2] The content of license agreements for other games is not relevant to consumer expectation.

### B. Textron's Request for Unrelated Licenses is Unduly Burdensome.

The overbroad scope of Textron's requests makes the search for responsive documents practically impossible. EA's files are maintained around the world, are voluminous, and are organized in a way that is not conducive to the search that Textron demands.

---

[1] Textron also relies on *Abdul-Jabbar v. Gen. Motors Corp.*, which merely holds that, because of the nature of commercials, a person watching a commercial that makes heavy use of a celebrity's name might understand that commercial as an endorsement. 85 F.3d 407, 413 (9th Cir. 1996). This case says nothing about licensing; and EA's game is not a commercial.

[2] Textron also cites cases holding that whether an alleged infringer intended to use and had knowledge of a trademark is relevant to likelihood of confusion. *E.g.*, *Brooksfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999). But EA's licensing practices for other games are irrelevant to its intention or knowledge regarding *Battlefield 3*; and EA has already answered over thirty Requests for Admission regarding its knowledge and intention in depicting Textron's helicopters in *Battlefield 3*. Textron Br., Ex. 7, at 2-17.

696879

The Honorable William H. Alsup
October 2, 2012
Page 3


Since 2004, EA has maintained electronic copies of many of its executed agreements in an electronic database at its Redwood Shores office. Ex. A (Hupp Decl.) ¶ 6. This database contains approximately 95,000 documents, estimated to comprise over a million pages, including over 54,000 agreements of various types that have been added since 2007. *Id*. The only consistent categorization for agreements in this database is by name of the contracting party. *Id.* ¶ 11. Moreover, for space-efficiency reasons, database documents are kept in "simple PDF" format, which is not text-searchable. *Id.* Some executed agreements are kept only in hard-copy form among 35-plus filing cabinets, organized solely by name of the contracting party. *Id.* ¶¶ 8, 13. Agreements are also maintained in numerous other offices, including offices in at least nine foreign countries. *Id.* ¶ 9. Thus, Textron's request would force EA to conduct a manual, one-by-one review of millions of pages of documents, from around the world.[3] *Id.* ¶ 15.

Searching for draft agreements and all licensing-related communications would be an even greater burden, because neither are maintained in the Redwood Shores database or any centralized location. *Id.* ¶ 10. EA would be required to collect and search documents from hundreds of employees involved with its many games. *Id.* ¶ 10, 16.

### C. EA Has Offered to Produce a Significant Set of Non-*Battlefield 3* Licenses.

Despite its objections, EA has attempted repeatedly to find a compromise that will give Textron the evidence it claims it needs. On August 8, 2012, EA offered to produce licensing documents for all the other *Battlefield* games. Textron Br., Ex. 2. After two weeks, Textron rejected EA's offer, and instead offered a proposal that merely limited the number of foreign offices that EA would have to search. *Id.*, Ex. 3. On August 30, EA explained that Textron's proposal would still entail substantially all of the burden described above. Ex. B (Aug. 30 Letter). EA responded, however, with yet another compromise offer: EA would produce trademark and trade dress licenses for three games of Textron's choosing from the last three years that featured vehicles and/or weapons. *Id.* Textron never responded to EA's August 30 offer.

For the reasons described above, EA respectfully requests that the Court reject Textron's request to compel compliance with Textron's unreasonable discovery requests.

Sincerely,

*/s/ R. James Slaughter*

R. James Slaughter
Counsel for Plaintiff and Counterclaim-Defendant
ELECTRONIC ARTS INC.

cc:   All counsel of record

---

[3] EA would then need to conduct an additional review to determine what permission, if any, is required from the licensing party before the document may be produced in this case. *Id.* ¶ 17.

696879